UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO:

| | |
|---|---|
| NANCY O'LOUGHLIN<br>Plaintiff<br><br>v.<br><br>MASSACHUSETTS BAY<br>TRANSPORTATION AUTHORITY<br>AND<br>JOSEPH CARTER<br>AND<br>MICHAEL MULHERN<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**04 - 10933 JLT**

MAGISTRATE JUDGE Collings
RECEIPT # 55796
AMOUNT $ 150
SUMMONS ISSUED 3
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 5-11-04

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1.       This is an action under M.G.L. c.151B, 42 USC §2000e, 42 USC §1983, and M.G.L. c.12 §11, for unlawful discrimination based upon gender, illegal retaliation, and interference with protected rights, as well as a claim for slander and defamation. The action is brought by Nancy O'Loughlin, a female who works for the Massachusetts Bay Transportation Authority ("MBTA") as a Lieutenant in the MBTA Police Department. Joseph Carter, at all times relevant to this Complaint, has been the Chief of the MBTA Police Department. Michael Mulhern, at all times relevant to this Complaint, has been the General Manager of the MBTA. Chief Carter, General Manager Mulhern, and other MBTA managers and supervisors engaged in the illegal practices alleged in this Complaint.

## JURISDICTION AND VENUE

2.    Jurisdiction over this matter lies in this Court pursuant to 42 USC §2000e-5, 28 USC §1343, and 28 USC §1367 (Supplemental Jurisdiction).

3.    Venue in this District Court is proper because the illegal employment practices complained of herein occurred in Boston, Suffolk County, Massachusetts. Upon information and belief, the employment records related to Plaintiff's employment with Defendant MBTA are also located within Boston, Suffolk County, Massachusetts.

4.    On October 17, 2003, Lt. O'Loughlin filed a timely Charge of Discrimination on the basis of sex and retaliation with the Massachusetts Commission Against Discrimination and the US Equal Employment Opportunity Commission.

5.    On March 12, 2004, Lt. O'Loughlin requested that her Charge of Discrimination pending at the Massachusetts Commission Against Discrimination and US Equal Employment Opportunity Commission be withdrawn to allow her to file suit in Court. Those requests have been granted.    On March 17, 2004 a Right to Sue letter was issued by the US Equal Employment Opportunity Commission in this matter. The Right to Sue letter was received by Ms. O'Loughlin on or after March 18, 2004. A copy of the Right to Sue letter is appended to this Complaint.

## THE PARTIES

6.    Nancy O'Loughlin is a resident of South Weymouth, Norfolk County, Massachusetts. She is a citizen of the United States. She is female.

7.    Defendant MBTA is a political subdivision of the Commonwealth of Massachusetts pursuant to M.G.L. c.161A §2, with a principle place of business in Boston, Suffolk County, Massachusetts. The MBTA was and is Plaintiff's employer within the meaning of M.G.L. c.151B §5, and a person within the meaning of M.G.L. c.151B §4. At all times relevant to this

Complaint, it was Plaintiff's employer within the meaning of 42 USC §2000e, was engaged in an industry effecting commerce within the meaning of 42 USC §2000e, and in all other respects met all of the requirements for coverage under 42 USC §2000e. It is responsible for the illegal actions of Defendants Joseph Carter and Michael Mulhern set forth herein.

8.    Defendant Joseph Carter is an individual residing in Oak Bluffs, Dukes County, Massachusetts. At all times relevant to this Complaint, he was Chief of the MBTA Police Department, was one of the supervisors and managers of the MBTA Police Department, and engaged in all of the illegal and discriminatory actions alleged in this Complaint. Chief Carter is sued in his individual capacity.

9.    Defendant Michael Mulhern is an individual residing in Walpole, Massachusetts. At all times relevant to this Complaint, he was the General Manager of the MBTA, and engaged in the illegal and discriminatory actions alleged in this Complaint. Mr. Mulhern is sued in his individual capacity.

10.    At all times relevant to this Complaint, Plaintiff performed her job in a satisfactory manner. Lt. O'Loughlin is a recipient of the Massachusetts Hanna Medal, the highest award of commendation for a police officer by the Commonwealth of Massachusetts.

**FACTUAL BACKGROUND**

11.    In November 1983, Lt. O'Loughlin started working for the MBTA Police Department. She started working for the MBTA Police Department as a Patrol Officer and worked her way up through the ranks. Lt. O'Loughlin has held the rank of Lieutenant since 1996. Lt. O'Loughlin has received numerous awards and commendations for her work during her career with the MBTA Police Department. She is and has always been a dedicated and hard working employee.

