UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NANCY O'LOUGHLIN,  )
    Plaintiff,  )
      )
v.  )    C.A. No. 04-10933 JLT
      )
MASSACHUSETTS BAY  )
TRANSPORTATION AUTHORITY,  )
JOSEPH CARTER, and MICHAEL  )
MULHERN,  )
    Defendants.  )
      )

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANTS MASSACHUSETTS BAY TRANSPORTATION AUTHORITY AND JOSEPH CARTER[1]

### I.    INTRODUCTION

Plaintiff Nancy O'Loughlin ("O'Loughlin") filed a complaint in which she alleges that the Massachusetts Bay Transportation Authority ("the Authority") and Joseph Carter ("Carter")(collectively "defendants") discriminated against her on the basis of her gender and retaliated against her for filing a discrimination complaint. In addition, she alleges that the Authority defamed her. Defendants now move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss O'Loughlin's claims against them. Notwithstanding the liberal requirements of notice pleading, O'Loughlin has failed to present well-pleaded factual allegations demonstrating that she is entitled to relief pursuant to the causes of actions alleged, and all counts against Carter and the Authority (Counts I, II, III, IV, V, VI, and X) should be dismissed.

---

[1] Defendant Michael Mulhern has also submitted a motion to dismiss claims against him. The Massachusetts Bay Transportation Authority and Joseph Carter incorporate that motion and all arguments therein by reference, as if set forth fully herein.

## II.    ALLEGATIONS IN THE COMPLAINT[2]

O'Loughlin makes the following allegations in her complaint:

### A.    O'Loughlin Has Been Assigned To Several Leadership Positions Within The Police Department

O'Loughlin began working as a patrol officer with the Authority police department in November 1983. Compl. ¶ 11. She was promoted to the rank of lieutenant in 1996. Id. As a lieutenant, O'Loughlin worked in various leadership positions within the police department. From October 1996 through October 1997, she served as the supervisor of the Patrol Division. Id., ¶12. From October 1997 through June 2001, O'Loughlin supervised the department's system-wide Anti-Crime Unit. Id. From June 2001 through August 2002, O'Loughlin was again assigned to supervise the Patrol Division. From August 2002 through February 2003, she supervised a division within the Detective Unit. Id.

### B.    O'Loughlin Was Reassigned To Two Different Positions Of Leadership By A New Chief of Police

Joseph Carter became the Chief of Police in January 2003. Id., ¶ 13. Shortly after becoming Chief, Carter disbanded the division in the Detective Unit O'Loughlin commanded and placed her into the position of Detective Unit Commander. Id. O'Loughlin alleges that the job had previously been done by a sergeant. Id. O'Loughlin did not like the new assignment. She thought the position of Detective Unit Commander was a "desk job" and she did not want a desk job. Id. Her salary and rank were not affected by the reassignment. Id. On August 5, 2003, O'Loughlin was assigned to command the Detail Unit of the Police Department. Id. She did not lose salary or rank as a result of the reassignment. Id. O'Loughlin alleges that "it is well known" that the

---

[2] For purposes of this motion only, defendants accept as true plaintiff's well-pleaded allegations.

position of head of the Detail Unit was a "punishment position for any officer above the rank of sergeant". Id., ¶ 15. According to her, "in recent years", patrol officers and sergeants filled the position, except in those instances "when the MBTA Police Department desired to assign a superior officer to the position to punish them." Id., ¶ 15.

When O'Loughlin was reassigned to command the Detail Unit, a male officer succeeded her as Detective Unit Commander. Id. ¶ 16. A female lieutenant then filled the position. Id. A male lieutenant was next assigned to the position. Id. O'Loughlin alleges that as a result of the two reassignments, her job satisfaction and chances for advancement were greatly reduced and that each reassignment "was a move to a much lower status position".[3] Id. ¶¶ 13 and 14. In addition, she contends that there was less overtime compensation as head of the Detail Unit. Id., ¶ 14. O'Loughlin alleges that she viewed her assignment to both positions as attempts to "further marginalize her role in the MBTA Police Department" and "show disrespect toward her". Id. ¶¶ 13 and 14.

### C.     O'Loughlin Alleges That Carter Discriminated Against Her

Aside from the reassignments, O'Loughlin alleges that Carter treated her in seven additional ways "she considers to be based upon discrimination against her due to her gender". Id., 17; see § III(A)(3), below. O'Loughlin does not allege that Carter ever said anything to her that was indicative of sex discrimination or that she suffered a loss of rank or salary as a result of any of the alleged discriminatory acts.

---

[3] For the Court's information (though not alleged in O'Loughlin's complaint) the ranks in the police department in ascending order are patrol officer, sergeant, lieutenant, deputy chief, and chief. The deputy chief can hold any civil service rank and is appointed by the Chief of Police.

