UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NANCY O'LOUGHLIN, | ) | |
|  | ) | |
| Plaintiff | ) | |
|  | ) | |
| v. | ) | |
|  | ) | C.A. No. 04-10933 JLT |
| MASSACHUSETTS BAY | ) | |
| TRANSPORTATION AUTHORITY | ) | |
| and | ) | |
| JOSEPH CARTER | ) | |
| and | ) | |
| MICHAEL MULHERN, | ) | |
|  | ) | |
| Defendant | ) | |

**DEFENDANT MICHAEL MULHERN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS COUNTS III, VII, VIII AND IX OF THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Defendant Michael Mulhern ("Mulhern") submits this Memorandum of Law in Support of his Motion to Dismiss the Complaint of Plaintiff Nancy O'Loughlin ("Ms. O'Loughlin" or "Plaintiff"). This is primarily a gender discrimination and retaliation case arising from (a) the reassignment of Plaintiff, a police officer for the Police Department of Defendant Massachusetts Bay Transportation Authority ("MBTA"), to two different positions within that department without change in rank or pay and (b) the subsequent suspension of Plaintiff with pay following discovery of certain misconduct. Although Ms. O'Loughlin asserts multiple counts against General Manager Mulhern,[1] her only factual allegations against him relate to the contention that he allegedly provided false information to two Boston newspapers that published articles concerning Plaintiff's suspension. Even if the allegations were true, however, this conduct does

---

[1] Count III Against MBTA, Carter and Mulhern for Retaliation in Violation of M.G.L. c. 151B; Count VII Against Mulhern for Violation of 42 USC §1983; Count VIII Against Mulhern for Violation of M.G.L. c. 12 §11; and Count IX Against Mulhern for Slander and Defamation.

not support Plaintiff's claims against Mulhern for deprivation of federal and state civil rights, retaliation and defamation. Therefore the Court should dismiss all of these claims.

## PLAINTIFF'S FACTUAL ALLEGATIONS

For purposes of this motion only, Mulhern accepts, without admitting for any other purpose, certain factual allegations made by Ms. O'Loughlin, as follows:

### 1. Plaintiff Was Twice Assigned To Different Positions With No Reduction In Rank Or Pay.

In November, 1983, Plaintiff commenced employment with the MBTA Police Department as a patrol officer. (Complaint, ¶11.)

In February 2003, following the disbandment of the division Plaintiff had been heading, the MBTA reassigned her to the position of Detective Unit Commander. (Id., ¶13.) Plaintiff alleges that her reassignment to Detective Unit Commander was "an attempt to further marginalize her role in the MBTA Police Department, and to show disrespect towards her." (Id.) However, she suffered no reduction in rank or pay. (Id.)

On August 5, 2003, the MBTA again reassigned Plaintiff, this time to head of the Detail Unit. (Id., ¶14.) Plaintiff alleges that she was assigned the new position "as another attempt to marginalize her role in the MBTA Police Department, and to again show disrespect towards her." (Id.) Again, Plaintiff suffered no reduction in rank or pay. (Id., ¶14.)[2]

### 2. Plaintiff Filed A Charge Of Discrimination Against The MBTA And Chief Joseph Carter.

During the time that Plaintiff worked under Defendant Joseph Carter ("Carter"), who became Chief of the MBTA Police Department in January 2003 (Id., ¶13), Plaintiff alleges that Carter discriminated against her in various ways based upon her gender. (Id., ¶¶17-19.) On

---

[2]    Although Plaintiff alleges that she would not have been assigned from Detective Unit Commander to head of the Detail Unit if she were male, she was replaced as Detective Unit Commander by a male, a female and a male, in that order. (Id., ¶16.)

- 2 -

October 17, 2003, Plaintiff filed a Charge of Discrimination (the "Charge") with the Massachusetts Commission Against Discrimination naming only the MBTA and Carter as defendants. Mulhern was not named. (Id., ¶23.)

### 3. Five Months After Filing Her Charge, Plaintiff Was Suspended With Pay After The MBTA Obtained Tape Recorded Conversations In Which Plaintiff Made Derogatory Statements About Carter And Others.

