UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 04-10933-JLT

NANCY O'LOUGHLIN
Plaintiff

v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY, JOSEPH CARTER
And MICHAEL MULHERN
Defendants

**OPPOSITION OF PLAINTIFF NANCY O'LOUGHLIN TO MOTION TO DISMISS OF DEFENDANTS MASSACHUSETTS BAY TRANSPORTATION AUTHORITY AND JOSEPH CARTER**

## I. INTRODUCTION

Plaintiff Nancy O'Loughlin, through counsel, hereby opposes the Motion to Dismiss filed in this action by Defendants Massachusetts Bay Transportation Authority ("MBTA") and Joseph Carter ("CARTER"). As is set forth in greater detail below, the Motion to Dismiss should be denied as to all Counts of the Complaint.

## II. SUMMARY OF ARGUMENT

1. Counts I and II of the Complaint against Defendants MBTA and CARTER for discrimination on the basis of gender in violation of M.G.L. c.151B and 42 U.S.C. §2000e must not be dismissed. It is clear that for the purposes of stating a cause of action in her Complaint, Plaintiff has adequately pleaded all of the elements of a *prima facie* case of discrimination on the basis of gender. The Defendants are attempting to hold Plaintiff to a higher standard of pleading than case law requires. Specifically, Defendants appear to be trying to hold Plaintiff to the standard of proof she would have to abide by either on summary judgment or during trial.

1

2. Counts III and IV against the MBTA and CARTER for retaliation in violation of M.G.L. c.151B and 42 U.S.C. §2000e must not be dismissed. It is clear that for the purposes of stating a cause of action in her Complaint, Plaintiff has adequately pleaded all of the elements of a *prima facie* case of retaliation. The Defendants are attempting to hold Plaintiff to a higher standard of pleading than case law requires. Specifically, Defendants appear to be trying to hold Plaintiff to the standard of proof she would have to abide by either on summary judgment or during trial.

3. Count V against Defendant CARTER for violation of 42 U.S.C. §1983 must not be dismissed. By his actions set forth in the Complaint, Defendant illegally retaliated against Plaintiff in violation of 42 U.S.C. §2000e. Although case law prevents Defendant from being held individually liable for his actions in violation of Title VII, the MBTA is responsible for his illegal actions, and therefore through his illegal actions under color of state law he has caused Plaintiff to be deprived of her rights under federal law. The fact that the Plaintiff may not be able to file suit against Defendant individually for this violation of Title VII, does not in any way detract from the fact that Defendant's actions caused Plaintiff's federal rights to be violated. Additionally, by causing Plaintiff to be retaliated against for opposing practices made illegal by Title VII, Defendant has interfered with Plaintiff's First Amendment Right to Freedom of Speech, thus providing an additional basis for asserting that Defendant has interfered with Plaintiff's federal statutory or constitutional rights in violation of §1983.

4. Count VI against CARTER for violation of M.G.L. c.12 §11 must not be dismissed.
By using a police SWAT team to intimidate Plaintiff while subjecting her to retaliatory discipline, CARTER has interfered with Plaintiff's rights through intimidation and coercion. Additionally, to the extent that Plaintiff is not able to pursue her claims under MGL Chapter 151B for discrimination or retaliation because she was not subjected to an "adverse action" (as Defendants claim in their motion to dismiss), it would not be duplicative of her Chapter 151B remedies to allow Plaintiff to pursue her claims under Chapter 12 section 11.

5. Count X against MBTA for slander and defamation must not be dismissed. Plaintiff has adequately alleged that she was slandered by Defendant MULHERN, that the MBTA is responsible for his actions, and that MULHERN acted with the requisite degree of malice toward

her. In relation to the Count for slander, Defendant is once again attempting to place a higher burden of proof upon Plaintiff than is required. Namely, Defendant is attempting to place upon Plaintiff in relation to the adequacy of her Complaint, the same standard of proof she would have to meet either on summary judgment or at trial.

## II. RELEVANT LAW

### The Term "Adverse Action"

Much of the argument in Defendants' Motion to Dismiss, particularly as it relates to the gender discrimination counts and the illegal retaliation counts, centers upon Defendants' claim that Ms. O'Loughlin has not adequately alleged that the actions taken against her by Defendants were "adverse actions" as that term is defined by the law. Defendants emphasize at various points in their brief that Ms. O'Loughlin has not claimed that she was "disadvantaged in respect to salary, grade or other objective terms and conditions of employment." Although that claim is factually incorrect (as Ms. O'Loughlin asserts in the Complaint that the positions to which she was reassigned did not yield the same amount of overtime pay that she had previously been earning) Defendants have misstated the law in this regard.[1]

