UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 04-10933-JLT

NANCY O'LOUGHLIN
Plaintiff

v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY, JOSEPH CARTER
And MICHAEL MULHERN
Defendants

## OPPOSITION OF PLAINTIFF NANCY O'LOUGHLIN TO MOTION TO DISMISS OF DEFENDANT MICHAEL MULHERN

### I. INTRODUCTION

Plaintiff Nancy O'Loughlin, through counsel, hereby opposes the Motion to Dismiss filed in this action by Defendant Michael Mulhern ("MULHERN"). As is set forth in greater detail below, the Motion to Dismiss should be denied as to all Counts of the Complaint.

### II. SUMMARY OF ARGUMENT

1. Plaintiff has adequately stated a federal cause of action against MULHERN pursuant to 42 U.S. Code section 1983. By his actions set forth in the Complaint, Defendant illegally retaliated against Plaintiff in violation of 42 U.S. Code section 2000e. Although case law prevents Defendant from being held individually liable for his actions in violation of Title VII, the MBTA is responsible for his illegal actions, and therefore through his illegal actions under color of state law he has caused Plaintiff to be deprived of her rights under federal law. The fact that Plaintiff may not be able to file suit against Defendant individually for this violation of Title VII, does not in any way detract from the fact that Defendant's actions caused Plaintiff's federal rights to be violated. Additionally, by causing Plaintiff to be retaliated against for opposing practices made illegal by Title VII, Defendant has interfered with Plaintiff's First Amendment Right to Freedom of Speech, thus providing an additional basis for asserting that Defendant has interfered with Plaintiff's federal statutory or constitutional rights in violation of section 1983. Accordingly, the Court should exercise supplemental jurisdiction over the various state causes of action asserted against MULHERN by Plaintiff.

1

2. Plaintiff has adequately stated a claim against MULHERN for retaliation in violation of MGL Chapter 151B, by alleging that he slandered her in retaliation for having filed a discrimination charge.

3. Plaintiff has adequately stated a claim against MULHERN under MGL Chapter 12 section 11, by alleging that he slandered her in retaliation for having filed a discrimination charge.

4. Plaintiff has adequately stated a claim that MULHERN has slandered her, as she has alleged that he acted with actual malice, and as it is not appropriate in ruling on a motion to dismiss, to determine whether or not MULHERN's statements were "opinion."

**ARGUMENT**

1. **THE CLAIM AGAINST MULHERN FOR VIOLATION OF 42 U.S. CODE SECTION 1983 MUST NOT BE DISMISSED**

In Count VII of the Complaint, Plaintiff has asserted that MULHERN has violated her right under 42 U.S.C. §1983 not to have her rights under federal law be violated under color of state law.

Defendant has asserted that Plaintiff's claim for violation of §1983 must be dismissed, as Plaintiff has not been able to articulate any federal statutory or constitutional rights which he has violated. That is incorrect.

As is set forth in the following section of this Brief, Plaintiff has set forth a valid claim for retaliation against her in violation of Title VII, 42 U.S.C. §2000e. That is the federal statute which Defendant has violated which provides one of the bases for Plaintiff to assert a §1983 violation against the Defendant.[1]

---

[1] At page 6 of Defendant's Brief in support of the motion to dismiss, MULHERN states "Plaintiff's section 1983 claim against Mulhern fails because she sues Mulhern only in his official capacity…" This is a misstatement of the allegations of the Complaint. To the contrary, in paragraph 9 of the Complaint, it is stated: "Mr. Mulhern is sued in his individual capacity."

2

Plaintiff does not question that she would not be able to file suit against MULHERN individually for having retaliated against her in violation of Title VII. However, Plaintiff's Complaint makes clear that it is his actions in retaliating against her which causes the MBTA to be liable to her for illegal retaliation in violation of Title VII. It is the actions of MULHERN against Plaintiff which amounted to illegal retaliation, and for which the MBTA (as his employer) is responsible.

