UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANCY O'LOUGHLIN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 04-10933 JLT |
| MASSACHUSETTS BAY | ) |
| TRANSPORTATION AUTHORITY | ) |
| and | ) |
| JOSEPH CARTER | ) |
| and | ) |
| MICHAEL MULHERN, | ) |
| | ) |
| Defendants | ) |

**DEFENDANT MICHAEL MULHERN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Defendant Michael Mulhern ("Mulhern") moves for Summary Judgment in his favor on all counts of the Complaint filed by Plaintiff Nancy O'Loughlin ("Plaintiff") that pertain to him on grounds that discovery has failed to turn up a single shred of evidence supporting Plaintiff's tenuous claims against Mulhern. Indeed, with respect to Plaintiff's defamation claim, Plaintiff cannot even come close to proving by *clear and convincing evidence*, as she must as a public official, that Mulhern acted with "actual malice" when he provided information to *Boston Globe* reporter MacDonald Daniel ("Daniel"). As discussed below, undisputed evidence demonstrates that (a) the information that he provided was true, and (b) Mulhern harbored no ill-will or malice towards Plaintiff. Plaintiff's retaliation claim fails because she has not proven, and she cannot prove, that there is a causal link between her alleged protected activity and Mulhern's alleged retaliatory conduct, and because Plaintiff did not suffer an adverse employment action.[1] With

---

[1] Plaintiff's retaliation claim is asserted only under state law, pursuant to which an adverse employment action remains a necessary prerequisite, as discussed below.

respect to Plaintiff's state civil rights claim against Mulhern, there is absolutely no evidence tending to show, even with every possible favorable inference drawn in favor of Plaintiff, that Mulhern threatened, intimidated or coerced Plaintiff.  Similarly, Plaintiff's federal civil rights claim fails because Mulhern did not deprive Plaintiff of a federal right, privilege or immunity.

## **STATEMENT OF FACTS**[2]

In November, 1983, Plaintiff commenced employment with the Police Department of Defendant Massachusetts Bay Transportation Authority ("MBTA") as a patrol officer.  In 2003, Plaintiff was twice reassigned to different positions without reduction in rank or pay.  On October 17, 2003, Plaintiff filed a Charge of Discrimination (the "Charge") with the Massachusetts Commission Against Discrimination naming only the MBTA and Defendant Joseph Carter ("Carter") as defendants.  Mulhern was not named in the Charge and did not become aware that Plaintiff had filed the Charge until after this lawsuit was commenced.

On March 8, 2004, Plaintiff was suspended with pay after the MBTA Police Department discovered, in the course of an investigation pertaining to the illegal use of the criminal record background check (or "CORI") system by certain members of the MBTA Police Department, that Plaintiff had made disparaging remarks about her superiors on a taped phone line.[3]  On March 10, 2004, Daniel called Mulhern to inquire about the investigation, and Mulhern provided Daniel with limited and truthful information concerning this subject.  The next day, March 11, 2004, an article was published in the *Boston Globe* authored by Daniel in which it was stated that three MBTA police officers were suspended for illegally checking background records and that a lieutenant, who was also suspended, encouraged their activities; the article also states that

---

[2] Pursuant to Local Rule 56.1, Mulhern has separately filed a concise statement of material facts not in dispute ("Mulhern SOF").

[3] Plaintiff has since received an Award from the American Arbitration Association ("AAA") reinstating her to her former position with back-pay.

- 2 -

Plaintiff was among the four who were suspended. Mulhern was not the source of the latter statement. On March 18, 2004, the *Bay State Banner* published an article authored by Melvin Yawu Miller ("Miller") based upon the *Boston Globe* article and discussing the discipline undertaken against Plaintiff and three other MBTA police officers. Miller never discussed the article or its contents with Mulhern, who was not a source.