12.    Lt. O'Loughlin first achieved the rank of Lieutenant in October 1996. From October 1996 through October 1997, she served as the supervisor of the MBTA Police Department's Patrol Division. In this position, she was the supervisor of all MBTA police working on the day

3

shift. From October 1997 through June 2001, she supervised the MBTA Police Department's system-wide Anti-Crime Unit. From June 2001 through August 2002, Lt. O'Loughlin was again placed in charge of the Patrol Division.  From August 2002 through February 2003, Lt. O'Loughlin was in charge of a division in the Detective Unit.

13.    In January 2003, Joseph Carter became the Chief of the MBTA Police Department. Chief Carter was sworn in to his position in late January 2003. As one of his first actions as Chief, Chief Carter disbanded Lt. O'Loughlin's division, and she was moved to the position of Detective Unit Commander.  The job of Detective Unit Commander is what is referred to as a "desk job." Lt. O'Loughlin did not want a desk job. This job had previously been performed by a Sergeant. Although this move did not constitute a reduction in rank or salary, it was a move to a much lower status position, and one in which Lt. O'Loughlin's chances for advancement and job satisfaction were greatly reduced. The change in position was viewed by Lt. O'Loughlin and her coworkers as an attempt to further marginalize her role in the MBTA Police Department, and to show disrespect towards her.

14.    Lt. O'Loughlin served as the Detective Unit Commander from February 2003 through August 4, 2003. On August 5, 2003, she was moved from being the Detective Unit Commander to being the head of the Detail Unit. Although this move to the Detail Unit did not constitute a reduction in rank or salary, it was a move to a much lower status position with less overtime compensation, and one in which her chances for advancement and job satisfaction were again greatly reduced. The change in position  was viewed by Lt. O'Loughlin and her coworkers as another attempt to marginalize her role in the MBTA Police Department, and to again show disrespect towards her.

15.    It is well known in the MBTA Police Department that the position of head of the Detail Unit is a punishment position for anyone above the rank of Sergeant. In recent years, several superior officers in the MBTA Police Department have testified to this fact. The position has been filled in recent years by Patrol Officers or Sergeants, other than for times when the MBTA Police Department desired to assign a superior officer to the position to punish them. The job is not appropriate for a Lieutenant or Captain to fill.

4

16.     Lt. O'Loughlin was initially replaced in her job as Detective Unit Commander by a male. This position was then held by a female Lieutenant who had been demoted from the position of Deputy Chief. It was then filled by a male Lieutenant. There was no legitimate, non-discriminatory reason to move Lt. O'Loughlin from the job of Detective Unit Commander, to replace her as Detective Unit Commander with any of the individuals who replaced her, or to install her as head of the Detail Unit. Lt. O'Loughlin would not have been moved to the Detail Unit if she was male.

17.     During the time Lt. O'Loughlin has worked with Chief Carter, in addition to the position changes set forth above, Chief Carter treated her in other ways she considers to be based upon discrimination against her due to her gender, including the following:

1. Chief Carter refused to place in Lt. O'Loughlin's personnel file a commendation she had received from the Massachusetts Office of the Attorney General. This would not have happened if Lt. O'Loughlin was male, and in fact males have been treated to the contrary.
2. Chief Carter refused to support Lt. O'Loughlin in relation to a male subordinate of hers who was acting in an inappropriate and insubordinate manner, instead supporting her subordinate, even though he knew that the subordinate was wrong and was not being truthful. This would not have happened if Lt. O'Loughlin was male.
3. Despite the fact that Lt. O'Loughlin is recognized as an expert in relation to graffiti related crime and has testified as an expert on behalf of the MBTA and the Commonwealth of Massachusetts on such matters on a number of occasions, Chief Carter informed her (on the same day that he transferred her to the Detail Unit) that she would no longer be allowed to investigate and/or testify as an expert on graffiti related crime, but that her former assistant who was not recognized as an expert on these matters, would do any such testifying. This would not have happened if Lt. O'Loughlin was male.
4. Chief Carter deliberately avoids contact with Lt. O'Loughlin so as not to have to speak with her. Chief Carter never met with Lt. O'Loughlin prior to her reassignment. He has often spoken with Sergeants under her supervision, rather than with her, which is unusual and not appropriate. This would not have happened if Lt. O'Loughlin was male.
5. Lt. O'Loughlin was summarily and immediately moved to the Detail Unit the same day that this change was announced, rather than receiving reasonable notice as is the customary practice of the MBTA Police Department. This would not have happened if Lt. O'Loughlin was male.