**D.    O'Loughlin Alleges That She Has Been Discriminated Against For Nearly Twenty-One Years**

O'Loughlin alleges that she has been subjected to a pattern and practice of discrimination on the basis of her gender throughout her entire career at the Authority. Id., ¶ 19. The complaint lists eight incidents that are allegedly indicative of a pattern and practice of discrimination that occurred prior to Carter becoming Chief. Id. O'Loughlin does not allege that she suffered any loss of salary or rank as a result of any of the acts listed or that she reported the incidents to anyone at the Authority.

**E.    O'Loughlin Is Relieved Of Duty With Pay**

On October 17, 2003, O'Loughlin filed a charge of discrimination with the MCAD, naming as defendants the Authority and Carter. Compl. ¶ 23. The defendants filed a position statement responding to the charge on March 8, 2004. Id. On March 8, 2004, O'Loughlin was relieved of duty with pay and assigned to work at home. Id., ¶ 24. Her gun, badge, identification card and cruiser were taken from her. Id. She was informed that she was being relieved of duty because of derogatory statements she made about the Chief of Police and command staff during taped telephone conversations she had with other police department employees. Id., ¶ 25. O'Loughlin alleges that on the day she was notified that she was being relieved of duty, officers from the Special Operations Team ("SOT") "were standing outside the office of the Chief of Police (close to where [she] was attending her meeting) and two others were standing outside." Id., 27.

**F.    Two Newspaper Articles Are Published That Mention O'Loughlin's Name**

O'Loughlin alleges that on March 11, 2004, a newspaper article appeared in the *Boston Globe* which falsely indicated that allegations against her could lead to criminal

charges and falsely implied that she had engaged in criminal conduct. Id., ¶ 29. She

alleges that she was the only officer involved in disciplinary proceedings whose name

was released to the newspaper. Id. O'Loughlin alleges the article also "falsely stated that

she was the sister of former MBTA Police Chief Thomas J. O'Loughlin." Id.

O'Loughlin alleges that Defendant Michael Mulhern ("Mulhern") spoke with the *Boston

Globe* and released her name as one of four officers mentioned in the article. Id., ¶ 30.

O'Loughlin also alleges that "on or about March 18, 2004 an article appeared in the *Bay

State Banner* newspaper discussing [her] discipline and the three MBTA police officers".

Id., ¶ 31. She alleges that Defendant Mulhern provided her name to the *Bay State

Banner*. Id. She does not allege that the *Bay State Banner* article contained false

information.

### III.    ARGUMENT

A complaint should be dismissed for failing to state a claim if "it appears beyond

doubt that the plaintiff can prove no set of facts in support of [her] claim which would

entitle [her] to relief". Guckenberger v. Boston Univ., 957 F.Supp. 306, 313

(D.Mass.1997)(citations omitted). The court is required to accept "all well-pleaded facts

as true" and "draw all reasonable inferences" in favor of the non-moving party. Garita

Hotel Ltd. P'ship v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992). However, the

Court "will not accept a complainant's unsupported conclusions or interpretations of law"

and "is obliged neither to credit bald assertions, periphrastic circumlocutions,

unsubstantiated conclusions, or outright vituperation . . . nor to honor subjective

characterizations, optimistic predictions, or problematic suppositions." Washington

Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir.

1993)(citation omitted); <u>Varney v. R.J. Reynolds Tobacco Co.</u>, 118 F. Supp. 2d 63 (D.Mass. 2000)(citations omitted)("Bald assertions and unsupported conclusions do not qualify as 'well-pleaded' facts, and are of no assistance to a plaintiff in defeating a motion to dismiss").  At the very least, plaintiff must "set forth minimal facts, not subjective characterizations, as to who did what to whom and why".  <u>Hunt v. Weatherbee</u>, 626 F.Supp. 1097, 1106 (D.Mass. 1986) citation omitted.

### A. O'Loughlin Has Not Stated A Claim For Sex Discrimination Under G.L. c. 151B (Count I – Against Carter and the Authority) Or Title VII (Count II – Against the Authority)

To make out viable claims of gender discrimination under Title VII or G.L. c. 151B, a plaintiff must present facts sufficient to show that she was treated adversely or otherwise discriminated against "because of her sex".  <u>Gorski v. New Hampshire Department of Corrections</u>, 290 F.3d 466, 471 (1st Cir. 2002)(Title VII); <u>Lewis v. City of Boston</u>, 321 F.3d 207, (1st Cir. 2003)(G.L. c. 151B).   While both statutes are designed to address unlawful discrimination in the workplace, neither provides a remedy for all workplace actions that an employee does not like or finds objectionable.  <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 310-311 (1st Cir. 1997); <u>Lattimore v. Polaroid Corp.</u>, 99 F.3d 456, 463 (1st Cir. 1996); <u>Williams v. Astra USA, Inc.</u>, 68 F.Supp.2d 29, 34-35 (D.Mass. 1989)(citations omitted); <u>Muzzy v. Callihane Motors, Inc.</u>, 434 Mass. 409 (2001).  Unless the terms, conditions, or privileges of her employment are adversely affected, a plaintiff cannot recover under either statute.  42 U.S.C. § 2000e-2(a)(1); G.L. c. 151B; <u>Hernandez-Torres v. Intercontinental Trading, Inc.</u>, 158 F.3d 43, 47 (1st Cir. 1998)(Title VII); <u>MacCormack v. Boston Edison Company</u>, 423 Mass. 652, 663 (1996)(chapter 151B); <u>see also</u> <u>Wyse v.  Summers</u>, 100 F. Supp. 2d 69, 77 (D.Mass. 2000)(an adverse action occurs

when an employee suffers "personal loss or harm with respect to a term, condition, or privilege of employment.")(citation and internal quotations omitted). As discussed below, O'Loughlin has failed to state a claim of sex discrimination against Carter or the Authority.