On March 8, 2004, Plaintiff was relieved of duty with pay and assigned to duty at her home. (Id., ¶24.) Ms. O'Loughlin acknowledges that the reason given was that "the MBTA had obtained tape recorded conversations of telephone calls she was involved in with other MBTA Police Department employees, in which she allegedly made derogatory statements about [Carter] and members of the command staff." (Id., ¶25.)

### 4. Plaintiff Alleges That She Was Embarrassed And Humiliated When Mulhern Allegedly Provided False Information To Two Newspapers That Published Articles Concerning Plaintiff's Suspension.

Ms. O'Loughlin's only factual allegations against Mulhern are as follows:

On March 11, 2004, approximately five months after Plaintiff filed the Charge, an article appeared in the *Boston Globe* entitled "T-Police Officer suspended in Probe." (Id., ¶29.) According to Ms. O'Loughlin, the *Boston Globe* article falsely implied that the MBTA's allegations against her are criminal in nature and could lead to criminal charges against her. Although it is unclear why this next point is considered defamatory, she also alleges that Mulhern falsely stated that she is the sister of former MBTA Police Chief Thomas J. O'Loughlin. (Id.) Plaintiff alleges that she is the only police officer who was involved in disciplinary proceedings and whose name is mentioned in the article. (Id.) Plaintiff alleges, without providing any detail, that Mulhern was the "MBTA official" who provided the information contained in the *Boston Globe* article. (Id., ¶30.)

On or about March 18, 2004, an article appeared in the *Bay State Banner* discussing discipline undertaken against Plaintiff and three other MBTA police officers. (Id., ¶31.) Plaintiff alleges she was the only police officer whose name was mentioned in the *Bay State Banner* article. (Id.) Plaintiff alleges on information and belief, and without providing any detail, that Mulhern provided the information used in the *Bay State Banner* to retaliate against her for filing the Charge. (Id.) While Ms. O'Loughlin alleges in general terms that Mulhern provided false statements to the *Bay State Banner* (Complaint, ¶¶76-77) she does not specify what information contained in the *Bay State Banner* article is allegedly false.

While Plaintiff alleges that Mulhern provided this information to the *Boston Globe* and *Bay State Banner* in retaliation for her filing the Charge, the only harm Plaintiff alleges she suffered as a result of Mulhern's actions is embarrassment (Plaintiff also characterizes it as "injury to her reputation"), emotional pain and humiliation. (Id., ¶¶29-31 and 78.)

## ARGUMENT

In evaluating a motion to dismiss, the Court must presume to be true only the well-pleaded facts contained in the complaint. Cooperman v. Individual Inc., 171 F.3d 43, 47-48 (1st Cir. 1999); In re Peritus Software Services Inc. Sec. Litig., 52 F. Supp. 2d 211, 218-19 (D. Mass. 1999). The Court need not accord deference to legal conclusions or inferences not logically drawn from the well-pleaded facts. Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996) (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)).

As a preliminary matter, the causes of action asserted under two state statutes, M.G.L. Chapter 151B and M.G.L. Chapter 12 §11, as well as those at common law, can be included in these proceedings only under a theory of pendent jurisdiction. Such jurisdiction may only be invoked if this Court has original jurisdiction under a federal claim against the same defendant, the federal question is substantial, and the federal and nonfederal claims are so closely related as

to constitute a single cause of action.  28 U.S.C. 1367(a).  For the reasons discussed below, the federal claim against Mulhern must be dismissed, and this Court should not exercise pendent jurisdiction over the remaining state claims.  Because of the pendent jurisdiction issue, the counts are not discussed in the order in which pleaded, rather, the sole federal count against Mulhern is addressed first.

I.  **The Court Should Dismiss Count VII Because (a) Plaintiff Does Not, And Cannot, Allege That Mulhern Deprived Her Of A Federal Right, Privilege, Or Immunity, And (b) Mulhern Is Entitled To Qualified Immunity.**

Count VII, in which Plaintiff alleges that Mulhern, "in his position as General Manager of the MBTA," violated 42 U.S.C. § 1983 by "depriving Plaintiff of her rights under federal law to be free of discrimination due to gender and to be free from retaliation for having engaged in protected activity" (Complaint, ¶¶66-69), should be dismissed because Plaintiff fails to allege that she was deprived of a federal right, privilege or immunity, and because Mulhern is entitled to qualified immunity from this claim.