It should be beyond dispute that being subjected to the treatment Ms. O'Loughlin was forced to endure (such as being transferred to a much lower status position, supervising fewer employees and earning less overtime, being suspended from work with pay and having to turn in her gun, badge, cruiser and identification, having the Chief of Police refuse to place commendations in her file, having the Chief refuse to allow Ms. O'Loughlin to testify as an expert witness and the

---

[1] Plaintiff notes that subsequent to the filing of the Complaint in this action, a hearing was held regarding whether Ms. O'Loughlin had engaged in the acts for which she was suspended. As a result of that hearing, Defendant CARTER determined that Lt. O'Loughlin would be demoted by two levels but allowed to remain on the MBTA police force. Accordingly, Ms. O'Loughlin has been demoted from the position of Lieutenant which she held for many years, and is now working as a patrol officer, the lowest level of MBTA police officer. In addition to this double demotion being humiliating to Ms. O'Loughlin, and in addition to it being unfair, retaliatory and discriminatory (as male employees who were found to have engaged in much more severe misconduct over the years were not subjected to double demotions), the demotion has caused a substantial loss of pay to Ms. O'Loughlin. It was Defendant CARTER acting on behalf of Defendant MBTA who made the decision to subject Ms. O'Loughlin to this unduly harsh discipline. Accordingly, should the Court (despite Plaintiff's arguments to the contrary) be inclined to dismiss the Counts of the Complaint for either gender discrimination or retaliation, Plaintiff requests that she be allowed to amend her Complaint to allege that her double demotion (which is clearly an adverse action) is an additional example of her being subjected to gender discrimination and illegal retaliation.

3

related matters alleged in the Complaint), are not mere "subjective feeling of disappointment and disillusionment." Defendants at various points in their Brief attempt to trivialize the unfair and illegal treatment to which Ms. O'Loughlin was subjected, by repeating the phrase that Plaintiff was merely "disappointed and disillusioned." Once again, Defendants are attempting to impose upon Plaintiff a standard of proof that she does not have to meet until summary judgment or trial. For the purposes of ruling on the adequacy of Plaintiff's Complaint, it is clear that the unfair treatment raised by Plaintiff is actionable as "adverse actions."

With regard to what will constitute an "adverse action" for purposes of establishing a *prima facie* case of either gender discrimination or retaliation, Plaintiff stresses that case law teaches that it is not necessary that there be a loss of employment or loss of pay in order for there to be an adverse action.

Certainly, as the Supreme Judicial Court of Massachusetts stated in McCormack v. Boston Edison, 423 Mass. 652, 662 (1996), an allegedly adverse action must be a substantial enough change in working conditions to materially disadvantage a Plaintiff, in order to be the basis for a claim of retaliation.

In Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994), the First Circuit acknowledged that actions other than discharges could amount to "adverse actions" for retaliation purposes. The Court recognized that (in addition to discharges) demotions, disadvantageous transfers or assignments, refusals to promote and unwarranted negative job evaluations and toleration of harassment, could all be adverse actions which would support a cause of action for retaliation.

In Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997), the First Circuit acknowledged that in prohibiting retaliation regarding "terms, conditions or privileges of employment," the law was utilizing "pretty open ended language," which "obviously includes opportunities that are not strictly entitlements." The Court went on to state that, "on occasion, disadvantageous transfers have been treated as potentially within the scope of Title VII." In DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997), the First Circuit acknowledged that an adverse employment action occurred within the meaning of Title VII when an employee was transferred to a position for

which he had no background and had no meaningful duties. The Court also cited its decision in Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996), in which it held that "taking something of consequence from the employee including divesting her of significant responsibilities," constituted an adverse action. See also, Hernandez-Torres vs. Intercontinental Trading, 158 F. 3d 43, 47 (1st Cir. 1998) (adverse actions for Title VII retaliation purposes include, among other things, demotions and disadvantageous transfers and assignments); Sharp vs. City of Houston, 164 F. 3d 923, 933 (5th Cir. 1999) (a transfer from an elite police unit to a different position without a decrease in pay, title or grade, if the new position is objectively worse as being less prestigious, less interesting or providing less room for advancement, can be an adverse action); Aviles vs. Cornell Forge, 183 F.3d 598, 605-606 (7th Cir. 1999) (the filing of a false police report against an employee by his employer, can be the basis for a retaliation claim under Title VII); Cosgrove vs. Sears Roebuck, 9 F. 3d 1033, 1039 (2d Cir. 1993) (the failure of an employer to follow established procedures in the course of a termination, may be evidence of a causal connection between protected activity and an adverse action); Collins vs. State of Illinois, 830 F. 2d 692, 703 (7th Cir. 1987) (disadvantageous transfers without financial loss can be adverse actions for Title VII purposes).