The fact that Plaintiff cannot file suit against MULHERN for his illegal actions under Title VII does not in any way detract from the illegal nature of the retaliation he caused her to be subjected to, nor the harm that retaliation caused her. By his actions, MULHERN caused Plaintiff's right to be free from illegal retaliation under Title VII to be violated. He has deprived her of a federal statutory right, whether or not she may maintain a separate cause of action against him under the remedial scheme enacted by Title VII. Accordingly, the Plaintiff has adequately set forth a federal right which Defendant has violated, thus providing a basis for a claim against MULHERN pursuant to §1983.

Additionally, it must be kept in mind that the illegal actions Plaintiff has complained of consist of being retaliated against for filing a written claim of discrimination with a state and federal agency. Essentially, Plaintiff is asserting that she has been retaliated against, punished, for speaking the truth under oath. In constitutional terms, Plaintiff has been retaliated against for asserting her First Amendment Right to Freedom of Speech.

To the extent that Plaintiff has alleged that she has been retaliated against for speaking truthfully, the retaliation was engaged in against her in violation of her First Amendment Right to Freedom of Speech. Accordingly, in addition to having violated Plaintiff's rights under Title VII, Defendant violated Plaintiff's rights under the First Amendment to the Constitution. This is an additional basis for Plaintiff to assert a §1983 claim against Defendant.

Plaintiff has adequately asserted that Defendant MULHERN has violated her federal statutory rights and federal constitutional rights, in order to maintain a cause of action against him under 42 U.S.C. §1983.

The next question which must be answered regarding Plaintiff's §1983 claims, is whether Defendant's claim of qualified immunity requires the dismissal of Plaintiff's claims at this point in time. It does not.

MULHERN has also argued in his motion to dismiss that the Court should determine at this point in this litigation, that he is not subject to Plaintiff's claim under section 1983 as he is entitled to qualified immunity.

The question of whether MULHERN is entitled to qualified immunity is a factual question of a subjective nature. In order to answer the immunity question, it must be determined whether MULHERN was aware of a clearly established statute or constitutional provision which would have prohibited his conduct, and whether MULHERN should reasonably have understood that his conduct violated the rights established by that statute or constitutional provision.

As the District Court stated in Shabazz vs. Cole, 69 F. Supp. 2d 177, 206 (D. Mass. 1999):

> "...public officials may avoid liability for monetary damages under section 1983 by showing either that they did not violate a right clearly established under federal law or that they acted with objective reasonableness...thus, even when rights are clearly established, qualified immunity protects a government official if it was objectively reasonable for the official to believe that his acts did not violate those rights...The relevant question is whether the allegedly violated federal right was established with sufficient clarity that a reasonable government functionary should have conformed his conduct accordingly."

4

In the context of this action, Plaintiff has alleged that she was slandered by MULHERN when he falsely stated to a Boston Globe reporter that charges pending against Plaintiff were of a criminal nature and could lead to criminal charges against Plaintiff, and that these statements were made with the intent that this false information would be placed in a Boston Globe article (which it was) and that the article would falsely imply that Plaintiff had engaged in criminal conduct (which it did). Plaintiff has further alleged that the reason MULHERN slandered her was to retaliate against her for having engaged in the protected activity of filing a charge of illegal discrimination against the MBTA, the entity of which MULHERN was General Manager at the time.

MULHERN is required to prove that his actions did not violate Plaintiff's right to be free of retaliation and to exercise her right of free speech, and that he would not have known that his conduct violated these rights. This is a subjective inquiry which can only be answered after discovery has been engaged in in this case. It is not appropriate for resolution on a Motion of Dismiss. The reasonableness of Defendant's conduct simply cannot be determined so early in this litigation.

The claim for violation of §1983 must not be dismissed.[2]

### 2. THE CLAIM AGAINST MULHERN FOR RETALIATION IN VIOLATION OF MGL CHAPTER 151B MUST NOT BE DISMISSED

In Count III of the Complaint, it is alleged that MULHERN (along with Defendants MBTA and CARTER), engaged in illegal retaliation against Plaintiff for her having filed a charge of gender discrimination against the MBTA and CARTER.