Plaintiff testified that her retaliation claim against Mulhern is based upon only the following three actions, which Plaintiff alleges were motivated by the fact that she filed the Charge: (1) Mulhern's providing allegedly false information to Daniel; (2) Mulhern's "snubbing" her at a hockey game the two attended; and (3) Mulhern's failure to prevent the discipline that Plaintiff received for making derogatory statements about her superiors on the taped phone line.[4] Plaintiff fatally undercut these assertions, however, when she testified that: (a) there is no basis for her belief that Mulhern spoke to Daniel *because* Plaintiff filed the Charge other than the fact that Mulhern's conversation with Daniel took place at some point after Plaintiff filed the Charge; (b) Mulhern never forced her to do anything; (c) Mulhern never made any threatening gestures to her at the hockey game; (d) Mulhern did not initiate her discipline; and (e) the sole basis for her belief that Mulhern's failure to prevent her discipline was retaliatory is her "opinion". Moreover, Mulhern's testimony stands unrebutted that he was not aware that Plaintiff had filed the Charge when he spoke to Daniel. Accordingly, the Court should grant Summary Judgment in Mulhern's favor on all counts of the Complaint that pertain to him.

---

[4] Initially, Plaintiff testified that Thomas J. O'Loughlin told her that MBTA Board Member Janice Loux ("Loux") had told Mr. O'Loughlin that Mulhern told her (Loux) that Mulhern was "going to get" Plaintiff. (Mulhern SOF at ¶25, fn 5; Ex. I.) Quite apart from the inadmissibility of this triple hearsay, Plaintiff later admitted that Mulhern allegedly made this statement before Plaintiff filed the Charge, and, accordingly, Plaintiff does not consider this statement to be retaliatory conduct. (Mulhern SOF at ¶25; Ex. I.)

**STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to Summary Judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Hahn v. Sargent, 523 F.2d 461, 466-7 (1st Cir. 1975) (holding that an affidavit that was simply "a compendious replica of the complaint" was insufficient to preclude Summary Judgment). In defending against a motion for Summary Judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); see also Anderson v. Liberty Lobby, 477 U.S. 242 (1986). Specifically, the First Circuit has noted that "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

Moreover, Massachusetts courts have recognized that "summary judgment procedures are especially favored in defamation cases," because of the potential for unfounded claims to put "an unjustified and serious damper on freedom of expression." King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987). Under this standard, the Court should grant Summary Judgment in Mulhern's favor on all counts of the Complaint that pertain to him.

## LEGAL ARGUMENT

I.  **THE COURT SHOULD GRANT SUMMARY JUDGMENT IN MULHERN'S FAVOR ON PLAINTIFF'S DEFAMATION CLAIM BECAUSE MULHERN'S STATEMENTS TO DANIEL WERE TRUE AND BECAUSE MULHERN HARBORED NO ILL-WILL OR MALICE TOWARDS PLAINTIFF.**

The Court should grant Summary Judgment in Mulhern's favor on Count IX, in which Plaintiff alleges that Mulhern defamed her by making false statements to two Boston newspapers.[5] This is so because Plaintiff cannot proffer evidence of two key prerequisites to this claim, to wit, that Mulhern's statements were false, and that Mulhern harbored ill-will or malice toward her.

### A.  Plaintiff Cannot Proffer Evidence of Falsity.

Plaintiff was and is an MBTA police officer. As a matter of law, police officers of any rank are "public officials" for purposes of a defamation claim. See, e.g. Time, Inc. v. Pape, 401 U.S. 279, 284 (1971); Rotkiewicz v. Sadowsky, 431 Mass. 748, 752 (2000); Polonsky v. Cousins, 2001 WL 95703 (Mass. Super. Ct. 2001). To prevail on a claim of defamation, a public official such as Plaintiff must first prove that the alleged defamatory statements are false. See Garrison v. Louisiana, 379 U.S. 64, 74 (1964). When responding to a motion for Summary Judgment by the defendant, the plaintiff must present evidence of falsity "beyond the pleadings" and "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)).