6.  On or about the day before Lt. O'Loughlin was reassigned to the Detail Unit, Chief Carter made a statement to a Deputy Chief indicating that she was not dressed properly. This was a completely inappropriate comment, as Lt. O'Loughlin was wearing business casual wear as females were allowed to do during summer months. Lt. O'Loughlin's business casual wear consisted of slacks and a collared button-down shirt.

7.  For approximately the prior 20 years, Lt. O'Loughlin had been allowed to take six weeks of vacation time from Thanksgiving through Christmas. This had been allowed while she was Commander of a Unit, Commander of Detectives, and as Commander of the Day Shift. For the year 2004, she will not be allowed to take this six weeks of time off despite the fact that her duties are much less essential to the functioning of the MBTA Police Department then they have been previously.

18.  Upon information and belief, Chief Carter has treated other MBTA Police Department employees who are women in a discriminatory manner, and in general does not like working with women.

19.  During her nearly twenty-one years working for the MBTA Police Department, Lt. O'Loughlin has been subjected to a pattern and practice of gender discrimination, which Chief Carter has followed and has continued. This past pattern and practice of discriminatory treatment, has included the following:

1.  For a long period of time, Lt. O'Loughlin was the only superior officer assigned to the Detective Unit who was deliberately not provided with an office.

2.  Lt. O'Loughlin was the only superior officer assigned to the Detective Unit who was deliberately not provided with a detective lieutenant badge.

3.  For a long period of time, Lt. O'Loughlin was the only superior officer without a computer of her own to use.

4.  For a long period of time, Lt. O'Loughlin was assigned a cellular telephone which was inferior to the telephones assigned to other superior officers.

5.  For a long period of time, Lt. O'Loughlin was the only Lieutenant required to attend roll call.

6.  Pornographic and obscene comments about Lt. O'Loughlin were made on an Internet site frequently viewed by MBTA Police Department employees.

7.  From1998 through 2002 distasteful cartoons and newspaper articles were displayed on bulletin boards within MBTA Police Department Headquarters.

8.  From 1998 through December 2002, false and slanderous pager messages about Lt. O'Loughlin were sent out on the department paging system.

20.     In relation to the acts set forth above showing a pattern and practice of disparate treatment directed towards Lt. O'Loughlin based upon gender, and in relation to other actions of discrimination and disparate treatment directed towards Lt. O'Loughlin, Lt. O'Loughlin's superiors were either the ones engaging in this unfair treatment, or they knew of the unfair treatment and took no actions to stop it, investigate it or rectify it. When these actions set forth above occurred, Lt. O'Loughlin always hoped and anticipated that this improper conduct would stop by her continuing to do as good a job as she could, but the unfair treatment of her continued. Lt. O'Loughlin alleges that all of the disparate treatment she has suffered due to her gender which is alleged in this Complaint is part of a continuing violation of the laws prohibiting discrimination against Lt. O'Loughlin due to her gender.

21.     Although the discrimination against Lt. O'Loughlin due to her gender increased greatly once Joseph Carter became Chief of the MBTA Police Department, Lt. O'Loughlin was subjected to discriminatory treatment by the MBTA for many years. That discriminatory treatment was tolerated and to some extent encouraged by Lt. O'Loughlin's supervisors for many years and the more recent discriminatory treatment she has been subjected to is a continuation of that prior discriminatory treatment.

22.     The discriminatory treatment Lt. O'Loughlin has suffered as a higher-level female employee of the MBTA Police Department, is similar to the discriminatory treatment accorded to other higher-level female employees in the MBTA Police Department, both by Chief Carter as well as his predecessors. Upon information and belief, for many years the MBTA Police Department has had a policy and practice of tolerating and engaging in gender discrimination against female superior officers.

23.     The Charge of Discrimination in this action was filed with the Massachusetts Commission Against Discrimination on October 17, 2003. The Defendants in the MCAD Charge were the MBTA and Chief Joseph Carter. For a variety of reasons, the Answer of Defendants MBTA and Joseph Carter to the Charge of Discrimination filed by Lt. O'Loughlin was not filed with the Massachusetts Commission Against Discrimination until March 8, 2004.

24.    On the same day that the Answer to her Charge of Discrimination was filed by the MBTA and Chief Carter, March 8, 2004, Lt. O'Loughlin was relieved of duty with pay and assigned to duty at her home. Her gun, badge, identification card and cruiser were taken away at that time. The gun, badge, identification card and cruiser were taken away from Lt. O'Loughlin in order to humiliate her, and to humiliate her in the eyes of her fellow officers.