**1.    O'Loughlin Has Not Adequately Alleged That Her Reassignments Were Motivated By Sex Discrimination**

O'Loughlin does not expressly allege that Carter disbanded the division she commanded within the detective unit and reassigned her to a different position because of her sex.[4] See Compl., ¶ 16. When Carter eliminated that division shortly after he became chief, O'Loughlin had to be placed into another position and Carter assigned her to the position of Detective Unit Commander.[5] Id., ¶ 13. When she was later transferred to a second supervisory position (head of the Detail Unit), she was succeeded in the position of Detective Unit Commander by both male and female lieutenants.[6] Id., ¶ 16. Since O'Loughlin alleges that males and females of her rank were assigned to the Detective Unit Commander position, she has failed to state a claim that she was treated disparately because of her sex in regard to the reassignment.

Similarly, O'Loughlin has not put forth facts sufficient to state a claim that Carter was motivated by a discriminatory animus to assign her to command the Detail Unit. She

---

[4] For example, she does not allege that she was replaced as commander of the division within the detective unit by a man (she could not have been because the division was disbanded), or that similarly situated men were treated differently.

[5] O'Loughlin could not have credibly alleged that Carter, as a new Chief of Police, was not entitled to make changes within the police department he deemed appropriate (so long as he was not motivated by a discriminatory animus) including assigning higher ranked officers to positions previously held by subordinates.

[6] While defendants deny that all of the functions of O'Loughlin's position as Detective Unit Commander had been done by a sergeant as O'Loughlin alleges, (see Compl., ¶ 13), even if that was true, the only reasonable inference that can be drawn from her allegation is that Carter wanted to upgrade the leadership of the Detective Unit by assigning lieutenants to the position.

has not alleged a single fact indicative of sex discrimination, although O'Loughlin makes the conclusory assertion that she would not have been assigned to the position if she was a male (see Compl., ¶ 16). Though O'Loughlin claims that "it is well known" that the position had been used as a "punishment position" that had been filled by patrol officers and sergeants "in recent years", it is significant that she does not allege in her extremely detailed complaint that Carter used it as a punishment position. He cannot be held accountable for the actions of former chiefs in regard to the position, and he is allowed to place a lieutenant in command of the unit at his discretion. Moreover, O'Loughlin does not claim that men had never been placed into the position. She has failed to present facts sufficient to state a claim of sex discrimination regarding this reassignment.

### 2.    O'Loughlin Has Not Adequately Alleged That The Reassignments Were Adverse Employment Actions

It is evident from her complaint that O'Loughlin simply did not want to be in the Detective Unit Commander position because she did not want to be in a desk job. See Compl., ¶ 13. She also makes clear that she did not want to command the Detail Unit. O'Loughlin's apparent preference for her former position does not make her subsequent reassignments actionable under the anti-discrimination statutes because the reassignments did not constitute adverse employment actions within the meaning of Title VII and chapter 151B. See McKenzie v. Milwaukee County, 2004 U.S. App. LEXIS 17866 (7th Cir. 2004) citing Herrnreiter v. Chicago Hous. Auth., 315 F.3d 742, 745 (7th Cir. 2002) (police officer who was reassigned from the detective unit, where she wanted to work, to the patrol unit had not suffered an adverse action because "a transfer does not become an adverse employment action solely because the officer subjectively preferred one position

8

over another").[7]  2004 U.S. App. LEXIS 17866 (7th Cir. 2004).  An employment action

must be more "disruptive than a mere inconvenience or an alteration of job

responsibilities" to be actionable.  Id. citing Traylor v. Brown, 295 F.3d 783, 788 (7th

Cir. 2002); see e.g. MacCormack v. Boston Edison Company, 423 Mass. at 663-664

(plaintiff's subjective feelings of disappointment and disillusionment regarding a change

in job responsibilities do not constitute an adverse action under G.L. c. 151B, absent

evidence that he had been "disadvantaged in respect to salary, grade, or other objective

terms and conditions of employment").  Since O'Loughlin's rank and salary remained the

same after each reassignment, she did not experience any adverse action within the

meaning of Title VII or chapter 151B, notwithstanding her conclusory allegations

regarding the lower status of the positions.[8]  See Wyse v. Summers, 100 F. Supp.2d at 77

and cases cited; Nelson v. University of Maine Sys., 923 F.Supp. 275, 281 (D.Me.