A.  **Mulhern Did Not Deprive Plaintiff Of A Federal Right, Privilege Or Immunity.**

The Court should dismiss Count VII because to state a claim under Section 1983, a plaintiff must allege that the defendant deprived her of a right, privilege or immunity under *federal law*.  Baker v. McCollan, 443 U.S. 137, 141 (1979) ("The first inquiry in any §1983 suit … is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"); Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001) ("To satisfy the 'constitutional injury' requirement, the plaintiff must make a showing of a deprivation of a federally-secured right.") Title VII, the federal law prohibiting discrimination and retaliation, only reaches the actual employer and does not permit for individual liability.  See, e.g., Horney v. Westfield Gage Co., 95 F. Supp. 2d 29, 32-33 (D. Mass. 2000) (collecting citations, and following majority circuit

court determination that "there is no individual supervisor liability under Title VII") (citations omitted). Thus, Plaintiff has not and cannot allege that Mulhern, an individual, deprived her of a federal right, privilege or immunity as required by Section 1983, even if her allegations that Mulhern retaliated against her for filing the Charge were taken as true. Accordingly, the Court should dismiss Count VII, Plaintiff's sole federal claim against Mulhern.

### B. Mulhern Is Entitled To Qualified Immunity From Plaintiff's Section 1983 Claim.

Moreover, Plaintiff's Section 1983 claim against Mulhern fails because she sues Mulhern only in his official capacity (Complaint, ¶67) and does not allege sufficient facts to overcome Mulhern's qualified immunity as a state official.[3] "State officials sued in their individual capacities for monetary damages may raise a qualified immunity defense" in response to claimed violations of Section 1983. Shabazz v. Cole, 69 F. Supp. 2d 177, 205-06 (D. Mass. 1999). The doctrine of qualified immunity shields public officials performing discretionary public functions from civil damages. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). The standard to establish qualified immunity "is not demanding," and is ordinarily resolved prior to trial. Shabazz, 69 F. Supp. 2d at 205-06 (citing Ricci v. Urso, 974 F.2d 5, 6 (1st Cir. 1992)). The standard in the First Circuit is as follows:

> Qualified immunity exists insofar as defendants' conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. The requirements are twofold in the sense that: (1) a clearly established statutory or constitutional law must exist at the time of the conduct in question; and (2) a reasonable official would have known that his conduct violated this right. Stated otherwise, public officials may avoid liability for monetary damages under section 1983 by showing either that they did not violate a right clearly established under federal law or that they acted with objective legal reasonableness.

---

[3] Because of the MBTA's quasi-public status, one could question whether the MBTA constitutes a state agency and, consequently, whether Mulhern is a state employee. However, if the MBTA is not deemed a state agency, Mulhern was not acting under color of state law, and the § 1983 claim would fail in any event.

Id. (internal citations omitted); Kauch v. Dep't for Children, Youth and their Families, 321 F.3d 1, 4 (1st Cir. 2003) (setting forth factors necessary for plaintiff to overcome qualified immunity). The qualified immunity defense is thus a complete defense where a defendant fails to allege that the individual "violate[d] a right clearly established under federal law." Id.

Here, Plaintiff does not allege that Mulhern violated a right established under federal law as discussed in Subsection I. A. above. Such an allegation is necessary for a Section 1983 claim to overcome the defense of qualified immunity. Kauch, 321 F.3d at 4 (holding that "whether or not the alleged facts establish a constitutional violation … is a question of law" and that in order to overcome qualified immunity; the plaintiff must "specify the rights that have been interfered with.") The Court should thus dismiss Count VII because Plaintiff cannot overcome Mulhern's qualified immunity as a state official.

Although Mulhern believes the inquiry should end at this point, because Plaintiff's sole federal claim against Mulhern should be dismissed and this would deprive the Court of jurisdiction over Plaintiff's state claims against Mulhern, Plaintiff's state law claims are discussed below in the event that this Court takes a different view.