An involuntary transfer, when the transferred employee losses a significant amount of supervisory authority, less overtime is available, the tasks are significantly different than those previously performed, the position is unusual for an employee of the rank of the transferred employee, and the transfer is viewed by coworkers as demeaning or punishment, is indeed an adverse action for purposes of proving a retaliation claim or a discrimination claim, under either Title VII or M.G.L. c.151B.[2]

The EEOC has also taken the position that actions other than termination, demotion or actual losses of pay can frequently amount to adverse actions sufficient to support a claim of retaliation. In Enforcement Directive Number 915.003 dated 5/20/98, the EEOC stated the following at §8-II(d):

---

[2] In Coffman v. Tracker Marine, 141 F.3d 1241, 1245 (8th Cir. 1998), the Eighth Circuit held that a decrease in the number of employees supervised is one factor which may be considered to determine if an employee's employment was adversely effected by an allegedly retaliatory action.

> "Adverse Action
> 1.   General Types of Adverse Actions.
> The most obvious types of retaliation are denial of promotion, refusal to hire, denial of job benefits, demotion, suspension, and discharge. Other types of adverse actions include threats, reprimands, negative evaluations, harassment or other adverse treatment.
> ...
> 3.   Adverse actions need not qualify as "ultimate employment actions" or materially effect the terms or conditions of employment to constitute retaliation.
>
> Some Courts have held that the retaliation provisions apply only to retaliation that takes the form of ultimate employment actions. Others have construed the provisions more broadly, but have required that the action materially effect the terms, conditions or privileges of employment.
>
> The Commission disagrees with those decisions and concludes that such constructions are unduly restrictive. The statutory retaliation clauses prohibit any adverse treatment that is based upon a retaliatory motive and is reasonably likely to deter the Charging Party or others from engaging in protected activity. Of course, petty slights and trivial annoyances are not actionable, as they are not likely to deter protected activity. More significant retaliatory treatment, however, can be challenged regardless of the level of harm. As the Ninth Circuit has stated, the degree of harm suffered by the individual "goes to the issue of damages, not liability."
> ...
> **This broad view of coverage accords with the primary purpose of the anti-retaliation provisions, which is to "maintain unfettered access to statutory remedial mechanisms." Regardless of the degree or quality of harm to the particular Complainant, retaliation harms the public interest by deterring others from filing a Charge. An interpretation of Title VII that permits some forms of retaliation to go unpunished would undermine the effectiveness of the EEOC statutes and conflict with the language and purpose of the anti-retaliation provisions."**
>
> (emphasis added)

The Appropriate Standard of Review

With regard to the standard to be applied in analyzing Plaintiff's Complaint, Defendants have set forth the appropriate standard of review in their Brief, but then proceed throughout the Brief, to stray from that standard when analyzing Plaintiff's allegations.

As Defendants have stated, this Court is required to accept "all well pleaded facts as true" and "draw all reasonable inferences" in favor of the Plaintiff. Garita Hotel LTD Partnership v. Ponce Fed. Bank 958 F.2d 15, 17 (1st Cir. 1992). As Defendants also correctly state, the Court is not obligated to accept unsupported conclusions or interpretations of law, nor is it obligated to credit "bald assertions" or "unsubstantiated conclusions." As Defendants have claimed, Plaintiff is obligated to set forth "minimal facts, not subjective characterizations, as to who did what to whom and why." Hunt v. Weatherbee, 626 F.Supp. 1097, 1106 (D.Mass. 1996).

The repeated flaw in Defendants' analysis of the Complaint, is that Defendants consistently (but incorrectly) assert that the various properly pleaded facts set forth in the Complaint by Ms. O'Loughlin are merely either "unsupported conclusions" or "bald assertions." Defendants are attempting to hold Plaintiff to a standard of proof she would have to meet either in defending against a motion for summary judgment or at the trial of this action. The fact that Plaintiff may not have set forth in the Complaint all of the evidence she can muster in support of the factual allegations she makes, or that the factual allegations might be subject at trial to differing interpretations or differences regarding their weight, does not mean that the factual allegations are mere "unsupported conclusions."

That Defendants may disagree with the weight to be given to the allegations, that Defendants might claim the allegations are incorrect, or that the Defendants may disagree with the inferences to be drawn from the allegations, all reinforce the fact that the standard Defendants wish to apply to the Complaint is inappropriate.