In order for a Plaintiff to state a claim that she was retaliated against for exercising her rights under the civil rights laws, a Plaintiff must allege that:

[a]     she engaged in protected conduct under the civil rights laws;

---

[2] Should the Court be inclined to dismiss the Count against MULHERN under section 1983, Plaintiff urges the Court to retain jurisdiction over the state causes of action asserted against MULHERN.

5

[b] she suffered an adverse employment action;

[c] that there existed a causal connection between the protected conduct and the adverse action.

See e.g. Fennell v. First Step Designs, 83 F.3d 526, 535 (1st Cir. 1996).

Defendant has questioned in its Brief whether MULHERN's actions, even if true, would amount to actionable retaliation. Defendant argues that his actions do not amount to retaliation, as his actions do not constitute an "adverse action" against Plaintiff. Defendant is incorrect.

Obviously, the protected activity in this case consists of Ms. O'Loughlin filing a Charge of Discrimination. The adverse action in relation to MULHERN, consists of his having slandered Plaintiff and having caused that slander to be extensively published in the Boston Globe.[3]

With regard to what will constitute an "adverse action" for purposes of establishing a *prima facie* case of retaliation, Plaintiff stresses that case law teaches that it is not necessary that there be a loss of employment or loss of pay in order for there to be an adverse action.

Certainly, as the Supreme Judicial Court of Massachusetts stated in McCormack v. Boston Edison, 423 Mass. 652, 662 (1996), an allegedly adverse action must be a

---

[3] Plaintiff notes that subsequent to the filing of the Complaint in this action, a hearing was held regarding whether Ms. O'Loughlin had engaged in the acts for which she was suspended. As a result of that hearing, Defendant CARTER determined that Lt. O'Loughlin would be demoted by two levels but allowed to remain on the MBTA police force. Accordingly, Ms. O'Loughlin has been demoted from the position of Lieutenant which she held for many years, and is now working as a patrol officer, the lowest level of MBTA police officer. In addition to this double demotion being humiliating to Ms. O'Loughlin, and in addition to it being unfair, retaliatory and discriminatory (as male employees who were found to have engaged in much more severe misconduct over the years were not subjected to double demotions), the demotion has caused a substantial loss of pay to Ms. O'Loughlin.

6

substantial enough change in working conditions to materially disadvantage a Plaintiff, in order to be the basis for a claim of retaliation.

In Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994), the First Circuit acknowledged that actions other than discharges could amount to "adverse actions" for retaliation purposes. The Court recognized that (in addition to discharges) demotions, disadvantageous transfers or assignments, refusals to promote and unwarranted negative job evaluations and toleration of harassment, could all be adverse actions which would support a cause of action for retaliation.

In Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997), the First Circuit acknowledged that in prohibiting retaliation regarding "terms, conditions or privileges of employment," the law was utilizing "pretty open ended language," which "obviously includes opportunities that are not strictly entitlements." See also, Hernandez-Torres vs. Intercontinental Trading, 158 F. 3d 43, 47 (1st Cir. 1998) (adverse actions for Title VII retaliation purposes include, among other things, demotions and disadvantageous transfers and assignments); Sharp vs. City of Houston, 164 F. 3d 923, 933 (5th Cir. 1999) (a transfer from an elite police unit to a different position without a decrease in pay, title or grade, if the new position is objectively worse as being less prestigious, less interesting or providing less room for advancement, can be an adverse action); Aviles vs. Cornell Forge, 183 F.3d 598, 605-606 (7th Cir. 1999) (the filing of a false police report against an employee by his employer, can be the basis for a retaliation claim under Title VII); Cosgrove vs. Sears Roebuck, 9 F. 3d 1033, 1039 (2d Cir. 1993) (the failure of an employer to follow established procedures in the course of a termination, may be evidence of a causal connection between protected activity and an adverse action); Collins vs. State of Illinois, 830 F. 2d 692, 703 (7th Cir. 1987) (disadvantageous transfers without financial loss can be adverse actions for Title VII purposes).