At the outset, the statements Mulhern made to Daniel are all true and therefore not defamatory. Garrison v. Louisiana, 379 U.S. at 74. Indeed, when they spoke on March 10,

---

[5] As Miller and Mulhern both testified that Mulhern was not the source for Miller's article published in the *Bay State Banner*, (Mulhern SOF at ¶17; Exs. B, L);, and Plaintiff testified that she has no knowledge to suggest that Mulhern was the source for the article, (Mulhern SOF at ¶17; Ex. I), the Court should grant Summary Judgment in Mulhern's favor to the extent Plaintiff's defamation claim pertains to the *Bay State Banner* article on grounds that there is *no* evidence that Mulhern provided Miller with *any* information.

2004, Mulhern told Daniel only that: (1) the investigation involved more than the "Where's Waldo" incident and that it also involved the misuse of the CORI system, (Mulhern SOF at ¶10; Ex. H), but that the discipline had nothing to do with the "Where's Waldo" incident (Mulhern SOF at ¶10; Ex. B); and (2) that Plaintiff was involved in the investigation and was suspended.[6] (Mulhern SOF at ¶10; Ex. H.) Both of these statements are true: the investigation involved misuse of the CORI system, (Mulhern SOF at ¶11; Exs. D, I), and Plaintiff was involved in the investigation, in that her misconduct was discovered during the investigation, and she was suspended. (Mulhern SOF at ¶11; Exs. B, C, D.)

The next day, March 11, 2004, an article was published in the *Boston Globe* authored by Daniel and stating that criminal charges could be brought against four MBTA police officers, three of whom "were suspended after an investigation showed they were illegally checking background records" and one of whom was a "lieutenant who allegedly encouraged the [three other] officers' activities."[7] (Mulhern SOF at ¶14; Ex. J.) To the extent the article implies that Plaintiff is among the "four" against whom criminal charges could be brought, the article is wrong; however, it is not expressly stated in the article that Plaintiff is among the "four". More importantly, Daniel and Mulhern both testified that *Mulhern was not Daniel's source for this part of the article*. (Mulhern SOF at ¶15; Exs. B, H.) Moreover, there is no genuine dispute as to the following critical facts: Mulhern never told Daniel that the allegations against Plaintiff were of a criminal nature, could lead to criminal charges against her, or were related to the

---

[6] Mulhern testified, by contrast, that he told Daniel that he would not confirm or deny Plaintiff's involvement in the investigation. (Mulhern SOF at ¶10; Ex. B.) However, for purposes of this Motion only, Mulhern concedes that he told Daniel Plaintiff was involved in the investigation and was suspended.

[7] To the extent the article implies that Plaintiff is the lieutenant who "encouraged the [three other] officers' activities", this statement is also true. (Mulhern SOF at ¶5; Ex. F.)

- 6 -

alleged CORI violations.[8] (Mulhern SOF at ¶12; Exs. B, H.) Daniel further testified that the only reason he believed that criminal charges might be involved is because he knew from his own experience that CORI violations could be criminal and one of the union officials he spoke to about the case might have mentioned it to him. (Mulhern's SOF at ¶13; Ex. H.) In sum, even if one could inferentially infer that defamatory information was published relating to Plaintiff, *that* information did not come from Mulhern.

### B. Plaintiff Cannot Proffer Evidence of Malice or Ill-Will.

Once falsity has been established, a plaintiff who is a public official has the burden of proving that the alleged defamatory statements were made with "actual malice." See N.Y. Times Co. v. Sullivan, 376 U.S. 254, 280 (1964). In this context, a statement is made with actual malice if it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." Id. This test hinges on the state of mind of the defendant at the time of the publication of the defamatory statement. Actual malice may be inferred from certain types of objective evidence, including whether the statement: (1) has been fabricated; (2) was the product of the defendant's imagination; (3) was based wholly on an unverified anonymous telephone call; (4) contains allegations that are so improbable that only a reckless man would have put them in circulation; or (5) was made by an informant whose veracity is doubtful. St. Amant v. Thompson, 390 U.S. 727, 732 (1968). However, evidence that a statement was published with intent to harm or disparage the plaintiff is not sufficient; it is necessary to show that the statement was intended to harm *through falsehood*. See Henry v. Collins, 380 U.S. 356 (1965).