25.    Lt. O'Loughlin was informed that the reason she was being relieved of duty with pay was the fact that the MBTA had obtained tape recorded conversations of telephone calls she was involved in with other MBTA Police Department employees, in which she allegedly made derogatory statements about the Chief of Police and members of the command staff.

26.    The statements which Lt. O'Loughlin was alleged to have made were not derogatory, were made (if at all) while Lt. O'Loughlin was off duty, and were statements which for some time had been made openly by a variety of employees of the MBTA Police Department in the MBTA Police Department Headquarters. The statements alleged to have been made by Lt. O'Loughlin were largely matters of public concern. Statements far more harsh than the ones allegedly made by Lt. O'Loughlin had previously been made by various MBTA Police Department employees about the prior Chief of Police with no disciplinary actions having been taken.

27.    At the time that Lt. O'Loughlin was informed of the allegations against her and that she was being relieved of duty with pay, several SOT ("Special Operations Team") Officers were stationed outside the office of the Chief of Police (close to where Lt. O'Loughlin was attending her meeting) and two others were standing outside. The SOT team is a "SWAT" team, commonly used to deal with barricaded suspects who are armed with firearms. The use of SOT team members during the meeting with Lt. O'Loughlin was intended to (and did) humiliate Lt. O'Loughlin, by erroneously giving her subordinates the impression that she posed a physical threat to other members of the MBTA Police Department. These SOT Officers were removed from their regular duties to be present within view of Lt. O'Loughlin while she was being informed of her removal from duty. On information and belief, these armed SOT Officers were present merely to intimidate Lt. O'Loughlin and to make the proceedings she was involved in as

8

humiliating as possible for her. It was not regular practice or procedure to have SOT Officers present when an officer was being disciplined by the MBTA Police Department.

28.     The conduct which Lt. O'Loughlin allegedly engaged in, and for which she was relieved of duty with pay, did not, based upon past policies and practices of the MBTA Police Department, justify Lt. O'Loughlin being relieved of duty. Male employees of the MBTA Police Department have on many occasions engaged in conduct much more serious than that with which Lt. O'Loughlin was charged, but were either subjected to no discipline at all or to discipline much less serious than the discipline accorded Lt. O'Loughlin. In the past, male superior officers have received written reprimands for making disparaging remarks about their superior officers.

29.     On March 11, 2004, an article appeared in the Boston Globe with the headline "T-Police Officer suspended in Probe." The article discussed certain allegations made against Lt. O'Loughlin, and falsely stated in relation to Lt. O'Loughlin that the allegations could lead to criminal charges against her. The article falsely implied that the allegations against Lt. O'Loughlin were of a criminal nature. The article falsely implied that Lt. O'Loughlin, a highly decorated superior officer in the MBTA Police Department with 21 years of experience on the job, and the second highest ranking female in the MBTA Police Department, had engaged in criminal conduct. The article also states that an official of the MBTA stated to the Boston Globe reporter writing the story, that one of the four officers mentioned in the article was Lt. O'Loughlin. The article also falsely stated that Lt. O'Loughlin was the sister of former MBTA Police Chief Thomas J. O'Loughlin. Lt. O'Loughlin was the only MBTA Police Officer involved in the disciplinary proceedings whose name was released by the MBTA to the Boston Globe. The release of Lt. O'Loughlin's name to the Boston Globe and its inclusion in the Boston Globe story caused much pain and humiliation to Lt. O'Loughlin.

30.     The MBTA official who spoke with the Boston Globe reporter, and who released Lt. O'Loughlin's name to the Boston Globe reporter, was the MBTA General Manager, Michael Mulhern. Mr. Mulhern specifically released Lt. O'Loughlin's name to the Boston Globe reporter in order to humiliate her and cause her further emotional pain and embarrassment, all in

retaliation for her having previously filed the October 2003 Charge of Discrimination against the MBTA. Mr. Mulhern falsely led the Boston Globe reporter to believe (and to write in his news story) that the allegations against Lt. O'Loughlin were of a criminal nature, and could lead to criminal charges against her. Mr. Mulhern made these false statements to the Boston Globe reporter with the intent that this false information would be placed in the Boston Globe article and that the story in the newspaper would falsely imply that Lt. O'Loughlin had engaged in criminal conduct. It should also be noted, as further indication of Mr. Mulhern's retaliatory intention, that Mr. Mulhern was named as a Defendant in a lawsuit filed by former Chief Thomas O'Loughlin against the MBTA and others, including Mr. Mulhern. Thus, although former MBTA Chief of Police Thomas O'Loughlin had nothing to do with the situation involving Lt. O'Loughlin, Mr. Mulhern apparently attempted to cause embarrassment and humiliation to former Chief O'Loughlin by having his name mentioned in the Boston Globe article in retaliation for Chief Thomas O'Loughlin having asserted his rights as well.