1996)(Title VII does not cover "all actions that a plaintiff may find objectionable"; at a

minimum, the action must "impair or potentially impair the plaintiff's employment in

some cognizable manner".).

### 3. O'Loughlin's Allegations Related To Alleged Acts Of Discrimination By Carter Do Not State A Claim That Entitles Her To Relief

In paragraph 17 of the complaint, O'Loughlin lists discriminatory acts she

attributes to Carter.  The First Circuit has determined that:

---

[7]O'Loughlin's allegation that there was less overtime compensation in the Detail Unit position does not change the fact that her allegations indicate a preference rather than a material disadvantage.  She maintained the same rank and pay and remained a supervisor.  That less overtime happened to be available, if true, does not make the reassignment adverse.

[8] O'Loughlin's assertions that the reassignments diminished her chances for promotion are bare allegations that are not supported by the facts she pleaded.  As a practical matter, as a lieutenant, she could only have been promoted to the positions of deputy chief (upon appointment by the chief) and Chief of Police.  See n.2, above.  Moreover, any promotion would have been based on her entire career at the Authority.

> [A] plaintiff may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus. The alleged facts must specifically identify the particular instance(s) of discriminatory treatment and, as a logical exercise, adequately support the thesis that the discrimination was unlawful". Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990).

O'Loughlin's conclusory assertions that the listed acts and incidents would not have occurred had she been male are insufficient to state a claim of sex discrimination that would entitle O'Loughlin to relief. Moreover, O'Loughlin does not allege that any action on her list adversely affected the terms, conditions, or privileges of her employment or were otherwise adverse employment actions within the meaning of either Title VII or chapter 151B. Specifically, O'Loughlin does not allege a consequence as a result of Carter allegedly: failing to place a commendation into her personnel file (¶ 17(1)); not supporting her on one occasion regarding a dispute with a subordinate (¶ 17(2))[9]; informing her that her duties would change when she was reassigned to command a new unit (¶ 17(3)); and making her transfer to a new assignment effective immediately (¶ 17(5)).

The allegation that Carter avoided her (¶ 17(4)) is a "subjective and intangible impression" that can not be addressed by the anti-discrimination laws. See Bain v. City of Springfield, 424 Mass. 758, 765-66 (1997)(plaintiff's allegations that the defendant "acted coldly" toward her and that his body language "betokened hostility toward her" cannot be addressed in the context of a G.L. c. 151B claim); see also McKenzie v. Milwaukee County, 2004 U.S. App. LEXIS 17866 citing Patton v. Ind. Pub. Sch. Bd., 276 F.3d 334, 339 (7th Cir. 2002)(there is no actionable discrimination where supervisor

---

[9] Nor does O'Loughlin allege that she took any action, which she could have done since she was the subordinate's superior officer.

failed to greet plaintiff and was "standoffish," "unfriendly," and "unapproachable"). O'Loughlin's allegation that Carter told an unidentified Deputy Chief that O'Loughlin was not dressed properly does not constitute an adverse action, even if she <u>was</u> dressed appropriately. Finally, O'Loughlin's claim about not being able to take six weeks vacation between Thanksgiving and Christmas of this year is pure speculation because the time has not yet arrived. This allegation does not present an adverse action.[10]

### 4.  <u>O'Loughlin Has Not Alleged Facts Sufficient State A Claim That Carter Or The Authority Are Culpable For Actions That Allegedly Occurred Prior To Carter Becoming Chief</u>

O'Loughlin has not put forth facts sufficient to indicate that Carter or the Authority can be held liable for acts that occurred over the course of her almost twenty-one year career with the police department. <u>See</u> Compl., ¶ 19. The incidents on her list occurred prior to Carter becoming Chief and are totally unrelated to any of the discrimination she alleges occurred after his arrival.[11]    He cannot be held liable for the

---

[10] At best, the incidents cited by O'Loughlin represent "de minimis" employment actions that are not actionable under Title VII and chapter 151B. <u>See</u> e.g. <u>Wyse v. Summers</u>, 100 F. Supp. 2d at 77 <u>citing Williams v. Bristol-Myers Squibb Co.</u>, 85 F.3d 270, 274 (7th Cir. 1996) (every trivial personnel action that an irritable, chip-on-the-shoulder employee does not like cannot form the basis of a claim under Title VII). Title VII and G.L. c. 151B are not designed to address trivial or inconsequential claims of unfair treatment. <u>Lipsett v. Rive-Mora</u>, 669 F. Supp. 1188 (D.P.R. 1987) <u>citing and quoting Zabkowicz v. West Bend Co.</u>, 589 F. Supp. 780, 784 (D. Wis. 1984)(Title VII may not be used as a vehicle to vindicate the "petty slights of the hypersensitive").