**II.     The Court Should Dismiss Count III As To Mulhern Because Plaintiff Fails To Allege The Elements Of Retaliation Within The Meaning Of M.G.L. c. 151B, §4(4).**

In Count III, Plaintiff alleges in conclusory fashion that the MBTA, Carter and Mulhern retaliated against her for filing the Charge (Complaint, ¶¶43-49). With regard to Mulhern in particular Ms. O'Loughlin alleged that he retaliated against her by providing information regarding her suspension to two Boston newspapers that published articles on this subject five months after Plaintiff filed the Charge. (Complaint, ¶¶30 and 31.) Indeed, these are the only factual allegations against Mulhern that appear in the Complaint. These allegations simply cannot support a retaliation claim under c. 151B.

Indeed, Plaintiff has not alleged, and cannot allege, that Mulhern retaliated against her for filing the Charge because "humiliation and embarrassment" do not constitute adverse employment actions under M.G.L. c. 151B, § 4(4). To prove retaliation under this statute, a plaintiff must prove that she suffered an adverse employment action which materially disadvantaged her "in respect to salary, grade, or other objective terms and conditions of employment." MacCormack v. Boston Edison Co., 423 Mass. 652, 663 (1996). Mere "subjective feelings of disappointment and disillusionment" will not suffice under this standard. Id. The court in MacCormack thus held that there was no retaliation where the Plaintiff "simply offered no substantial evidence to show that he had suffered any real harm, as opposed to his subjective feelings of disappointment and disillusionment." Id. at 664.

Likewise here, Plaintiff has not alleged that she suffered any real harm as a result of Mulhern's alleged provision of false information to two Boston newspapers. Rather, Plaintiff has alleged only that Mulhern provided information to these newspapers to "humiliate her and cause her further emotional pain and embarrassment" in retaliation for Plaintiff's filing the Charge and that Plaintiff, in fact, suffered only embarrassment (or "injury to her reputation"), emotional pain and humiliation. (Complaint, ¶¶29-31 and 78.) Even if true, *subjective* feelings of humiliation, emotional pain and embarrassment -- much like the subjective disappointment and disillusionment allegedly suffered by the plaintiff in MacCormack -- do not constitute reductions in pay, rank or other *objective* terms and conditions of employment. See MacCormack, 423 Mass. at 663-664. Moreover, Plaintiff admits that she suffered no reduction in rank or pay following her re-assignments and suspension. (Complaint, ¶¶13-14 and 24.)

Furthermore, based on timing, there is no causal connection between Mulhern's alleged statements to the two Boston newspapers and the filing of Plaintiff's Charge because Mulhern's alleged statements apparently were made approximately *five months* after Plaintiff filed the

- 8 -

Charge. (Complaint, ¶¶23, 29 and 31.) As such, the timing is too remote to support an inference of causal relationship. See King v. Town of Hanover, 116 F.3d 965, 968 (1st Cir. 1997) (no Title VII retaliation where discipline was five months after protected conduct). The Court should thus dismiss Count III as to Mulhern.

### III. The Court Should Dismiss Count VIII Because Plaintiff Fails To Allege That Mulhern Threatened, Intimidated Or Coerced Plaintiff And M.G.L. c. 151B, If Applicable, Provides An Exclusive Remedy.

Count VIII, in which Plaintiff alleges that Mulhern violated M.G.L. c. 12, §11 by attempting "to get Plaintiff to resign from her job and thus give up her right to work free from discrimination and retaliation" (Complaint, ¶¶70-74) should be dismissed because Plaintiff has not alleged legally sufficient "threats, intimidation or coercion" by Mulhern. In addition, M.G.L. c. 151B -- should such claim survive in the absence of a viable federal cause of action -- provides the exclusive remedy in the employment context.

#### A. Mulhern Did Not "Threaten, Intimidate Or Coerce" Plaintiff.

Plaintiff has failed to allege that Mulhern engaged in "threats, intimidation or coercion" for the purpose of compelling or deterring conduct as required to sustain a claim under M.G.L. c. 12, §11H. This statute is violated "[w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the commonwealth ..." Id. A threat is "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474 (1994), cert. denied, 513 U.S. 868 (1994). "Intimidation involves putting in fear for the purpose of compelling or deterring conduct." Id. Coercion is "the active domination of another's will." Delaney v. Chief of Police of Wareham, 27 Mass. App. Ct. 398, 409 (1989). Conversations with two newspapers, out of the presence of Plaintiff, simply cannot meet the

requirements of this civil rights statute, which was enacted to address a very specific type of conduct.