## IV.   ARGUMENT

### 1.   THE GENDER DISCRIMINATION CLAIMS SHOULD NOT BE DISMISSED.

In her Complaint, Plaintiff is obligated to set forth a *prima facie* claim of gender discrimination under M.G.L. c.151B and/or 42 U.S.C. §2000e. Although the specific elements of a *prima facie* case of discrimination will always vary depending upon the facts being alleged, essentially Plaintiff is required to prove the following:

[a]   that she is a member of a protected class;

[b]    that she was qualified for the position she held;

[c]    that despite her qualifications, Plaintiff was either demoted, or transferred or subjected to some type of action impacting upon her employment; and

[d]    that the employer either filled her position with someone not within the protected class, or that individuals from outside the protected class were treated differently with regard to the type of actions at issue than was Plaintiff.

See e.g. Blare v. Husky Injection Molding Systems, 419 Mass., 437, 441 (1995).

There is no doubt that Plaintiff has alleged in the Complaint that she was female (¶6), that she was performing her job in a satisfactory manner (¶10), and that despite her qualifications she was subjected to a disadvantageous transfer and was later suspended. With regard to the disadvantageous transfer, Plaintiff has alleged that she was replaced in her job as Detective Unit Commander by a male employee (¶16).[3] With regard to her suspension, Plaintiff has alleged that male employees of the MBTA Police Department have on many occasions engaged in conduct much more serious than that with which she was charged, but were either subjected to no discipline at all or to discipline much less serious than the discipline meted out to her (Complaint at ¶28).

As to whether or not Ms. O'Loughlin's transfer from being the Detective Unit Commander to being the Head of the Detail Unit was an action adverse to her, Ms. O'Loughlin has alleged that the transfer was to a much lower status position, one in which her chances for advancement and job satisfaction were greatly reduced, one which was viewed as a punishment post for her, and one in which she would earn less overtime compensation (Complaint at ¶¶14-15). With regard to whether her suspension was sufficiently adverse to her, Ms. O'Loughlin has alleged that she was assigned to duty at her home, that her gun, badge, identification card and cruiser were taken

---

[3] The issue of Plaintiff being replaced in her position as Detective Unit Commander by a male, and the arguments made about that allegation by Defendants, is a primary example of the inappropriateness of most of Defendants' arguments in the context of a motion to dismiss. Specifically, Defendants argue in their Brief that although Plaintiff was replaced in this position by a male, subsequent incumbents of the position were female and therefore Plaintiff has not stated a claim. Although the fact that subsequent incumbents being female might, on summary judgment or at trial, bear upon whether discriminatory animus existed or whether the reasons advanced for Defendants' actions were or were not pretextual, that fact has no bearing upon whether or not Plaintiff has adequately stated a claim.

away from her, and that she was removed from the position in a manner designed to humiliate her in front of her subordinates and peers (Complaint at ¶¶24-27). By definition, as she was assigned to duty at her home, Ms. O'Loughlin was not eligible to earn overtime pay and thus earned substantially less money than she had when she was an active employee.

Although the transfer to the Detail Unit and later the suspension were not actually demotions, they did serve to cause Ms. O'Loughlin to lose pay, and to substantially lose status within the Department. Accordingly, they constituted a significant enough change in the terms and conditions of her employment to qualify as adverse actions.

In order to provide additional support for her claim that the actions of the MBTA and CARTER treating her differently than males were based on animus due to her gender, Ms. O'Loughlin has set forth at ¶17 of the Complaint various other matters in which she was treated unfairly by CARTER. The various matters set forth in ¶17 of the Complaint (CARTER's refusal to place a commendation in Ms. O'Loughlin's file, CARTER's refusal to support Ms. O'Loughlin in relation to a dispute with a male subordinate, CARTER's refusal to allow Ms. O'Loughlin to continue to testify as an expert, CARTER's avoiding contact with Ms. O'Loughlin, and other examples) may or may not be adequate to constitute separate acts of discrimination. However, by showing that Ms. O'Loughlin was treated unfairly, and that in many instances she was treated differently than male coworkers were, she bolsters her claim that her transfer to the Detail Unit and later her suspension were based on animus against her due to her gender.

At ¶19 of the Complaint, Ms. O'Loughlin has listed various ways in which she was treated differently due to her gender over the course of her 21 years working for the MBTA Police Department. Ms. O'Loughlin has asserted that these items constitute a continuing violation of the discrimination laws, and support her claim that the actions complained of in the Complaint were discriminatory. The Defendants claim that these allegations are untimely, and are not covered by the continuing violation theory. As is correctly stated by Defendants, whether the continuing violation theory would apply to these older allegations depends in large part upon whether Ms. O'Loughlin "knew or should have known" that the conduct alleged was discriminatory. Before that can be determined, it is necessary for the parties to engage in

discovery. Ms. O'Loughlin's allegations themselves are adequate to set forth a continuing violation of the discrimination laws.