The EEOC has also taken the position that actions other than termination, demotion or actual losses of pay can frequently amount to adverse actions sufficient to support a claim

of retaliation. In Enforcement Directive Number 915.003 dated 5/20/98, the EEOC stated the following at §8-II(d):

> "Adverse Action
> 1. General Types of Adverse Actions.
> The most obvious types of retaliation are denial of promotion, refusal to hire, denial of job benefits, demotion, suspension, and discharge. Other types of adverse actions include threats, reprimands, negative evaluations, harassment or other adverse treatment.
> ...
> 3. Adverse actions need not qualify as "ultimate employment actions" or materially effect the terms or conditions of employment to constitute retaliation.
>
> Some Courts have held that the retaliation provisions apply only to retaliation that takes the form of ultimate employment actions. Others have construed the provisions more broadly, but have required that the action materially effect the terms, conditions or privileges of employment.
>
> The Commission disagrees with those decisions and concludes that such constructions are unduly restrictive. The statutory retaliation clauses prohibit any adverse treatment that is based upon a retaliatory motive and is reasonably likely to deter the Charging Party or others from engaging in protected activity. Of course, petty slights and trivial annoyances are not actionable, as they are not likely to deter protected activity. More significant retaliatory treatment, however, can be challenged regardless of the level of harm. As the Ninth Circuit has stated, the degree of harm suffered by the individual "goes to the issue of damages, not liability."
> ...
> **This broad view of coverage accords with the primary purpose of the anti-retaliation provisions, which is to "maintain unfettered access to statutory remedial mechanisms." Regardless of the degree or quality of harm to the particular Complainant, retaliation harms the public interest by deterring others from filing a Charge. An interpretation of Title VII that permits some forms of retaliation to go unpunished would undermine the effectiveness of the EEOC statutes and conflict with the language and purpose of the anti-retaliation provisions."**

(emphasis added)

In order to show that she suffered an adverse action due to retaliation, Ms. O'Loughlin has to show that she suffered a substantial enough change in her working conditions to be materially disadvantaged.

Plaintiff has alleged in the Complaint that the actions of Defendant MULHERN (for whose actions the MBTA is responsible), in purposely providing false information to the *Boston Globe* that Ms. O'Loughlin had allegations against her which were of a criminal nature and could lead to criminal charges against her, were an act of retaliation against her. Plaintiff asserts that engaging in such defamation (in the context of a retaliation claim), constitutes both such an extreme loss of status (to a serving member of a police department) and serves so completely to deter Plaintiff and her coworkers from filing discrimination charges, that the defamation serves as an "adverse action" to which Plaintiff was subjected.

Being defamed in a major national newspaper, being falsely accused of criminal conduct, all by the General Manager of the entity for which one is employed, is enough of a "change in working conditions" to materially disadvantage an employee. Having one's honesty, credibility and twenty-one year career slandered and destroyed before millions of newspaper readers is adequate to meet the requirements for an "adverse action." It would be unconscionable to allow an employer to slander its employees in retaliation for having engaged in protected activities on the grounds that slandering employees is not considered to be subjecting them to an "adverse employment action." There must not be any doubt that the purposes of the civil rights laws would be seriously undermined, and the filing of discrimination charges seriously deterred, should employers be allowed, without remedy or recourse, to publicly slander and destroy the reputations of employees who have asserted their protected rights.

Under relevant law, Plaintiff has adequately alleged that she was subjected to illegal retaliation, when she was slandered by MULHERN through his false statements to the Boston Globe.

Plaintiff notes that the Defendant has incorrectly set forth the elements of a *prima facie* case of retaliation. In his Brief, Defendant implies that it is necessary that a Plaintiff allege that the period of time between engaging in a protected activity and the occurrence of an adverse action are close in time. That is not correct.

The "temporal" connection between an adverse action and protected activity in retaliation cases, relates to whether or not a "presumption" of retaliation will attach. In other words, if engaging in protected activity and suffering an adverse action are sufficiently close in time, a presumption of retaliation will arise. Once that presumption arises, it is the obligation of the Defendant to come forward with a legitimate business reason for having engaged in the adverse action. If a Defendant comes forward with such evidence, the presumption is extinguished, but a Plaintiff may still prove her case through the use of other evidence. Essentially, the "time element" is relevant to the establishment of a rebuttable presumption.