The evidentiary standard required to prove actual malice is a heavy one, namely, the intermediate "clear and convincing" standard. See Gertz v. Robert Welch, Inc., 418 U.S. 323,

---

[8] The testimony of Plaintiff and Thomas J. O'Loughlin that Mulhern told Daniel that Plaintiff could face criminal charges does not render this issue in dispute because it constitutes inadmissible hearsay which cannot be used to defeat Summary Judgment. Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 76 (1st Cir. 2005) ("Hearsay evidence is not admissible at trial or for summary judgment purposes …") (citations omitted).

342 (1974). The First Circuit has held that this standard requires the plaintiff "to prove more than would be necessary under the preponderance of the evidence standard but something less than what the beyond a reasonable doubt standard requires." Bose Corp. v. Consumers Union of United States, Inc., 692 F.2d 189, 195 (1st Cir. 1982). The courts apply this standard not only at trial, but also in ruling upon Summary Judgment motions. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-256 (1986) (holding that "where the factual dispute concerns actual malice … the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not."); see also Stone v. Essex County Newspapers Inc., 367 Mass. 849, 869 (1975) (holding that a finding of actual malice was not adequately supported by evidence that a reporter did not take adequate notes in court and had difficulty hearing witnesses).

The record is devoid of evidence that Mulhern harbored any ill-will or malice toward Plaintiff. Mulhern's own testimony was to the effect that he had no ill-will towards Plaintiff, , and that he tried to prevent Daniel from writing an article that could lead to bad press for the MBTA. (Mulhern SOF at ¶18; Ex. B.) Mulhern even defended Plaintiff on a prior occasion after she was referred to as a "rogue cop" by the *Bay State Banner* because Mulhern, "viewed [himself] as having responsibility to protect the image of a police officer." (Mulhern SOF at ¶19; Ex. B.) It is also clear that Mulhern did not speak to Daniel as retaliation for Plaintiff's having filed the Charge, because Mulhern did not become aware that Plaintiff had filed the Charge until after this lawsuit had been commenced. (Mulhern SOF at ¶8; Ex. B.) Plaintiff offers no testimony to the contrary, except to the extent that she alleges that retaliatory conduct constitutes malice, essentially as a matter of law. Even if one assumed that retaliation constitutes actual malice, Plaintiff's retaliation claim fails for the reasons set forth below. Hence, her

unsubstantiated contention that Mulhern acted with actual malice likewise fails and, with it, her defamation claim.

**II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM BECAUSE THERE IS NO CAUSAL LINK BETWEEN PLAINTIFF'S ALLEGED PROTECTED ACTIVITY AND MULHERN'S ALLEGED RETALIATORY CONDUCT, AND PLAINTIFF DID NOT SUFFER AN ADVERSE EMPLOYMENT ACTION.**

Plaintiff has failed to prove, as she must to support her claim against Mulhern on Count III of the Complaint in which she alleges that Mulhern retaliated against her in violation of M.G.L. c. 151B, § 4(4), that there is a causal link between her filing the Charge and Mulhern's alleged retaliatory conduct. See e.g. Lewis v. Gillette, Co., 22 F.3d 22, 25 (1st Cir. 1994) (granting Summary Judgment to employer where employee failed to prove causal link between alleged retaliation and his alleged protected activity: "To succeed on claims of retaliatory discharge and retaliatory harassment, a plaintiff must establish the basic fact that he was subjected to an adverse employment action *because* of his protected activity.")  Plaintiff claims, in conclusory fashion, that because she filed the Charge, Mulhern engaged in the following retaliatory conduct: (1) he provided allegedly false information to Daniel; (2) he "snubbed" her at a hockey game; and (3) he failed to stop her discipline. (Mulhern SOF at ¶25; Ex. I.)  There is no evidence that any of these alleged acts, even if true, are causally related to Plaintiff's filing the Charge, however.