31.    On or about March 18, 2004 an article also appeared in the Bay State Banner newspaper discussing the discipline of Lt. O'Loughlin and the three other MBTA Police Officers. Once again, the only officer named in the story was Lt. O'Loughlin. On information and belief, Lt. O'Loughlin's name was provided to the Bay State Banner reporter by Mr. Mulhern in retaliation for her having previously filed the October 2003 Charge of Discrimination.

32.    The actions of the MBTA in disciplining Lt. O'Loughlin on March 8, 2004, relieving her from duty, assigning her to her home, investigating her, subjecting her to disciplinary proceedings and intentionally releasing her name to newspaper reporters were all done in retaliation against Lt. O'Loughlin for having filed the October 2003 Charge of Discrimination with the Massachusetts Commission Against Discrimination and the US Equal Employment Opportunity Commission.

33.    In a further act of retaliation for having filed the October 2003 Charge of Discrimination, on or about April 5, 2004 Lt. O'Loughlin's official pager was shut off.

34.    The MBTA is fully responsible for the actions of Chief Carter, General Manager Mulhern and any of the other supervisors and managers who engaged in improper actions against Lt. O'Loughlin as alleged in this Complaint.

35.    By the actions set forth above, the MBTA has engaged in discrimination and illegal retaliation against Lt. O'Loughlin and denial of her civil rights. The MBTA has also failed to adequately investigate or stop the illegal actions against Lt. O'Loughlin, as it is obligated to do under relevant statutes. The discrimination and retaliation Lt. O'Loughlin complains of, appears to have been sanctioned and directed by individuals on the MBTA Police Department Command Staff as well as senior managers of the MBTA. All of this has been done in order to drive Lt. O'Loughlin out of the MBTA Police Department. All of these actions as well as the actions of retaliation set forth above were part of an illegal campaign of discrimination and retaliation against Lt. O'Loughlin.

36.    The actions of the MBTA, Chief Carter and Michael Mulhern set forth above were willful, intentional and knowing.

37.    The MBTA failed to effectively and adequately remedy the discrimination and retaliation suffered by Lt. O'Loughlin. The MBTA failed to adequately investigate or stop the discrimination and retaliation being suffered by Lt. O'Loughlin.

38.    As a direct and proximate result of the illegal, discriminatory and retaliatory actions of the MBTA, Chief Carter and Mr. Mulhern towards her as alleged in this Complaint, Lt. O'Loughlin has suffered and will continue to suffer severe emotional and financial harm.

## COUNT 1:    AGAINST MBTA AND JOSEPH CARTER FOR DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF M.G.L. c.151B

39.    Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶¶1-38 above.

40.    By their actions set forth above, Defendants MBTA and Carter have engaged in discrimination against Nancy O'Loughlin on the basis of gender, in violation of M.G.L. c.151B.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendants MBTA and Carter, jointly and severally, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, and such other and further relief that this Court deems just and proper.

## COUNT II.    AGAINST MBTA FOR DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF 42 USC §2000e

41.     Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-40 above.

42.     By its actions set forth above, Defendant MBTA has engaged in discrimination against Nancy O'Loughlin on the basis of gender, in violation of 42 USC §2000e.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant MBTA, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, and such other and further relief that this Court deems just and proper.

## COUNT III.  AGAINST MBTA, CARTER AND MULHERN FOR RETALIATION IN VIOLATION OF M.G.L. c.151B

43.     Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-42 above.

44.     In relation to her actions set forth above, Nancy O'Loughlin believed in good faith that the MBTA and Chief Carter had engaged in wrongful discrimination and retaliation against her, when she filed administrative charges of discrimination with the Massachusetts Commission Against Discrimination and the US Equal Employment Opportunity Commission.

45.    In taking the actions referred to above, Nancy O'Loughlin engaged in protected activity pursuant to M.G.L. c.151B and 42 USC §2000e.  As a result of engaging in protected activity, she suffered an adverse action which was causally related to her having engaged in protected activity.

46.    In taking the actions referred to above, Nancy O'Loughlin was opposing practices prohibited by M.G.L. c.151B and 42 USC section 2000e and was directly engaging in protected activities under M.G.L. c.151B and 42 USC section 2000e.

47.    Through their actions set forth above, the Defendants have coerced, intimidated, threatened and interfered with Nancy O'Loughlin in relation to her exercise and enjoyment of her rights granted pursuant to M.G.L. c.151B and 42 USC section 2000e, and have done so for her having opposed illegal practices and having asserted her rights granted pursuant to M.G.L. c.151B and 42 USC section 2000e, and having engaged in protected activity.