[11] O'Loughlin also alleges that the incidents are continuing violations, suggesting that they occurred outside of the 300 day statutory period for filing claims pursuant to G.L. c. 151B and Title VII (Compl., ¶ 20). She has not alleged a continuing violation. Under Title VII, discriminatory conduct occurring outside the statute of limitations period will be actionable when that conduct "involve[s] the same type of employment actions, <u>occurred relatively frequently, and [was] perpetrated by the same managers</u> as conduct which occurred within the limitations period. <u>Brissette v. Franklin County Sheriff's Office</u>, 235 F.Supp.2d 63, 87-88 (D. Mass. 2003). In Massachusetts, a plaintiff will be barred from filing a complaint if a reasonable person in her position "knew or should have known" that discriminatory conduct occurred and would have filed a complaint before the statute of limitations expired. <u>Id.</u> <u>citing and quoting Cuddyer v. Stop and Shop Supermarket Co.</u>, 434 Mass. 521, 539 (2001). The isolated incidents O'Loughlin cites are completely unconnected to her current claims, and by her own admission, were not ongoing at the time Carter arrived. She also knew the acts were discriminatory while they were occurring (<u>see</u> ¶ 20 "Lt. O'Loughlin always hoped and anticipated that this improper conduct would stop").

incidents. Similarly, O'Loughlin does not allege facts sufficient to state a claim against

the Authority because she does not identify the alleged perpetrators and does not allege

that she notified or complained to anyone at the Authority about the alleged

discriminatory occurrences.[12]

**B.** **O'Loughlin Has Not Alleged Facts Sufficient To State A Claim For Unlawful Retaliation Under G.L. c. 151B (Count III – Against Carter and the Authority) Or Title VII (Count IV – Against the Authority)**

O'Loughlin's retaliation claim is based on her allegation that she was relieved of

duty with pay because she filed a complaint with the MCAD and the Equal Employment

Opportunity Commission ("EEOC"). She also claims retaliation against the Authority

because her name appeared in two newspapers. To state a claim for retaliation,

O'Loughlin must set forth facts sufficient to show that she engaged in a protected

activity, that she suffered an adverse employment action, and that the adverse action was

causally related to the protected activity. E.g. Calero-Cerezo v. United States Department

of Justice, 355 F.3d 6, 25 (1st Cir. 2004)(Title VII). O'Loughlin has failed to allege facts

sufficient to state actionable claims of retaliation.

**1.** **O'Loughlin Has Not Adequately Alleged That She Was Relieved Of Duty Because Of Unlawful Retaliation**

O'Loughlin alleges that the Authority and Carter filed a response to her MCAD

complaint on March 8, 2004, the same day she was relieved from duty. Based on that

---

[12] While Title VII and G.L. c. 151B allow claims on a hostile environment theory, O'Loughlin does not plead such a claim, and a hostile environment cannot be inferred from her allegations. In particular, she has not alleged facts sufficient to show that the workplace was "permeated with discriminatory intimidation, ridicule, and insult" [that was] "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment". Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993) quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986); see Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. at 532 ("hostile work environment is one that is pervaded by harassment and abuse, with the resulting intimidation, humiliation, and stigmatization, [which] poses formidable barriers to the full participation of an individual in the workplace").

assertion, she alleges, in conclusory fashion, that she was retaliated against. To state an actionable claim of retaliation based on the temporal relationship between a protected activity and an adverse action, a plaintiff must allege that the time period between the two was "very close". See Calero-Cerezo v. United States Department of Justice, 355 F.3d 6 (1st Cir. 2004)(citations omitted). Courts have found that periods of three and four months between the protected activity and alleged retaliatory act were insufficient to demonstrate the requisite causal connection based on temporal proximity. See id. and cases cited.

O'Loughlin filed her complaint on October 17, 2003, almost a full five months before she was relieved of duty (the date defendants answered that complaint is not a protected activity and is totally unrelated to the retaliation claim). That is too long a period to presume a causal connection between O'Loughlin's filing of a complaint and her being relieved of duty. See e.g. King v. Town of Hanover, 116 F.3d 965, 968 (1st Cir. 1997)(there is no causal relationship between complaint of discrimination and discipline that occurred five months later).

### 2.  O'Loughlin's Suggestion That She Was Unfairly Disciplined Does Not State A Claim Of Retaliation

O'Loughlin's allegations that the derogatory statements she made about Carter and the command staff on a taped police department telephone line were made when she was off duty, had been made openly by others in the police department, were largely matter of public concern, and were far less harsh than those made by officers against the prior chief of police (without discipline) do not aid her retaliation claim. See Compl., ¶ 26. As Chief of Police, Carter has an obligation to address speech by an officer that has the tendency to undermine the proper functioning of the police department. See Kokknis

v. Ivkovich, 185 F.3rd 840, 845 (7th Cir. 1999) citing  and quoting Khuans v. School Dist.,
110, 123 F.3d 1010, 1017 (7th Cir. 1997)(emphasis added)(where an employee's speech
"create[s] a potential problem in maintaining authority and discipline within [a police]
department", the Chief of Police is entitled to take preventative action). Id.