      **B.    M.G.L. c. 151B Provides An Exclusive Remedy And Bars Plaintiff's Claim Under M.G.L. c. 12, §11.**

To the extent that Plaintiff's claim against Mulhern under M.G.L. c. 151B survives, the dismissal of Ms. O'Loughlin's only federal cause of action, her claim against Mulhern under M.G.L. Chapter 12 §11 must be dismissed. To hold otherwise "would allow claimants to bypass the procedural prerequisites defined by the legislature in [M.G.L. c. 151B], crippling the effectiveness of this specific statutory remedy for discrimination in employment." Bergeson v. Franchi, 783 F. Supp. 713, 721 (D. Mass. 1992); Kuketz v. MDC Fitness Corp., 1998 WL 1119863, at *3 (Mass. Super. Aug. 10, 1998) (dismissing MCRA claim where relief may be obtained under M.G.L. Chapter 151B). The Court should thus dismiss Count VIII.

    **IV.    The Court Should Dismiss Count IX Because (a) Plaintiff Is A Public Figure Who Must Plead Actual Malice, And (b) Mulhern's Statements To The Boston Globe Were Non-Defamatory Statements Of Opinion.**

Count IX, in which Plaintiff alleges that Mulhern defamed her by making false statements to two Boston newspapers (Complaint, ¶¶75-79) should be dismissed because (a) Plaintiff, an MBTA police officer, is a public figure who must assert well-pled allegations of actual malice and Mulhern's alleged statements to the *Boston Globe* were non-defamatory statements of opinion.

      **A.    Plaintiff Is A Public Figure Who Must Be Able To Demonstrate Actual Malice To State A Claim For Defamation.**

Police officers are considered "public officials" for purposes of defamation claims. Polonsky v. Cousins, 2001 WL 95703, at * 4 (Mass. Super. Feb. 4, 2001). A defamation plaintiff who is also a police officer must thus prove by clear and convincing evidence that the defendant published the alleged defamatory statement with actual malice, *i.e.* "'with knowledge

- 10 -

that the statement was false or with reckless disregard for its falsity.'" Id. (quoting New York Times v. Sullivan, 376 U.S. 254, 279-80 (1964)). "Reckless disregard" in this context means that "one must have entertained serious doubts as to the truth of [the] statement." Milgroom v. News Group Boston, Inc., 412 Mass. 9, 11 (1992); St. Amant v. Thompson, 390 U.S. 727, 730 (1968). Moreover, proof of actual malice must be made by clear and convincing evidence. Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 870 (1975); Tosti v. Ayik, 394 Mass. 482, 491 (1985). Historically, this has been a very heavy burden to meet; more recently, a plaintiff in factually similar case failed to meet this heavy burden as well.

In Polonsky, the Deputy Sheriff of Essex County sued the Sheriff of Essex County for defamation arising from the Sheriff's statements in several newspaper articles that he had terminated the Deputy Sheriff due to the Deputy Sheriff's "mismanagement" and had further ordered a "criminal investigation" into the Deputy Sheriff's conduct. Polonsky, 2001 WL 95703 at *2. The Polonsky court held on the Sheriff's motion to dismiss (which was converted into a motion for summary judgment) that the Deputy Sheriff had failed to state a claim for defamation against the Sheriff, a police officer and "public official" for purposes of a defamation claim, because the Deputy Sheriff had failed to plead or present any evidence that the Sheriff knew that the statements he allegedly made were false or that he made them with reckless disregard for their falsity. Id. at *5. In dismissing the Deputy Sheriff's defamation claim on this basis, the Polonsky court quoted the following language from Dexter's Hearthside Restaurant, Inc. v. Whitehall Co.:

> A party against whom summary judgment is sought is not entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim. Polonsky, 2001 WL 95703 at *5 (quoting Dexter's Hearthside Restaurant, Inc. v. Whitehall Co., 24 Mass. App. Ct. 217, 223 (1987)).