Ms. O'Loughlin has adequately alleged, under both M.G.L. c.151B as well as 42 U.S.C. §2000e, that she was subjected to adverse actions due to discrimination against her due to her gender. Accordingly, the Motion to Dismiss must be denied as to the gender discrimination counts of the Complaint.

2. **THE RETALIATION CLAIMS SET FORTH IN THE COMPLAINT MUST NOT BE DISMISSED.**

In order for a Plaintiff to state a claim that she was retaliated against for exercising her rights under the civil rights laws, a Plaintiff must allege that:

[a]   she engaged in protected conduct under the civil rights laws;

[b]   she suffered an adverse employment action;

[c]   that there existed a causal connection between the protected conduct and the adverse action.

See e.g. Fennell v. First Step Designs, 83 F.3d 526, 535 (1st Cir. 1996).

Obviously, the protected activity in this case consists of Ms. O'Loughlin filing a Charge of Discrimination.

As was set forth in the section of this Brief discussing relevant law, in order to show that she suffered an adverse action due to retaliation, Ms. O'Loughlin has to show that she suffered a substantial enough change in her working conditions to be materially disadvantaged. However, contrary to the statements by Defendants in their Brief, it is not necessary that the adverse action be a discharge or a demotion. Rather, a disadvantageous transfer or assignment, toleration of harassment, a pattern of harassment, or even "taking something of consequence from the employee including divesting her of significant responsibilities" is adequate to allege an adverse action. In this particular case, however, it is not even necessary for the Court to determine (at this point in time) whether the non-monetary aspects of her transfer and suspension "materially disadvantaged" Ms. O'Loughlin. As is set forth in the Complaint (¶14) when she was transferred

from being the Detective Unit Commander to being Head of the Detail Unit, Ms. O'Loughlin was in a position were she received much less overtime compensation. She had a direct monetary disadvantage due to the transfer. Secondly, when she was suspended with pay and assigned to duty at her home, (Complaint at ¶24), Ms. O'Loughlin was denied the opportunity to earn any overtime at all. Once again she suffered a direct monetary disadvantage due to the adverse action taken against her.[4]

Additionally, Plaintiff has alleged in the Complaint that the actions of Defendant MULHERN (for whose actions the MBTA is responsible), in purposely providing false information to the *Boston Globe* that Ms. O'Loughlin had allegations against her which were of a criminal nature and could lead to criminal charges against her, were a further act of retaliation against Ms. O'Loughlin. Plaintiff asserts that engaging in such slander and defamation (in the context of a retaliation claim), constitutes both such an extreme loss of status (to a serving member of a police department) and serves so completely to deter Plaintiff and her coworkers from filing discrimination charges that the defamation serves as a further "adverse action" to which Plaintiff was subjected.

Under relevant law, Plaintiff has adequately alleged that she was subjected to illegal retaliation.

Plaintiff notes that the Defendants have somewhat misrepresented the elements of a *prima facie* case of retaliation. In their Brief, Defendants imply that it is necessary that a Plaintiff allege that the period of time between engaging in a protected activity and the occurrence of an adverse action are close in time. That is not correct.

The "temporal" connection between an adverse action and protected activity in retaliation cases, relates to whether or not a "presumption" of retaliation will attach. In other words, if engaging

---

[4] Even though Plaintiff maintains that it is not necessary for the Court to look further to determine that the transfer to the Detail Unit and then the suspension were adverse actions (due to the monetary losses the transfer and suspension caused Ms. O'Loughlin to undergo), Plaintiff strenuously asserts that the loss in status, loss in chances for advancement, lower job satisfaction and pattern of harassment, are adequate in and of themselves, even without any monetary loss, to constitute an adverse action. Indeed, Plaintiff urges the Court to adopt the view of the EEOC and hold that any action taken against an employee which is other than insignificant, which has a tendency to deter the filing of discrimination charges, constitutes illegal retaliation.

11

in protected activity and suffering an adverse action are sufficiently close in time, a presumption of retaliation will arise. Once that presumption arises, it is the obligation of the Defendant to come forward with a legitimate business reason for having engaged in the adverse action. If a Defendant comes forward with such evidence, the presumption is extinguished, but a Plaintiff may still prove her case through the use of other evidence. Essentially, the "time element" is relevant to the establishment of a rebuttable presumption.