If the adverse action and the protected activity are not close enough in time to merit the finding of a presumption of retaliation, that does not mean that the claim is defeated. Rather, it is up to the Plaintiff to come forward with sufficient evidence other than the presumption, to prove that the adverse action is the result of retaliation.

Accordingly, whether or not Ms. O'Loughlin has alleged an adverse action in close enough temporal proximately with engaging in protected activity to cause a presumption of retaliation to arise, does not matter for the purposes of this motion to dismiss. Ms. O'Loughlin has alleged that she engaged in protected activity, she has alleged that she has suffered an adverse action, and she has alleged that there was a causal relationship between the two. That is adequate for her to state a claim of retaliation in her Complaint.

Secondly, Defendant misconstrues the temporal relationship upon which Plaintiff relies to support her claim of retaliation. Specifically, although it is acknowledged that Plaintiff filed her Charge of Discrimination on October 17, 2003, it is not at all clear when the MBTA and Defendant MULHERN became aware of her MCAD Charge. What is clear,

is that at least as of March 8, 2004, the MBTA and MULHERN were aware of the Charge of Discrimination, because that is the date on which the MBTA filed its Answer to the Charge. (Complaint at ¶24). It was only three days later, March 11, 2004, that the slanderous article appeared in the Boston Globe. (Complaint at ¶29). Under these circumstances, where it is not known exactly when the MBTA received the Charge of Discrimination, it must be assumed that there is a temporal relationship between the MBTA's receipt of the Charge (the date the temporal relationship is computed from) and Ms. O'Loughlin being slandered by MULHERN (the adverse action).

Additionally, the fact that the adverse action occurred shortly after the MBTA, Defendant CARTER and Defendant MULHERN would have been involved in intensive activity in relation to the Charge (drafting an Answer to the Charge), would support an inference that at the time the slanderous statements were made by MULHERN, the fact that Ms. O'Loughlin had engaged in protected activity was in the forefront of the minds of those making decisions at the MBTA, including MULHERN. Accordingly, Plaintiff asserts that a temporal relationship between the adverse action and the Charge clearly exists, and there should indeed be a presumption of retaliation in this action.[4]

The Motion to Dismiss must be denied as to the Count of the Complaint alleging retaliation in violation of MGL Chapter 151B.

---

[4] Although Defendants are certainly correct in stating that Courts have found that in certain circumstances periods of three and four months between protected activity and adverse action were insufficient to justify a presumption of retaliation, Courts have also held that greater periods of time as well as lesser periods of time justify the presumption. The question of whether the time period is adequate to allow for the presumption is one to be decided on a case by case basis and therefore, it is ultimately not a matter to be decided on a Motion to Dismiss.

11

### 3. THE CLAIM AGAINST MULHERN FOR VIOLATION OF MGL CHAPTER 12 SECTION 11 MUST NOT BE DISMISSED

In Count VIII of the Complaint, it is alleged that MULHERN violated MGL Chapter 12 section 11 with regard to his actions against Plaintiff, by interfering with her statutory and constitutional rights through threats, intimidation and coercion.

As is discussed above, the claims set forth in the Complaint against MULHERN are based upon his having slandered Plaintiff in retaliation for her having filed a discrimination charge against the MBTA.

Being falsely accused of criminal acts in a major national newspaper as punishment for having asserted protected rights, constitutes intimidation or coercion. Ms. O'Loughlin was being implicitly told by MULHERN, that if she persisted in her protected activities, and as punishment for those protected activities, false stories about her which would destroy her reputation, would be published in the newspapers as he (MULHERN) had the power to do that. Ms. O'Loughlin has adequately set forth a cause of action under M.G.L. c.12 §11 against Defendant MULHERN.