Indeed, Mulhern's testimony is unrebutted that he was not aware of the Charge when he spoke to Daniel.  (Mulhern SOF at ¶8; Ex. B.)  Plaintiff further testified that there is no basis for her belief that Mulhern spoke to Daniel *because* she filed the Charge other than the fact that the conversation took place at some point after she filed the Charge. (Mulhern SOF at ¶23; Ex. I.) There is thus no way that his conversation with Daniel can serve as the basis for a retaliation claim.  Lewis v. Gillette, Co., 22 F.3d at 24 ("At a minimum, there must be competent evidence

that the alleged retaliators knew of the plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment actions alleged.") Plaintiff failed to offer any reason whatsoever as to why Mulhern's snubbing her at the hockey game is causally related to her filing the Charge, and her unsupported and conclusory belief cannot permit her retaliation claim to survive Summary Judgment absent any proof to back it up. Id. at 25 (granting summary judgment where, *inter alia*, plaintiff offered nothing but circumstantial evidence and "weak inferences" in support of his claim that alleged harassers had engaged in a campaign of "gawking" at him in retaliation for plaintiff's engaging in protected activity). Likewise, Plaintiff testified that the sole basis for her belief that Mulhern failed to prevent her discipline because she filed the Charge is her "opinion", (Mulhern SOF at ¶26; Ex. I), and this cannot serve as the basis upon which this Court can find that Mulhern engaged in retaliatory conduct towards her. Id. Accordingly, Plaintiff has not and cannot prove a causal connection between her filing the Charge and Mulhern's alleged retaliatory conduct.

Furthermore, Plaintiff has not elicited evidence of an adverse employment action, as she must, to support her state law retaliation claim against Mulhern under M.G.L. c. 151B, § 4(4). To prove retaliation under this statute, a plaintiff must prove that she suffered an adverse employment action which materially disadvantaged her "in respect to salary, grade, or other objective terms and conditions of employment."[9] MacCormack v. Boston Edison Co., 423 Mass. 652, 663 (1996). Mere "subjective feelings of disappointment and disillusionment" will not suffice under this standard. Id. The court in MacCormack thus held that there was no retaliation

---

[9] The United States Supreme Court recently held that, in Title VII retaliation cases, a plaintiff need not prove that she suffered an adverse effect on the "terms, conditions, or benefits" of employment, but rather only that she suffered an action that would be material to a reasonable employee. Burlington Northern & Santa Fe Railway Co. v. White, 2006 WL 1698953 (June 22, 2006). As this holding applies only to federal claims brought under Title VII, however, it is not controlling on Plaintiff's claim brought under M.G.L. c. 151B, § 4(4).

where the Plaintiff "simply offered no substantial evidence to show that he had suffered any real harm, as opposed to his subjective feelings of disappointment and disillusionment." Id. at 664.

Here, Plaintiff has not proven and cannot prove that she suffered any adverse employment action which harmed her in respect to "salary, grade, or other objective terms and conditions of employment" as a result of Mulhern's alleged retaliatory conduct. Indeed, Plaintiff admits that she suffered no reduction in rank or pay following her re-assignments and suspension, (Mulhern SOF at ¶1; Ex. A), and, moreover, on March 2006, the AAA rendered an Award requiring the MBTA to reinstate Plaintiff to her former position and make her whole for any lost pay and benefits resulting from her demotion. (Mulhern SOF at ¶6; Ex. G.) The Court should thus grant Summary Judgment in Mulhern's favor on Plaintiff's retaliation claim.