48.    The actions taken by Defendants, of which Nancy O'Loughlin complains, were taken against Nancy O'Loughlin due to her opposition to practices forbidden by M.G.L. c.151B and 42 USC section 2000e, and her having engaged in protected activities under MGL Chapter 151B and 42 USC section 2000e.

49.    By their actions set forth above, Defendants MBTA, Carter and Mulhern have engaged in unlawful retaliation against Nancy O'Loughlin and have interfered with Nancy O'Loughlin's exercise of her protected rights, in violation of M.G.L. c.151B.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendants MBTA, Carter and Mulhern, jointly and severally, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, and such other and further relief that this Court deems just and proper.

## COUNT IV. AGAINST MBTA FOR RETALIATION IN VIOLATION OF 42 USC Section 2000e

50.    Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-49 above.

51.    In relation to her actions set forth above, Nancy O'Loughlin believed in good faith that the MBTA and Chief Carter had engaged in wrongful discrimination and retaliation against her, when she filed administrative charges of discrimination with the Massachusetts Commission Against Discrimination and the US Equal Employment Opportunity Commission.

52.    In taking the actions referred to above, Nancy O'Loughlin engaged in protected activity pursuant to M.G.L. c.151B and 42 USC §2000e.  As a result of engaging in protected activity, she suffered an adverse action which was causally related to her having engaged in protected activity.

53.    In taking the actions referred to above, Nancy O'Loughlin was opposing practices prohibited by M.G.L. c.151B and 42 USC section 2000e and was directly engaging in protected activities under M.G.L. c.151B and 42 USC section 2000e.

54.    Through their actions set forth above, the Defendants have coerced, intimidated, threatened and interfered with Nancy O'Loughlin in relation to her exercise and enjoyment of her rights granted pursuant to M.G.L. c.151B and 42 USC section 2000e, and have done so for her having opposed illegal practices and having asserted her rights granted pursuant to M.G.L. c.151B and 42 USC section 2000e, and having engaged in protected activity.

55.    The actions taken by Defendants, of which Nancy O'Loughlin complains, were taken against Nancy O'Loughlin due to her opposition to practices forbidden by M.G.L. c.151B and 42 USC section 2000e, and her having engaged in protected activities under MGL Chapter 151B and 42 USC section 2000e.

56.    By their actions set forth above, Defendants MBTA, Carter and Mulhern have engaged in unlawful retaliation against Nancy O'Loughlin and have interfered with Nancy O'Loughlin's exercise of her protected rights, in violation of M.G.L. c.151B and 42 USC section 2000e.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant MBTA, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, and such other and further relief that this Court deems just and proper.

## COUNT V.    AGAINST CARTER FOR VIOLATION OF 42 USC §1983

57.    Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-56 above.

58.    In relation to the illegal and discriminatory actions set forth above which were taken in his position as a supervisor and one of the MBTA Police Department's managers, Chief Carter was acting under color of state law in depriving Plaintiff of her rights under federal law to be free of discrimination due to gender, and to be free from retaliation for having engaged in protected activity. Defendant Carter's actions in violation of 42 USC §1983 set forth herein, have caused injury to Plaintiff, in the form of serious and severe financial and emotional damages. Chief Carter engaged in a consistent pattern of retaliatory conduct against Lt. O'Loughlin.

59.    Chief Carter's actions in violation of 42 USC §1983 set forth herein, were done intentionally, knowingly, and willfully with knowledge of their wrongfulness. Defendant Carter is directly and personally responsible for his unlawful conduct, and was personally involved in committing the unlawful conduct.

60.    By his actions set forth above, Defendant Carter has, while acting under color of state law, deprived Plaintiff of her rights and privileges under federal laws in violation of 42 USC §1983.

15

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant Carter, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, and such other and further relief that this Court deems just and proper.

## COUNT VI.  AGAINST CARTER FOR VIOLATION OF M.G.L. c.12 §11

61.    Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶¶1-60 above.

62.    In relation to the illegal and retaliatory actions set forth above which were taken in his position as Chief of the MBTA Police Department, Defendant Carter was acting under color of state law in depriving Plaintiff of her rights under state and federal law to be free of retaliation for having engaged in protected activities. Defendant Carter's actions in violation of M.G.L. c.12 §11H set forth herein, have caused injury to Plaintiff, in the form of serious and severe financial and emotional damages. By his actions, Chief Carter has attempted to interfere by threats, intimidation, and coercion with Plaintiff's rights under state and federal law, in violation of M.G.L. c.12 §§11I and 11H.