O'Loughlin stands on a different footing than other individuals who may have
made comments similar to the ones she is alleged to have made. O'Loughlin was a
highly ranked officer who had been on the Authority Police Department for a number of
years and she held a position of leadership. Derogatory statements coming from her had
much more potential to undermine the Chief and command staff than did routine
complaints made by other officers. This is particularly true since Carter was new a new
Chief. O'Loughlin's allegation that the prior chief did not discipline officers for making
comments that were harsher than the ones she allegedly made is not relevant. Carter was
not obliged to follow the standard of discipline (or lack thereof) imposed by his
predecessor.

### 3. O'Loughlin Has Not Alleged Facts Sufficient To Show That Her Name Appeared In The Newspaper Because Of Unlawful Retaliation

O'Loughlin alleges that the publication of her name in the *Boston Globe* was
retaliatory and caused her pain and humiliation. See Compl. ¶¶ 29 and 30. She also
alleged that the publication of her name in the *Bay State Banner* was retaliatory. This
claim must fail because O'Loughlin does not allege that she experienced an adverse
employment action because of the publications. See MacCormack v. Boston Edison
Company, 423 Mass. at 662 (an adverse employment action is a necessary element of a
retaliation claim)(citation omitted).

**C.    O'Loughlin Has Not Stated A Claim Under 42 U.S.C. § 1983 Against Carter (Count V)**

To bring an action under § 1983, O'Loughlin "must show both the existence of a federal constitutional or statutory right, and some deprivation of that right as a result of defendants' actions under color of state law". 42 U.S.C. § 1983; <u>Watterson v. Page</u>, 987 F.2d 1, 2 (1st Cir. 1993)(citation omitted). O'Loughlin has not stated a claim under § 1983 because she has not alleged that Carter violated her rights under federal law (she alleges only a violation of G.L. c. 151B; G.L. c. 12, § 11I does not create any substantive rights). <u>See</u> e.g. <u>id.</u>, at 2 (complaint fails to state a claim where plaintiff relies on unsupported allegations of a deprivation of rights).

**D.    O'Loughlin Has Not Adequately Alleged A Violation Of G.L. c. 12, § 11I Against Carter (Count VI)**

To state a claim for a violation of G.L. c. 12, § 11I, the Massachusetts Civil Rights Act ("MCRA"), a plaintiff must show that (1) her exercise or enjoyment of rights secured by the Constitution or laws of the United States or the Commonwealth of Massachusetts (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by means of threats, intimidation, or coercion. G.L. c. 12, § 11I; <u>Swanset Development Corp. v. City of Taunton</u>, 423 Mass. 390, 395-396 (1995) and cases cited. The Supreme Judicial Court has "sternly construed" the words threats, intimidation, and coercion. <u>Anderson v. Boston School Committee</u>, 105 F.3d 762, 766 (1st Cir. 1997). For purposes of the MCRA, a threat "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm", intimidation is "putting [another] in fear for the purpose of compelling or deterring conduct," and coercion is "the application of such force, either physical or

moral, as to constrain him to do against his will something he would not otherwise have done." Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474 (1994). O'Loughlin's claim under the MCRA fails for three independent reasons.

First, as discussed above, she does not adequately allege that Carter deprived her, or attempted to deprive her, of a protected right. Second, even if Carter had deprived O'Loughlin of a protected right, she has not alleged, and no reasonable inference can be drawn from the allegations in the complaint, that Carter did so by way of threat, intimidation, or coercion. See Marsman v. Western Electric Company, 719 F.Supp. 1128, 1138 (D.Mass. 1988)(A plaintiff must allege the particular conduct that constituted threats, intimidation, and coercion, or "every routine reassignment or transfer in employment could be a violation of [the MCRA]")(emphasis added). A direct violation of rights, standing alone, does not violate the statute. Tedeschi v. Reardon, 5 F.Supp.2d 40, 46-47 (D.Mass. 1998)(citation omitted) citing Longval v. Commissioner of Correction, 404 Mass. 325, 333 (1989). To the extent O'Loughlin is alleging that the presence of Special Operations Team officers at police headquarters on the day she was relieved of duty constituted the necessary threats, intimidation or coercion necessary to anchor her MCRA claim, the claim must fail. O'Loughlin does not allege that the SOP officers violated any protected right she may have had or that they did or said anything at all to her.[13]

Third, the claim is barred by the exclusivity provisions of G.L. c. 151B, the state law remedy for employment discrimination. Butler v. RMS Technologies, Inc., 741

---

[13] O'Loughlin alleges that the "[o]n information and belief, the SOP officers were present merely to intimidate [her] (Compl., ¶ 27). Mere recitals of boilerplate claims of "threats intimidation, or coercion" are insufficient to state a claim under the MCRA. See Lorenzo v. Trooper Gallant, 2002 U.S.Dist LEXIS 24167 citing Canney v. City of Chelsea, 925 F.Supp. 58, 70 (D.Mass. 1998).