Here, Plaintiff has not provided any underlying factual allegations to support her conclusory allegations that Mulhern made statements to the *Boston Globe* and the *Bay State Banner*[4] with knowledge that they were false or with reckless disregard for their truth or falsity (Complaint, ¶76), or for her allegation that he "acted with ill will and malice." (Complaint, ¶77.) Nor has Plaintiff alleged that Mulhern entertained serious doubts about the truth of his alleged statements to the two newspapers. Thus, Plaintiff, a police officer (see, e.g., Complaint, ¶11) and public figure for purposes of defamation law, has not given any indication that she will be able to prove -- by clear and convincing evidence -- that Mulhern published defamatory statements with actual malice. Accordingly, the Court should dismiss Count IX.

### B. Mulhern's Alleged Statements To The Boston Globe Were Non-Defamatory Statements Of Opinion.

Mulhern's statements to the *Boston Globe*, as alleged by Plaintiff, that the MBTA's allegations against Plaintiff are of a "criminal nature" and may lead to criminal charges against her, are non-defamatory statements of opinion. It is black-letter federal and Massachusetts law that an individual may express an opinion, regardless of how it offensive it may be, without fear of a lawsuit for defamation. Polonsky, 2001 WL 95703 at *5 (citing, Pritsker v. Brudnoy, 389 Mass. 776, 778 (1983); Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974)). The Polonsky court thus held that the Sheriff's statements that he had commenced a criminal investigation into the Deputy Sheriff's conduct were non-defamatory, because they were statements of the Sheriff's opinion that criminal activity may have occurred based upon disclosed, non-defamatory facts -- namely, the existence of a criminal investigation -- rather than accusations that the Deputy Sheriff was, in fact, a criminal. Polonsky, 2001 WL 95703 at *6. In this regard, the court observed:

---

[4]   As noted above, Plaintiff has not asserted that Mulhern made any false statements to the *Bay State Banner*. (See Complaint, ¶31.) Hence, any statements to that newspaper cannot be the basis for a libel claim.

> There is no dispute that the defendant Sheriff ordered a criminal investigation, that such an investigation was undertaken, and that it was concluded with a finding of no criminal wrongdoing. The defendant Sheriff did not accuse the plaintiff of being a thief or of having stolen public funds or property. In the context of the remarks attributed to the defendant Sheriff, he was simply expressing an opinion that there may have been criminal wrongdoing." Id.

As such, the court later held, "the fact that an elected official such as a Sheriff states that a criminal investigation has been initiated regarding the conduct of an employee, without more, is not a statement of fact that a crime has been committed, nor does it necessarily imply the existence of undisclosed facts indicative of criminal activity." Id. at *7.

The instant case could not be more similar to Polonsky. Indeed, Plaintiff, a police officer, alleges that Mulhern provided statements forming the basis of a *Boston Globe* article entitled "T-Police Officer Suspended in probe" which falsely implies that the MBTA's allegations against Plaintiff are of a criminal nature and could lead to criminal charges against her. (Complaint, ¶¶29-30.) Even if Plaintiff's allegations and characterizations were correct, Mulhern's alleged statements to the *Boston Globe* "implying" that the MBTA's allegations against Plaintiff are of a criminal nature and could lead to criminal charges against Plaintiff are merely non-defamatory statements of Mulhern's opinion. Polonsky, 2001 WL 95703 at *6. The Court should thus dismiss Count IX.

**CONCLUSION**

For the reasons set forth above, Defendant Mulhern respectfully requests that the Court dismiss Counts III (as it pertains to Mulhern), VII, VIII and IX of the Complaint.

          MICHAEL MULHERN

          By his attorneys,

          /s/ Joan A. Lukey
          Joan A. Lukey (BBO #307340)
          Gregory M. Reiser (Bar Application Pending)
          Wilmer Cutler Pickering Hale and Dorr LLP
          60 State Street
          Boston, MA  02109
          Telephone:  (617) 526-6000
          Facsimile:  (617) 526-5000

Dated:  September 13, 2004

BOSTON 2024819v3