If the adverse action and the protected activity are not close enough in time to merit the finding of a presumption of retaliation, that does not mean that the claim is defeated. Rather, it is up to the Plaintiff to come forward with sufficient evidence <u>other</u> than the presumption, to prove that the adverse action is the result of retaliation.

Accordingly, whether or not Ms. O'Loughlin has alleged an adverse action in close enough temporal proximately with engaging in protected activity to cause a presumption of retaliation to arise, does not matter for the purposes of this motion to dismiss. Ms. O'Loughlin has alleged that she engaged in protected activity, she has alleged that she has suffered an adverse action, and she has alleged that there was a causal relationship between the two. That is adequate for her to state a claim of retaliation in her Complaint.

Secondly, Defendants misconstrue the temporal relationship upon which Plaintiff relies to support her claim of retaliation. Specifically, although it is acknowledged that Plaintiff filed her Charge of Discrimination on October 17, 2003, it is not at all clear when the MBTA and Defendant CARTER became aware of her MCAD Charge. What <u>is</u> clear, is that at least as of March 8, 2004, the MBTA and CARTER were aware of the Charge of Discrimination, because that is the date on which they filed their Answer to the Charge. (Complaint at ¶24). It was that same day that Ms. O'Loughlin was relieved of duty with pay and assigned to duty at her home. (Complaint at ¶24). Under these circumstances, where it is not known exactly when the MBTA received the Charge of Discrimination, it must be assumed that there is a temporal relationship between the MBTA's receipt of the Charge (the date the temporal relationship is computed from) and Ms. O'Loughlin's adverse action.

Additionally, the fact that the adverse action occurred shortly after the MBTA and CARTER would have been involved in intensive activity in relation to the Charge (drafting an Answer to the Charge), would support an inference that at the time the decision was made to relieve Ms. O'Loughlin of duty, the fact that Ms. O'Loughlin had engaged in protected activity was in the forefront of the minds of those making decisions at the MBTA. Accordingly, Plaintiff asserts that a temporal relationship between the adverse action and the Charge clearly exists, and there should indeed be a presumption of retaliation in this action.[5]

The Motion to Dismiss must be denied as to the counts of the Complaint alleging retaliation.

### 3. THE CLAIM AGAINST DEFENDANT CARTER FOR VIOLATION OF 42 U.S.C. §1983 MUST NOT BE DISMISSED.

In Count V of the Complaint, Plaintiff has asserted that CARTER has violated her right under 42 U.S.C. §1983 not to have her rights under federal laws be violated under color of state law.

Defendant has asserted that Plaintiff's claim for violation of §1983 must be dismissed, as Plaintiff has not been able to articulate any federal statutory or constitutional rights which he has violated. That is incorrect.

As is set forth in a prior section of this Brief, Plaintiff has set forth a valid claim for retaliation against her in violation of Title VII, 42 U.S.C. §2000e. That is the federal statute which Defendant has violated which provides one of the bases for Plaintiff to assert a §1983 violation against the Defendant.

Plaintiff does not question that she would not be able to file suit against CARTER individually for having retaliated against her in violation of Title VII. However, Plaintiff's Complaint makes clear that it is his actions in retaliating against her which causes the MBTA to be liable to her for

---

[5] Although Defendants are certainly correct in stating that Courts have found that in certain circumstances periods of three and four months between protected activity and adverse action were insufficient to justify a presumption of retaliation, Courts have also held that greater periods of time as well as lesser periods of time justify the presumption. The question of whether the time period is adequate to allow for the presumption is one to be decided on a case by case basis and therefore, it is ultimately not a matter to be decided on a Motion to Dismiss.

illegal retaliation in violation of Title VII. It is the actions of CARTER against Plaintiff which amounted to illegal retaliation, and for which the MBTA (as his employer) is responsible.

The fact that Plaintiff cannot file suit against CARTER for his illegal actions under Title VII does not in any way detract from the illegal nature of the retaliation he caused her to be subjected to, nor the harm that retaliation caused her. By his actions, CARTER caused Plaintiff's right to be free from illegal retaliation under Title VII to be violated. He has deprived her of a federal statutory right, whether or not she may maintain a separate cause of action against him under the remedial scheme enacted by Title VII. Accordingly, the Plaintiff has adequately set forth a federal right which Defendant has violated, thus providing a basis for a claim against CARTER pursuant to §1983.

Additionally, it must be kept in mind that the illegal actions Plaintiff has complained of consist of being retaliated against for filing a written claim of discrimination with a state and federal agency. Essentially, Plaintiff is asserting that she has been retaliated against, punished, for speaking the truth under oath. In constitutional terms, Plaintiff has been retaliated against for asserting her First Amendment Right to Freedom of Speech.