Furthermore, to the extent that (as is claimed by Defendant) being slandered by a supervisor does not constitute an adverse action sufficient to amount to retaliation prohibited by MGL Chapter 151B, Ms. O'Loughlin would not have the right to exercise her statutory rights under M.G.L. c.151B to complain of illegal retaliation. Accordingly, to the extent Plaintiff is allowed to pursue a claim under M.G.L. c.12 §11 (as an alternative to her c.151B rights) her rights under the two laws are not duplicative. As it cannot be determined at this point whether the Chapter 151B claim will withstand any jurisdictional challenge made to them on summary judgment motions, it is not appropriate to dismiss the Chapter 12 section 11 claim as being duplicative, at this point in time.

Plaintiff's claim against MULHERN under M.G.L. c.12 §11 must not be dismissed.

### 4. THE CLAIM AGAINST MULHERN FOR SLANDER AND DEFAMATION MUST NOT BE DISMISSED

In Count IX of the Complaint, it is alleged that MULHERN slandered and defamed Plaintiff when he caused false and defamatory statements about her to be published in the Boston Globe.

In ¶29 of the Complaint, it is alleged that an article appeared on March 11, 2004 in the *Boston Globe* discussing the allegations made against Ms. O'Loughlin, falsely stating in relation to her that the allegations could lead to criminal charges against her. The article falsely implied that the allegations against Ms. O'Loughlin were of a criminal nature. Similarly, the article falsely implied that Ms. O'Loughlin had engaged in criminal conduct. Finally, the article stated that it was an official of the MBTA who stated to the *Boston Globe* Reporter who was writing the story that one of the four officers mentioned in the article was Ms. O'Loughlin. Ms. O'Loughlin was the only MBTA Police Officer involved in the disciplinary proceedings whose name was released by the MBTA to the *Boston Globe*.

In ¶30 of the Complaint, it is stated that the person who released Ms. O'Loughlin's name to the *Boston Globe* Reporter was MBTA General Manager, Defendant MULHERN. In ¶30 it is alleged that MULHERN falsely led the *Boston Globe* Reporter to believe (and to write in his news story) that the allegations against Ms. O'Loughlin were of a criminal nature, and could lead to criminal charges against her. The Complaint alleges that MULHERN made these false statements to the *Boston Globe* Reporter with the intent that the false information would be placed in the *Boston Globe* article and the story in the newspaper would falsely imply that Ms. O'Loughlin had engaged in criminal conduct.

Paragraphs 76 and 77 of the Complaint allege that MULHERN knew that his statements to the *Boston Globe* were false, and that MULHERN acted with reckless disregard for their truth or falsity. It is further stated that MULHERN had knowledge of the falsity of

13

the remarks being made, acted with reckless disregard for the truth or falsity of the remarks, and acted with ill-will and malice towards Ms. O'Loughlin.

Based upon these allegations there should be no doubt that Ms. O'Loughlin has stated a claim for defamation against MULHERN.

It appears that MULHERN is claiming in his Brief that the statements in the article were not defamatory, or that the statements were merely opinion, and that it has not been alleged that he acted with actual malice.

As to the claim that Plaintiff is a public figure and has failed to allege the slanderous statements were made with actual malice, that claim is simply without basis in the plain language of the Complaint. Paragraphs 76 and 77 of the Complaint read as follows:

> 76. In making the false and defamatory statements of fact referred to above, and in particular making them with the desire and knowledge that the false and defamatory statements would be published in a newspaper of general circulation in the Greater Boston area, throughout the Commonwealth of Massachusetts and the United States, Mr. Mulhern knew that his statements to representatives of the Boston Globe and the Bay State Banner newspapers were false, and/or he acted with reckless disregard for their truth or falsity. Mr. Mulhern published the false and defamatory statements about Lt. O'Loughlin.

> 77. At the time that Mr. Mulhern made the false and defamatory statements referred to above about Lt. O'Loughlin, Mr. Mulhern had knowledge of the falsity of the remarks he was making to the Boston Globe reporter and/or the Bay State Banner reporter, acted with reckless disregard for the truth or falsity of the remarks he made to the Boston Globe reporter and/or the Bay State Banner reporter, acted with ill will and malice towards Lt. O'Loughlin, and excessively published the remarks he made. The false statements made by Mr. Mulhern held Lt. O'Loughlin up to scorn and ridicule in the community.