### III. THE COURT SHOULD GRANT SUMMARY JUDGMENT IN MULHERN'S FAVOR ON PLAINTIFF'S STATE CIVIL RIGHTS CLAIM BECAUSE THERE IS NO EVIDENCE THAT MULHERN THREATENED, INTIMIDATED OR COERCED PLAINTIFF.

The Court should grant Summary Judgment in Mulhern's favor on Count VIII, in which Plaintiff alleges that Mulhern violated M.G.L. c. 12, §11H by attempting "to get Plaintiff to resign from her job and thus give up her right to work free from discrimination and retaliation", because Plaintiff has not adduced any evidence that Mulhern threatened, intimidated or coerced her.

Plaintiff has failed to adduce any evidence that Mulhern engaged in "threats, intimidation or coercion" for the purpose of compelling or deterring conduct as required to sustain a claim under M.G.L. c. 12, §11H. This statute is violated "[w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the commonwealth ..." Id. A threat is "the intentional exertion of pressure to make another fearful

or apprehensive of injury or harm." Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474 (1994), cert. denied, 513 U.S. 868 (1994). "Intimidation involves putting in fear for the purpose of compelling or deterring conduct." Id. Coercion is "the active domination of another's will." Delaney v. Chief of Police of Wareham, 27 Mass. App. Ct. 398, 409 (1989).

Plaintiff has not proffered the requisite evidence in support of her claim that Mulhern threatened, intimidated or coerced her. In that regard, she relies exclusively on the facts that: (1) he provided allegedly false information to Daniel, (2) he "snubbed" her at a hockey game, and (3) he failed to put an end to the investigation that led to her discipline. (Mulhern SOF at ¶25; Ex. I.) Such actions, even if true, simply do not constitute threats, intimidation, or coercion within the meaning of M.G.L. c. 12, §11H. Moreover, Plaintiff admitted that: (a) there is no basis for her belief that Mulhern spoke to Daniel *because* Plaintiff filed the Charge other than the fact that the conversation took place at a point in time after she filed the Charge, (Mulhern SOF at ¶23; Ex. I); (b) Mulhern never forced her to do anything; (c) Mulhern never made any threatening gestures to her at the hockey game; (d) Mulhern did not initiate her discipline; and (e) the sole basis for her belief that Mulhern's failure to stop the investigation was retaliatory is her "opinion". (Mulhern SOF at ¶26; Ex. I.) Moreover, Mulhern's testimony stands unrebutted that he was not aware that Plaintiff had filed the Charge (which was not filed against Mulhern) when he spoke to Daniel. (Mulhern SOF at ¶8; Ex. B.) As such, Plaintiff has not proven that Mulhern put her in fear "for the purpose of compelling or deterring conduct" or actively dominated her will to prevent her from enjoying a right protected by the Commonwealth and the Court should grant Summary Judgment in Mulhern's favor on Plaintiff's state civil rights claim.

**IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFF'S FEDERAL CIVIL RIGHTS CLAIM BECAUSE MULHERN DID NOT DEPRIVE HER OF A FEDERAL RIGHT, PRIVILEGE OR IMMUNITY AND MULHERN IS ENTITLED TO QUALIFIED IMMUNITY.**

The Court should grant Summary Judgment in Mulhern's favor on Count VII, in which Plaintiff alleges that Mulhern, "in his position as General Manager of the MBTA," violated 42 U.S.C. § 1983 by "depriving Plaintiff of her rights under federal law to be free of discrimination due to gender and to be free from retaliation for having engaged in protected activity", because discovery has demonstrated that Mulhern did not deprive Plaintiff of a federal right, privilege or immunity, in that he did not retaliate or discriminate against her, and therefore Mulhern is entitled to qualified immunity on this claim.