63.    By his actions, set forth above, Defendant Carter engaged in a course of conduct designed to harass, humiliate and frustrate Plaintiff in the performance of her duties, in a deliberate and calculated effort to force her to resign her employment. Defendant Carter attempted to get Plaintiff to resign from her job and thus give up her right to work free from discrimination and retaliation. Through his threats, intimidation and coercion, Defendant Carter has attempted to interfere by his threats, intimidation and coercion with Plaintiff's rights under state and federal law, in violation of M.G.L. c.12 §§11I and 11H. Defendant Carter's actions in violation of M.G.L. c.12 §§11I and 11H set forth herein, have caused injury to Plaintiff, in the form of serious and severe financial and emotional damages.

64.    Defendant Carter's actions in violation of M.G.L. c.12 §§11I and 11H set forth herein, were done intentionally, knowingly, and willfully with knowledge of their wrongfulness.

Defendant Carter is directly and personally responsible for his unlawful conduct, and was personally involved in committing the unlawful conduct.

65.    By his actions set forth above, Defendant Carter has, while acting under color of state law, attempted through threats, intimidation and coercion to deprive Plaintiff of her rights and privileges under state and federal laws in violation of M.G.L. c.12 §§11I and 11H.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant Carter, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, and such other and further relief that this Court deems just and proper.

## COUNT VII. AGAINST MULHERN FOR VIOLATION OF 42 USC §1983

66.    Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-65 above.

67.    In relation to the illegal and discriminatory actions set forth above which were taken in his position as General Manager of the MBTA, Mr. Mulhern was acting under color of state law in depriving Plaintiff of her rights under federal law to be free of discrimination due to gender, and to be free from retaliation for having engaged in protected activity. Defendant Mulhern's actions in violation of 42 USC §1983 set forth herein, have caused injury to Plaintiff, in the form of serious and severe financial and emotional damages. Mr. Mulhern engaged in a consistent pattern of retaliatory conduct against Lt. O'Loughlin.

68.    Mr. Mulhern's actions in violation of 42 USC §1983 set forth herein, were done intentionally, knowingly, and willfully with knowledge of their wrongfulness. Defendant Mulhern is directly and personally responsible for his unlawful conduct, and was personally involved in committing the unlawful conduct.

69.    By his actions set forth above, Mr. Mulhern has, while acting under color of state law, deprived Plaintiff of her rights and privileges under federal laws in violation of 42 USC §1983.

17

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant Mulhern, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, and such other and further relief that this Court deems just and proper.

## COUNT VIII.  AGAINST MULHERN FOR VIOLATION OF M.G.L. c.12 §11

70.    Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-69 above.

71.    In relation to the illegal and retaliatory actions set forth above which were taken in his position as General Manager of the MBTA, Defendant Mulhern was acting under color of state law in depriving Plaintiff of her rights under state and federal law to be free of retaliation for having engaged in protected activities. Defendant Mulhern's actions in violation of M.G.L. c.12 §11H set forth herein, have caused injury to Plaintiff, in the form of serious and severe financial and emotional damages.  By his actions, Mr. Mulhern has attempted to interfere by threats, intimidation, and coercion with Plaintiff's rights under state and federal law, in violation of M.G.L. c.12 §§11I and 11H.

72.    By his actions, set forth above, Mr. Mulhern engaged in a course of conduct designed to harass, humiliate and frustrate Plaintiff in the performance of her duties, in a deliberate and calculated effort to force her to resign her employment. Defendant Mulhern attempted to get Plaintiff to resign from her job and thus give up her right to work free from discrimination and retaliation.  Through his threats, intimidation and coercion, Defendant Mulhern has attempted to interfere by his threats, intimidation and coercion with Plaintiff's rights under state and federal law, in violation of M.G.L. c.12 §§11I and 11H.  Defendant Mulhern's actions in violation of M.G.L. c.12 §§11I and 11H set forth herein, have caused injury to Plaintiff, in the form of serious and severe financial and emotional damages.

73.    Defendant Mulhern's actions in violation of M.G.L. c.12 §§11I and 11H set forth herein, were done intentionally, knowingly, and willfully with knowledge of their wrongfulness. Defendant Mulhern is directly and personally responsible for his unlawful conduct, and was personally involved in committing the unlawful conduct.

74.    By his actions set forth above, Defendant Mulhern has, while acting under color of state law, attempted through threats, intimidation and coercion to deprive Plaintiff of her rights and privileges under state and federal laws in violation of M.G.L. c.12 §§11I and 11H.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant Mulhern, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, and such other and further relief that this Court deems just and proper.