F.Supp. 1008, 1011 (D.Mass. 1990).  Moreover, a plaintiff cannot simultaneously pursue

duplicative remedies under G.L 151B and the MCRA.  Bergeson v. Franchi, 783 F.Supp.

713, 720 (D. Mass. 1992)(permitting duplicative claims "would allow claimants to

bypass the procedural prerequisites defined by the legislature in Mass. Gen. L. ch. 151B,

crippling the effectiveness of this specific statutory remedy for discrimination in

employment").  The MCRA claim cannot survive even though O'Loughlin may have

complied with the procedural prerequisites of chapter 151B.  Id. (dismissal of MCRA

claim warranted even though the plaintiff had properly filed an administrative claim

pursuant to chapter 151B.  Id.; see Nickerson-Malpher v. Market Forge Co., 6 Mass. L.

Rep. 504 (1997)(MCRA claim barred, despite properly asserted G.L. c. 151B claim)

(citation omitted); see also Lowden v. Mercer, 903 F.Supp. 212, 222-23 (D.Mass.

1995)(surveying cases in which courts found that MCRA actions related to employment

discrimination were barred where chapter 151B was applicable).

### E.    Carter Is Entitled To Qualified Immunity On The MCRA And § 1983 Claims

The doctrine of qualified immunity protects government officials from personal

liability for civil damages under 42 U.S.C. § 1983 and G.L. c. 12, §§ 11H and I, as long

as their actions do not "violate clearly established statutory or constitutional rights of

which a reasonable person would have known." Jarrett v. Town of Yarmouth, 309 F.3d

54 (1st Cir. 2002)(citations omitted); Guierrez v. Massachusetts Bay Transportation

Authority, 437 Mass. 396, 403 (2002)(qualified immunity principles as developed under

federal law protect public officials charged with violations of the Massachusetts Civil

Rights Act)(citations omitted).  The standard for establishing qualified immunity is not

demanding.  Shabazz v. Cole, 69 F. Supp. 2d 177 (D.Mass. 1999) citing Ricci v. Urso,

974 F.2d 5, 6 (1st Cir. 1992). A defendant may raise the issue of qualified immunity by way of a motion to dismiss if entitlement to the defense is evident from the allegations in the complaint. Guierrez v. Massachusetts Bay Transportation Authority, 437 Mass. 396, 404 (2002) citing Johnson v. Breeden, 280 F.3d 1308, 1317 (11th Cir. 2002).

All of Carter's acts were objectively reasonable. Moreover, as discussed above, O'Loughlin has not stated a claim against Carter for violations of her rights under G.L. c. 151B. Therefore, Carter is entitled to qualified immunity on the MCRA claim. Similarly, O'Loughlin has not charged Carter with violating a federal law – he should be granted qualified immunity on the § 1983 claim.

### F.    O'Loughlin Has Not Alleged An Actionable Claims Against The Authority For Slander/ Defamation (Count X)

O'Loughlin's defamation claim against the Authority should be dismissed because the words ascribed to Defendant Michael Mulhern and an unnamed Authority official are not defamatory. "Defamation is the publication, either orally or in writing, of a statement concerning the plaintiff which is false, and causes the plaintiff damage". Yohe v. Nugent, 321 F.3d 35, 39-40 (1st Cir. 2003). A defamatory statement is one that holds the plaintiff up to contempt, hatred, scorn or ridicule, or tends to impair his standing in the community. Id., at 40. A statement is not defamatory if it is an opinion based on "disclosed or assumed non-defamatory facts . . . no matter how unjustified or unreasonable the opinion may be or how derogatory it is". Id.

O'Loughlin is considered a public official because she is a law enforcement officer. Rotiewicz v. Sadowsky, 431 Mass. 748, 752 (2000)(citation omitted). As a public official, she cannot recover damages for defamation unless she establishes with "convincing clarity" that the defamatory statements were published with "actual malice."

E.g. Pendleton v. City Of Haverhill, 156 F.3d 57 (1st Cir. (1998). Therefore, O'Loughlin must also allege that the statements she claims are defamatory were published with "knowledge that the statement[s] [were] false or with reckless disregard for [their] falsity". Rotiewicz, 431 Mass. At 752; McAvoy v. Shufrin, 401 Mass. 593, 596 (1964). Whether or not a statement is susceptible of a defamatory meaning is initially a matter of law for the court. Foley v. Lowell Sun Publishing Co., 404 Mass. 9, 11 (1989).