To the extent that Plaintiff has alleged that she has been retaliated against for speaking truthfully, the retaliation was engaged in against her in violation of her First Amendment Right to Freedom of Speech. Accordingly, in addition to having violated Plaintiff's rights under Title VII, Defendant violated Plaintiff's rights under the First Amendment to the Constitution. This is an additional basis for Plaintiff to assert a §1983 claim against Defendant.

Plaintiff has adequately asserted that Defendant CARTER has violated her federal statutory rights and federal constitutional rights, in order to maintain a cause of action against him under 42 U.S.C. §1983. The next question which must be answered regarding Plaintiff's §1983 claims, is whether Defendant's claim of qualified immunity requires the dismissal of Plaintiff's claims at this point in time. It does not.

The question of whether CARTER is entitled to qualified immunity is a factual question of a subjective nature. In order to answer the immunity question, it must be determined whether CARTER was aware of a clearly established statute or constitutional provision which would have prohibited his conduct, and whether CARTER should reasonably have understood that his conduct violated the rights established by that statute or constitutional provision. In the instant case, CARTER is required to prove that his actions did not violate Plaintiff's right to be free of retaliation and to exercise her right of free speech, and that he would not have known that his conduct violated these rights. This is a subjective inquiry which can only be answered after discovery has been engaged in in this case. It is not appropriate for resolution on a Motion of Dismiss. The reasonableness of Defendant's conduct simply cannot be determined so early in this litigation.

The claim for violation of §1983 must not be dismissed.

### 4. THE CLAIM AGAINST CARTER FOR VIOLATION OF M.G.L. C.12 §11 MUST NOT BE DISMISSED.

As is set forth in ¶27 of the Complaint, at the time that Ms. O'Loughlin was informed that she was being relieved of duty with pay, several SOT ("Special Operations Team") Officers were stationed outside the office of the Chief of Police close to where Ms. O'Loughlin was attending her meeting, and two others were standing outside. The SOT Team is a "SWAT" Team, commonly used to deal with barricaded suspects who are armed with firearms. The SOT Team Officers were armed at the time. The use of SOT Team members during the meeting with Ms. O'Loughlin was intended to (and did) humiliate Ms. O'Loughlin by erroneously giving her subordinates the impression that she posed a physical threat to other members of the MBTA Police Department. Ms. O'Loughlin has alleged (id.) that the SOT Team was present merely to intimidate her and to make the proceedings she was involved in as humiliating as possible for her.

Ms. O'Loughlin has alleged in the Complaint that the reason she was suspended with pay was because of her having filed discrimination charges against the MBTA. She has alleged that by suspending her for having engaged in those protected activities, her exercise of rights secured by

the Constitution or laws of the United States or the Commonwealth of Massachusetts (in other words, the right to complain of discrimination) was interfered with. One of the means by which this right was interfered with, was by being subjected to discipline while heavily armed policemen, a SWAT Team, was present. Having these SWAT Team members present during Ms. O'Loughlin's discipline constitutes intimidation or coercion. Ms. O'Loughlin has adequately set forth a cause of action under M.G.L. c.12 §11 against Defendant CARTER.

Furthermore, to the extent that (as is claimed by Defendants) a suspension with pay does <u>not</u> constitute an adverse action sufficient to amount to retaliation prohibited by MGL Chapter 151B, Ms. O'Loughlin would not have the right to exercise her statutory rights under either M.G.L. c.151B or Title VII to complain of illegal retaliation. Accordingly, to the extent Plaintiff is allowed to pursue a claim under M.G.L. c.12 §11 (as an alternative to her c.151B or her Title VII claims) her rights under the two laws are not duplicative. As it cannot be determined at this point whether the Chapter 151B claims will withstand any jurisdictional challenge made to them on summary judgment motions, it is not appropriate to dismiss the Chapter 12 section 11 claims as being duplicative, at this point in time.

Plaintiff's claims under M.G.L. c.12 §11 must not be dismissed.

## 5. THE DEFAMATION CLAIMS AGAINST THE MBTA MUST NOT BE DISMISSED.

In ¶29 of the Complaint, it is alleged that an article appeared on March 11, 2004 in the *Boston Globe* discussing the allegations made against Ms. O'Loughlin, falsely stating in relation to her that the allegations could lead to criminal charges against her. The article falsely implied that the allegations against Ms. O'Loughlin were of a criminal nature. Similarly, the article falsely implied that Ms. O'Loughlin had engaged in criminal conduct. Finally, the article stated that it was an official of the MBTA who stated to the *Boston Globe* Reporter who was writing the story that one of the four officers mentioned in the article was Ms. O'Loughlin. Ms. O'Loughlin was the only MBTA Police Officer involved in the disciplinary proceedings whose name was released by the MBTA to the *Boston Globe*.