14

To whatever extent she may be a public figure and is required to plead that the defamatory statements made about her were made with actual malice, Ms. O'Loughlin has done so. In this regard, the motion to dismiss is completely baseless.[5]

It is also worth noting that Ms. O'Loughlin is not required to state in the Complaint all of the evidence available to her which would prove that MULHERN acted with actual malice, or with knowledge of the falsity of his remarks. Defendant does not have the right, at this early point in this litigation, to hold Plaintiff to the standard of proof regarding her allegations she would have to meet on summary judgment or at trial.[6]

There should be no dispute that the statements at issue are defamatory. As the statements on their face imply that the individual involved engaged in criminal activity (and even more importantly that the individual involved was a high level, highly decorated police officer) the statements are presumptively defamatory. Although it is possible that MULHERN could prove either on summary judgment or at trial that the statements were somehow not defamatory, that issue is not properly before the Court at this time. Similarly, whether or not the statements regarding the conduct being criminal were merely a statement of opinion, is a matter which only can be proved after discovery, either on summary judgment or at trial. It is not a matter to be resolved on a Motion to Dismiss.

---

[5] At page 12 of the Brief in support of the motion to dismiss, MULHERN claims "Nor has Plaintiff alleged that Mulhern entertained serious doubts about the truth of his alleged statements to the two newspapers." To the contrary, Plaintiff has alleged in Paragraph 76 of the Complaint that Mulhern knew that his statements were false. Presumably, Mulhern's misstatement in his Brief about this issue was due solely to an incorrect reading of the Complaint.

[6] Rule 9 of the Federal Rules of Civil Procedure states that averments of fraud or mistake must be stated with particularity. The rule does not state that averments of slander or defamation must be stated with particularity. In particular, Rule 9 states: "Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."

The article indicates that according to MBTA Officials, the probe could lead to criminal charges against the four officers involved, one official stated that one of the officers involved was Lt. O'Loughlin (Plaintiff), and that the investigation of the matter involved investigations of allegations of criminal conduct. The only possible reading of this article is that Ms. O'Loughlin may have engaged in criminal conduct. The statement is more significant because it is clearly false. The allegations made against Ms. O'Loughlin were not of a criminal nature, and could not lead to criminal charges against her.[7] See, e.g., Draghetti v. Chmielewski, 416 Mass. 808, 812 (1994), (statements by a Police Chief suggesting that the police department had investigated the activities of an officer and referred the matter to the District Attorney's Office for prosecution were defamatory). Based upon the allegations in the Complaint, the only possible conclusion at this point in time is that the remarks made could be interpreted as being defamatory.[8]

The defamation claims against Defendant must not be dismissed.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Motion to Dismiss be denied in its entirety.

---

[7] Plaintiff notes that her allegations that MULHERN was the unnamed MBTA official who stated that she was involved in the investigation and implied that she had been engaged in criminal conduct, is not speculative, and is not unfounded. However, Plaintiff is not required at this point in time to reveal the evidence that she has which proves these allegations. The allegations are not improperly pleaded merely because Plaintiff has not disclosed all of the evidence she has confirming them.

[8] Defendant's outrageous comment at page 8 of his Brief that "Plaintiff has not alleged that she suffered any real harm as a result of Mulhern's alleged provision of false information to two Boston newspapers" is so incredibly callous as to barely deserve comment. That MULHERN believes that to have one's honesty, credibility and career of twenty one years slandered and destroyed before millions of newspaper readers does not constitute "real harm," simply evidences his complete and total disregard for the civil rights of the employees working for the organization he manages.

16

NANCY O'LOUGHLIN
By her Attorney,

Mitchell J. Notis, BBO #374360
LAW OFFICES OF MITCHELL J. NOTIS
370 Washington Street
Brookline, MA 02445
Tel.: (617) 566-2700

DATED: October 4, 2004

CERTIFICATE OF SERVICE

I, Mitchell J. Notis, hereby certify that on October 4, 2004, I caused to be served upon counsel for all parties of record, a copy of the within Plaintiff's Opposition to Defendants Motion to Dismiss by first class mail, postage prepaid.

Mitchell J. Notis

17