To state a claim under Section 1983, a plaintiff must allege that the defendant deprived her of a right, privilege or immunity under *federal law*. Baker v. McCollan, 443 U.S. 137, 140 (1979) ("The first inquiry in any §1983 suit … is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"); Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001) ("To satisfy the 'constitutional injury' requirement, the plaintiff must make a showing of a deprivation of a federally-secured right.")  Moreover, "[s]tate officials sued in their individual capacities for monetary damages may raise a qualified immunity defense" in response to claimed violations of Section 1983. Shabazz v. Cole, 69 F. Supp. 2d 177, 205-06 (D. Mass. 1999).  The doctrine of qualified immunity shields public officials performing discretionary public functions from civil damages. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  The standard to establish qualified immunity "is not demanding," and is ordinarily resolved prior to trial. Shabazz, 69 F. Supp. 2d at 205-06 (citing Ricci v. Urso, 974 F.2d 5, 6 (1st Cir. 1992)).  The standard in the First Circuit is as follows:

> Qualified immunity exists insofar as defendants' conduct does not violate clearly established statutory or constitutional law of which

> a reasonable person would have known. The requirements are twofold in the sense that: (1) a clearly established statutory or constitutional law must exist at the time of the conduct in question; and (2) a reasonable official would have known that his conduct violated this right. Stated otherwise, public officials may avoid liability for monetary damages under section 1983 by showing either that they did not violate a right clearly established under federal law or that they acted with objective legal reasonableness.

Id. (internal citations omitted); Kauch v. Dep't for Children, Youth and their Families, 321 F.3d 1, 4 (1st Cir. 2003) (setting forth factors necessary for plaintiff to overcome qualified immunity). The qualified immunity defense is thus a complete defense where a defendant fails to prove that the individual "violate[d] a right clearly established under federal law." Id.

    Here, Plaintiff has not proven that Mulhern deprived her of a right established under federal law because Plaintiff has not proven that Mulhern engaged in any discriminatory or retaliatory conduct against her. At the outset, Plaintiff admitted that Mulhern did not initiate her discipline. (Mulhern SOF at ¶26; Ex. I.) Plaintiff further testified that she does not know if Mulhern was aware of the discrimination she allegedly suffered and she does not know if anyone informed Mulhern about such alleged discrimination. (Mulhern SOF at ¶22; Ex. I.) Plaintiff has no information from any source that Mulhern engaged in discriminatory behavior. (Mulhern SOF at ¶22; Ex. I.) Furthermore, Plaintiff testified to a narrow set of facts which she alleges form the basis of her claims against Mulhern for retaliation, and for the reasons expressed in Section III above, Plaintiff has not proven that these actions amount to deprivations of her right to be free from retaliation. As proof that a federal right was violated is necessary for a Section 1983 claim to overcome the defense of qualified immunity, Kauch, 321 F.3d at 4, the Court should grant Summary Judgment in Mulhern's favor on Plaintiff's federal civil rights claim.

## **CONCLUSION**

Because there is no dispute that Mulhern provided only true information to the *Boston Globe*, that Plaintiff failed to establish a causal link between her alleged protected activity and Mulhern's alleged retaliatory actions, that Mulhern never engaged in any conduct towards Plaintiff which could be characterized as threatening, intimidating or coercive, and that Mulhern did not deprive Plaintiff of a federal right, privilege or immunity, the Court should grant Summary Judgment in Mulhern's favor on all counts of the First Amended Complaint that pertain to him.

MICHAEL MULHERN

By his attorneys,

/s/ Joan A. Lukey
Joan A. Lukey (BBO #307340)
Gregory M. Reiser (BBO #662284)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Dated:  June 30, 2006

## CERTIFICATE OF SERVICE

      I hereby certify that on June 30, 2006, I caused a true and accurate copy of the above document to be served via the Court's electronic docketing system upon Mitchell J. Notis, Esq., Law Office Of Mitchell J. Notis, 370 Washington Street, Brookline, MA  02446.

                                        /s/ Gregory M. Reiser
                                        Gregory M. Reiser

US1DOCS 5718231v2