## COUNT IX.  AGAINST MULHERN FOR SLANDER AND DEFAMATION

75.    Plaintiff realleges and incorporates by reference as if fully set forth herein paragraphs 1-74 above.

76.    In making the false and defamatory statements of fact referred to above, and in particular making them with the desire and knowledge that the false and defamatory statements would be published in a newspaper of general circulation in the Greater Boston area, throughout the Commonwealth of Massachusetts and the United States, Mr. Mulhern knew that his statements to representatives of the Boston Globe and the Bay State Banner newspapers were false, and/or he acted with reckless disregard for their truth or falsity. Mr. Mulhern published the false and defamatory statements about Lt. O'Loughlin.

77. At the time that Mr. Mulhern made the false and defamatory statements referred to above about Lt. O'Loughlin, Mr. Mulhern had knowledge of the falsity of the remarks he was making to the Boston Globe reporter and/or the Bay State Banner reporter, acted with reckless disregard for the truth or falsity of the remarks he made to the Boston Globe reporter and/or the Bay State Banner reporter, acted with ill will and malice towards Lt. O'Loughlin, and excessively published the remarks he made. The false statements made by Mr. Mulhern held Lt. O'Loughlin up to scorn and ridicule in the community.

78. As a result of the false and defamatory statements made about Lt. O'Loughlin by Mr. Mulhern as referred to above, Lt. O'Loughlin has suffered injury to her reputation, as well as other injuries including emotional pain and suffering.

79. As is set forth above, Mr. Mulhern has published statements about Lt. O'Loughlin which are defamatory. These statements were published in bad faith, recklessly, either with actual malice toward Lt. O'Loughlin or with reckless disregard for their truth or falsity.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant Mulhern, in an amount to be determined by this Court, plus interest, costs and such other and further relief that this Court deems just and proper.


## COUNT X.  AGAINST MBTA FOR SLANDER AND DEFAMATION

80. Plaintiff realleges and incorporates by reference as if fully set forth herein paragraphs 1-79 above.

81. The defamatory statements made to representatives of the Boston Globe and Bay State Banner newspapers referred to herein, were made by Michael Mulhern and/or by other representatives, employees or officials of the MBTA. The person or persons who made such statements are referred to in this Count as being "the MBTA representatives." Whether the statements were made by Mr. Mulhern or by other representatives of the MBTA or both, the

20

MBTA is fully responsible and liable for the actions of its employees and/or representatives and/or officials in making such defamatory statements.

82.  In making the false and defamatory statements of fact referred to above, and in particular making them with the desire and knowledge that the false and defamatory statements would be published in a newspaper of general circulation in the Greater Boston area, throughout the Commonwealth of Massachusetts and the United States, the MBTA representatives knew that their statements to representatives of the Boston Globe and the Bay State Banner newspapers were false, and/or they acted with reckless disregard for their truth or falsity. The MBTA representatives published the false and defamatory statements about Lt. O'Loughlin.

83.  At the time that the MBTA representatives made the false and defamatory statements referred to above about Lt. O'Loughlin, the MBTA representatives had knowledge of the falsity of the remarks they were making to the Boston Globe reporter and/or the Bay State Banner reporter, acted with reckless disregard for the truth or falsity of the remarks they made to the Boston Globe reporter and/or the Bay State Banner reporter, acted with ill will and malice towards Lt. O'Loughlin, and excessively published the remarks they made. The false statements made by the MBTA representatives  held Lt. O'Loughlin up to scorn and ridicule in the community.

84.  As a result of the false and defamatory statements made about Lt. O'Loughlin by the MBTA representatives as referred to above, Lt. O'Loughlin has suffered injury to her reputation, as well as other injuries including emotional pain and suffering.

85.  As is set forth above, the MBTA representatives have published statements about Lt. O'Loughlin which are defamatory. These statements were published in bad faith, recklessly, either with actual malice toward Lt. O'Loughlin or with reckless disregard for their truth or falsity.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against the MBTA, in an amount to be determined by this Court, plus interest, costs and such other and further relief that this Court deems just and proper.

## JURY TRIAL DEMAND

### PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES AND COUNTS SO TRIABLE

Respectfully submitted,
NANCY O'LOUGHLIN
By her Attorney,

Mitchell J. Notis, BBO 374360
LAW OFFICE OF MITCHELL J. NOTIS
370 Washington Street
Brookline, MA 02445
Tel.: 617-566-2700

DATED: May 11, 2004