A defamation claim may not be based solely on a reading of the alleged defamatory statements that interprets the language in the most negative way possible. Veilleux v. National Broadcasting Company, 206 F.3d 92, 108 (1st Cir. 2000). Rather, the statements must be read in context and "its defamatory tendency must be specific and significant". Fatahi v. Fleet Bank of Boston, 14 Mass. L. Rep. 393 (2002) citing and quoting Tartaglia v. Townsend, 19 Mass.App.Ct. 693, 698 (1985)(emphasis added). The Massachusetts Supreme Judicial Court highlighted the importance of reviewing a statement in context in Foley v. Lowell Sun Publishing Company, in which it found:

> [s]tatements alleged to be libelous must be interpreted reasonably. King v. Globe Newspaper Co., 400 Mass. 705, 711-712 (1987), cert. denied, 485 U.S. 940 and 962 (1988). As we have said in another context, this interpretation "requires that the court examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence." Myers v. Boston Magazine Co., 380 Mass. 336, 341-342 (1980), quoting Information Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 784 (9th Cir. 1980). Foley v. Lowell Sun Publishing Company, 404 Mass. 9, 11 (1989).

The text of the article obtained from the *Boston Globe* is attached hereto at Tab 1.[14] Read in its complete context, the article does not suggest that O'Loughlin, "a highly

---

[14] Defendants assume that the article is not in dispute. Therefore, the article may be reviewed by the Court in the context of a motion to dismiss. Young v. Lepone, 305 F.3d 1, 11 (1st Cir. 2002)(a document

decorated superior officer . . . with 21 years of experience . . . and the second highest ranking female in the MBTA Police Department, had engaged in criminal conduct", as she alleges (Compl. ¶ 29). At best, the article indicates that three officers of the Authority Police Department holding the rank of police officer, were suspended after an investigation; a lieutenant was <u>alleged</u> to have encouraged their behavior and was also suspended; an investigation was ongoing that could lead to criminal charges; and that an anonymous Authority official and two others familiar with the investigation said that O'Loughlin was one of the officers suspended and that she was the sister of the former Chief of Police. The article also recounted the reporter's efforts to get more information on the matter and discussed perceived problems in the police force.

It is significant that the article <u>did not</u> indicate that O'Loughlin had been or was to be charged with a crime or that she had engaged in criminal behavior. It is also significant that the article indicates that the Authority, Mulhern, and an Authority spokesman expressly declined to comment on O'Loughlin. The possibility of criminal charges resulting from the investigation is placed in context when the article indicates that the Authority spokesman said that "[t]here is an ongoing internal investigation that concerns egregious violations of the department's policies, rules and regulations <u>as well as allegations</u> of criminal conduct" (emphasis added).[15] A reasonable reader could only conclude that there may have been criminal activity (along with violations of policies, rules, and regulations) and that someone <u>might</u> ultimately be charged criminally,

---

effectively "merges into the pleadings" when the allegations in the complaint revolve around a document whose authenticity is unchallenged)(citations omitted).

[15] The statements attributed to Mulhern are clearly not discriminatory. O'Loughlin's unfounded allegation that Mulhern was the unnamed Authority official is pure speculation, and not a well-pleaded statement of fact sufficient to state a claim against him.

depending upon the results of the investigation.[16]  Cf. Draghetti v. Chmielewski, 416

Mass. 808, 812 (1994)(statements by a police chief suggesting that the police department

had investigated the activities of an officer and referred the matter to the district

attorney's office for prosecution were defamatory).

    The circumstances in this case are more analogous to those in Polonsky v.

Cousins, 2001 Mass. Super. LEXIS 131.  In that case, it was reported that the Sheriff had

"sacked" the plaintiff from his position with the sheriff's department and "launched a

criminal investigation" into apparent financial improprieties in the plaintiff's department.

Id.  The investigation did not uncover any criminal conduct.  Id.  After noting that "the

Sheriff did not accuse the plaintiff of being a thief or of having stolen public funds or

property", the court determined that the Sheriff could not be found liable for defamation.

Id. (emphasis added).  The court found that in his statements to the media, the Sheriff was

merely expressing his opinion that criminal conduct may have occurred, warranting the

investigation.

    The statement in the *Boston Globe* regarding the fact that an ongoing

investigation within the Authority police department might lead to criminal charges

against several officers was a similar opinion.  As the opinion was based on disclosed or

assumed non-defamatory facts, the words do constitute actionable defamation.[17]  See

Yohe v. Nugent, 321 F.3d at 41.

---

[16] The assertion that O'Loughlin was the sister of former Chief of Police Thomas O'Loughlin, which she alleges is not true, is not defamatory.  In addition, the *Boston Globe* published a correction the following day showing that O'Loughlin was related to former Chief O'Loughlin by marriage and was not his sister. Moreover, O'Looughllin alleges that the reference was included to embarrass Thomas O'Loughlin, not her. She has not stated a claim on this account.

[17] O'Loughlin does not allege that the *Bay State Banner* article was defamatory.

## IV.    CONCLUSION

For all of the above reasons, all claims against the Authority and Joseph Carter should be dismissed.

Respectfully submitted,

DEFENDANT MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY AND
JOSEPH CARTER
By their attorneys,

/s/ Joseph L. Edwards, Jr.
Walter B. Prince, BBO# 406640
Laurie F. Rubin, BBO# 564947
Joseph L. Edwards, Jr., BBO# 564288
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA  02109
(617) 456-8000

Dated: September 13, 2004.