In ¶30 of the Complaint, it is stated that the person who released Ms. O'Loughlin's name to the *Boston Globe* Reporter was the MBTA General Manager, Defendant MULHERN. In ¶30 it is alleged that MULHERN falsely led the *Boston Globe* Reporter to believe (and to write in his news story) that the allegations against Ms. O'Loughlin were of a criminal nature, and could lead to criminal charges against her. The Complaint alleges that MULHERN made these false statements to the *Boston Globe* Reporter with the intent that the false information would be placed in the *Boston Globe* Article and that the story in the newspaper would falsely imply that Ms. O'Loughlin had engaged in criminal conduct.

In that section of the Complaint which alleges that MULHERN's actions make the MBTA liable for slander and defamation (¶¶80-85 of the Complaint), it is alleged that MULHERN (or the MBTA representative, if it was other than MULHERN) knew that the statements to the *Boston Globe* were false, and that MULHERN or the representative acted with reckless disregard for their truth or falsity. It is further stated that the representative and/or MULHERN had knowledge of the falsity of the remarks being made, acted with reckless disregard for the truth or falsity of the remarks, and acted with ill-will and malice towards Ms. O'Loughlin.

Based upon these allegations there should be no doubt that Ms. O'Loughlin has stated a claim for defamation against the MBTA.

It appears that the MBTA is claiming in its Brief that the statements in the article were not defamatory or that the statements were merely opinion. However, as the statements on their face imply that the individual involved engaged in criminal activity (and even more importantly that the individual involved was a high level, highly decorated police officer) the statements are presumptively defamatory. Although it is possible that the MBTA could prove either on summary judgment or at trial that the statements were somehow not defamatory, that issue is not properly before the Court at this time. Similarly, whether or not the statements regarding the conduct being criminal were merely a statement of opinion, is a matter which only can be proved

after discovery, either on summary judgment or at trial. It is not a matter to be resolved on a Motion to Dismiss.[6]

It appears that Defendant claims that Ms. O'Loughlin did not allege that the statements were made with actual malice. That is not correct. At ¶84 of the Complaint it is stated that the remarks were made "with ill-will and malice toward Lt. O'Loughlin."

It is exalting form over substance to state (as Defendants do), that it constitutes interpreting the remarks at issue "in the worst light possible" to find them defamatory. That claim is outrageous. The article indicates that according to MBTA Officials, the probe could lead to criminal charges against the four officers involved, one official stated that one of the officers involved was Lt. O'Loughlin (Plaintiff), and that the investigation of the matter involved investigations of allegations of criminal conduct. The only possible reading of this article is that Ms. O'Loughlin may have engaged in criminal conduct. The statement is more significant because it is clearly false. The allegations made against Ms. O'Loughlin were not of a criminal nature, and could not lead to criminal charges against her.[7] See, e.g., Draghetti v. Chmielewski, 416 Mass. 808, 812 (1994), (statements by a Police Chief suggesting that the police department had investigated the activities of an officer and referred the matter to the District Attorney's Office for prosecution were defamatory). Based upon the allegations in the Complaint, the only possible conclusion at this point in time is that the remarks made could be interpreted as being defamatory.

The defamation claims against Defendant must not be dismissed.

---

[6] Rule 9 of the Federal Rules of Civil Procedure states that averments of fraud or mistake must be stated with particularity. The rule does not state that averments of slander or defamation must be stated with particularity. In particular, Rule 9 states: "Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."

[7] Plaintiff notes that her allegations that MULHERN was the unnamed MBTA official who stated that she was involved in the investigation and implied that she had been engaged in criminal conduct, is not speculative, and is not unfounded. However, Plaintiff is not required at this point in time to reveal the evidence that she has which proves these allegations. The allegations are not improperly pleaded merely because Plaintiff has not disclosed all of the evidence she has confirming them.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Motion to Dismiss be denied in its entirety.

                                        NANCY O'LOUGHLIN
                                        By her Attorney,

                                        Mitchell J. Notis, BBO #374560
                                        LAW OFFICES OF MITCHELL J. NOTIS
                                        370 Washington Street
                                        Brookline, MA 02445
                                        Tel.: (617) 566-2700

DATED: October ___, 2004

### CERTIFICATE OF SERVICE

I, Mitchell J. Notis, hereby certify that on October ___, 2004, I caused to be served upon counsel for all parties of record, a copy of the within Plaintiff's Opposition to Defendants Motion to Dismiss by first class mail, postage prepaid.

                                        Mitchell J. Notis