# Exhibit 29

# Chapter 62

# Chapter 101

# Anti-Harassment Policy





# *MBTA Police*

**General Order**    No. **2003-04**

| DEPARTMENT MANUAL | |
|---|---|
| **CHAPTER 62** | |

| DATE OF ISSUE 06/02/2003 | EFFECTIVE DATE 06/07/2003 |
|---|---|

| SUBJECT GENERAL MANAGEMENT Supervisory Span of Control | ISSUING STATUS | ISSUING AUTHORITY |
|---|---|---|
| REFERENCES CALEA 11.3.2, 26.1.5 | ☐ NEW  ☒ AMENDS  ☐ RESCINDS | JOSEPH C. CARTER Chief |

| | PAGE 1 OF 2 |
|---|---|

**1.0    BACKGROUND.** Assignment of Supervisors in the Department will be done in a manner that will ensure a reasonable span of control at all times. Because of the nature of the Department's organization, some Supervisors have responsibility for more than a single unit or functional area.

**2.0    POLICY.** It is the desired goal of the Department that under normal circumstances, first-line Supervisors should not have more than eight (8) beats or twelve (12) employees, or various combinations thereof, reporting directly to them. Exceptions may be made in emergency situations or when geographical conditions or the nature of the work requires specialized situations or units (i.e. tactical operations or investigations) where the ratio may be greater. Supervisory personnel are accountable for the activities of employees under their immediate control. {11.3.2}

It is the policy of the Department that sufficient Supervisors will be on duty to provide assistance and guidance to Officers in the performance of their duties, as well as to maintain proper supervision and control over Department activities.

It is the policy of the Department that all Supervisors will immediately report all violations of law committed by Officers under their command or control through the chain of command. Furthermore, all Supervisors will immediately report, through the chain of command, violations of Department policies, rules, or procedures committed by Officers under their command or control that require further disciplinary action. Failure to do so, in either case, will be considered neglect of duty. The reports will include a recommendation concerning any further action or disposition. {11.3.2, 26.1.5}

    **2.1**    When a reasonable span of control cannot be maintained due to unforeseen circumstances, Commanding Officers, with the approval of the Chief of Police or the designated Division Commander, may require sufficient Supervisors to work overtime to reduce the span of control to a reasonable number.

**3.0    DUTIES AND RESPONSIBILITIES OF ALL SUPERVISORS.**    Supervisors will:

- ensure that all subordinates perform their duties in a professional, efficient and effective manner, and act in compliance with all Department policies, rules and procedures;



DEPOSITION EXHIBIT
O'LOUGHLIN (46)
NRW 2/1/06

M00093

- investigate and report, with recommendations, any incident concerning an Officer under his/her command who is injured while on duty; or any damage to, or loss of, Department property; and  {11.3.2}

- provide, as necessary and appropriate, assistance and direction to the Officers he/she supervises.

4.0     **DUTIES AND RESPONSIBILITIES OF PATROL SUPERVISORS.**  Patrol Supervisors will:

- respond to serious crimes, major fires, sudden deaths and emergency situations that occur within his/her assigned area for the purpose of organizing resources most effectively; and

- respond to routine calls to monitor subordinates' performance and/or supervise the handling of the incident/event.



# *MBTA Police*

### General Order   No. 2003-46

| | DEPARTMENT MANUAL |
|---|---|
| | CHAPTER **101** |

| | DATE OF ISSUE 06/13/2003 | EFFECTIVE DATE 06/18/2003 |
|---|---|---|

| SUBJECT STANDARDS OF CONDUCT Standards of Conduct | | ISSUING STATUS | ISSUING AUTHORITY |
|---|---|---|---|
| REFERENCES CALEA 1.3.1, 11.3.2, 26.1.1 inclusive, 26.1.4, 26.1.5 | PAGE 1 OF 7 | ☐ NEW ☒ AMENDS ☐ RESCINDS | JOSEPH C. CARTER Chief |

1.0   **BACKGROUND.** Both sworn and civilian members of the Department are expected to abide by standards of behavior that are professional and appropriate to the mission of the Department and the integrity of the organization. Behavioral standards have been developed to provide guidance to employees in their conduct. Standards of conduct set forth the rules for behavior at all times. It is expected that once a behavioral standard is set forth or published, it will be followed, at all times, by all employees.

It is the policy of the Department that all Supervisors will immediately report all violations of law committed by employees under their command or control through the chain of command. Furthermore, all Supervisors will immediately report, through the chain of command, violations of Department policies, rules, or procedures committed by employees under their command or control that require further disciplinary action. Failure to do so, in either case, will be considered neglect of duty. The reports will include a recommendation concerning any further action or disposition. {11.3.2, 26.1.5}

The standards of conduct for the Department set forth absolute limits of behavior; they state behavior that is either required or prohibited.

2.0   **REQUIRED CONDUCT.** The following conduct is **REQUIRED** of all MBTA Police Officers and civilian employees (as noted): {26.1.1}

2.1   **LOYALTY AND INTEGRITY.** A Police Officer shall be faithful to his/her Oath of Office, Oath of Honor, Code of Ethics, the principles of professional police work and the goals and objectives of the Department. He/she shall not allow personal motives to govern his/her decisions and conduct. The public demands that the integrity of its Police Officers be above reproach. The dishonesty of a single Police Officer may cast suspicion on the entire Department. Each Police Officer must scrupulously avoid any conduct that might compromise the integrity of themselves, fellow Police Officers, or the Department.

2.2   **TRUTHFULNESS.** All employees shall state the truth at all times, whether under oath or not, in giving testimony, submitting reports or in connection with any official order or duties.

2.3   **BEHAVIOR.** Police Officers, whether on or off duty, shall be governed by the ordinary and reasonable rules of good conduct and behavior, and shall not commit any act tending to bring reproach or discredit upon themselves or the Department. "Conduct Unbecoming a Police Officer" shall include that which tends to indicate



DEPOSITION EXHIBIT
O'LOUGHLIN 147
MRW 2/1/06

M00095

that the Police Officer is unable or unfit to continue as an MBTA Police Officer or tends to impair other employees or the operation of the Department.

Both sworn and civilian members of the Department shall conduct themselves, at all times, both on and off duty, in such a manner as to reflect most favorably on the Department.

2.4    **CONDUCT AND DEPORTMENT.**  Both sworn and civilian members of the Department shall be civil, orderly and moral in their conduct, character and habits both official and private.

In the performance of their duties, MBTA Police Officers shall:

- respond directly to their post or assignment and patrol diligently until or unless properly relieved;

- control his/her temper at all times;

- exercise patience and discretion;

- not shrink from danger or responsibility in time of peril;

- act with energy, sound judgment, and in the proper exercise of his/her authority;

- maintain in confidence all official information coming to his/her attention; and

- obey all orders and instructions of his/her Superiors and report to assigned duties, readily and punctually.

2.5    **ATTENTION TO DUTY.**  All sworn and civilian members, while on duty, shall devote their full time and attention to the service of the Department and to the citizens of the community.  While on duty, they shall remain awake and alert at all times.

2.6    **COURTESY.**  As a professional organization, it is the policy of this Department to treat all persons with civility and respect at all times.  Both sworn and civilian members shall be tactful in the performance of their duties and are expected to exercise the utmost patience and discretion even under the most trying circumstances.

2.7    **ADDRESSING SUPERIOR OFFICERS.**  In addressing or referring to a Superior Officer, his/her title shall be used.

2.8    **IDENTIFICATION.**  All Police Officers shall wear an MBTA Police badge on their outermost uniform garment.  All employees shall carry their police identification card while on duty.

2.9    **CIVIL DISPUTES.**  All Police Officers shall take a neutral position in any dispute of a civil nature, acting only to prevent or control any breach of the peace that may arise.

2.10    **COOPERATION WITH OTHER POLICE OFFICERS.**  Individual Police Officers shall cooperate with and assist each other at every opportunity and shall refrain from criticism of his/her fellow Officers or Superiors.  In time of emergency, Police Officers are expected to be calm and resolute, and to cooperate with other Officers so that mutual protection may be afforded.

2.11  **INTERFERENCE WITH WORK.** Police Officers shall not interfere with cases assigned to other Officers except with the consent of the assigned Officer. Officers shall not unnecessarily interfere with the work or operation of any unit of the judicial system.

2.12  **SALUTING THE FLAG.** All Police Officers, when in uniform in any public place, shall stand at 'attention' and salute in a military manner at the moment of the passage of the flag of the United States of America, carried in a parade or procession, unless duties at the time make such action inadvisable.

2.13  **CRIMINAL COMPLAINT AGAINST AN EMPLOYEE.** Any employee, who learns that an application for a criminal complaint, a complaint or indictment has been issued against him/her, shall immediately notify their Division Commander or Civilian Manager, in writing.

2.14  **SUMMONS, SUBPOENA, OR OTHER NOTIFICATION.** Whenever any sworn or civilian member of this Department receives official notification that he/she is or will be legally mandated to appear before any Federal, State, County or Municipal Court, Grand Jury or investigative board or body in any criminal case or administrative hearing (except while acting in a prosecutorial capacity as a member of the Department), he/she shall, prior to testifying, notify the appropriate Division Commander or Civilian Manager, in writing, of the testimony he/she intends to give and, if legally allowable, the nature of the proceedings.

A copy of the summons, subpoena or other legal writ requiring the member's appearance or the submission of his/her records shall be submitted along with the written report.

Upon completion of such testimony, if legally allowable, the member shall submit a summary report of the proceedings and such testimony as he/she was required to give.

2.15  **LICENSE REQUIREMENT.** All Police Officers are required to possess and maintain an active Massachusetts Driver's License.

If for any reason, an employee loses his/her right to operate a motor vehicle they shall immediately notify the appropriate Division Commander or Civilian Manager in writing.

2.16  **CONTACT INFORMATION.** All sworn and civilian members shall provide their up-to-date home address and their home telephone for Department records.

2.16.1  **CHANGE OF ADDRESS.** Any employee who changes their address or telephone number shall notify the Manager of Workforce Planning in writing as soon as possible after said change.

3.0  **PROHIBITED CONDUCT.** The following conduct is **PROHIBITED** for MBTA Police Officers and civilians (as noted): {26.1.1}

3.1  **USE OF DRUGS OR ALCOHOL.** Incorporated herein by reference, is the MBTA Drug and Alcohol Policy and Testing Program, dated August 1, 2001.

3.1.1  **PRESCRIPTION AND "OVER-THE-COUNTER" MEDICATIONS (SECTION II, B).** All MBTA employees who perform safety-sensitive duties must be fit to perform those duties. Such employees should inform

their physician, pharmacist, and/or other health care provider of the safety-sensitive nature of their work prior to obtaining prescriptions or "over-the-counter" medication.

The MBTA, under its own authority, requires that safety-sensitive employees consult with Medical Operations before using prescription or over-the-counter medications that contain alcohol or other substances that may impair their ability to perform safety-sensitive duties. This requirement applies only to safety-sensitive employees, and involves only medications that contain substances that may impair their ability to perform their safety-sensitive duties.

A Medical Operations physician or nurse will make the determination as to whether the employee's use of the medication could impair the employee's performance or jeopardizes the safety of the employee, his/her co-workers and/or the public. If Medical Operations determines that the employee's use of the medication could impair the employee's performance or jeopardizes the safety of the employee, his/her co-workers and/or the public, the physician or nurse will advise the employee of any job-related restrictions while taking the medication. These restrictions can include a restrictive time frame prior to reporting for work while using the medication, a restriction against performing safety-sensitive job duties and/or medical disqualification from their safety-sensitive position during the use of the medication. If it is determined that an employee is medically disqualified from all work or certain job duties, the clinic will notify the employee and the employee's supervisor. The supervisor will not be provided any further information unless the employee requests in writing that his or her supervisor be so informed. The employee will remain temporarily disqualified until cleared to return to work by Medical Operations.

Safety-sensitive employees who fail to report their use of potentially impairing prescription drugs or "over-the-counter medications" to Medical Operations and to obtain clearance from Medical Operations for their on-duty use of such medication in accordance with this section, and who subsequently have a positive drug and/or alcohol screen, are subject to discipline including discharge.

This prohibition extends to taking potentially impairing prescription and over-the-counter medications prior to scheduled duty or published on-call hours (duty rosters). Off-duty safety-sensitive employees who are unexpectedly called to duty shall have the opportunity to acknowledge the use of such medications or over-the-counter medications.

3.1.2    **ALCOHOL/DRUGS.** Police Officers shall not purchase, drink or carry alcoholic beverages when on duty, unless it is necessary to gain evidence and upon the order of a Superior Officer. No civilian shall purchase, drink or carry alcoholic beverages when on duty. Both sworn and civilian members are prohibited from consuming alcohol four (4) hours prior to reporting for duty and during the entire workday. An employee is "on duty" or "subject to duty" within the meaning of this provision:

- on his/her regularly scheduled days of duty;

- from the time he/she arrives on the property of a duty reporting assignment, until the time he/she completes his/her work assignments and leaves the property;

- when reporting to the MBTA clinic for medical evaluation;

- when the employee has volunteered or has been assigned extra work on his/her day off, vacation, etc;

- while on an "on-call" status or prior to the start of duty; and

- while involved in MBTA business while not on MBTA property.

Sworn and civilian members, while off duty, should refrain from consuming alcoholic beverages to the extent that it results in behavior that would tend to discredit them or the Department. Police Officers, off-duty, shall not purchase or consume alcoholic beverages in public places while wearing the uniform of the Department or while wearing any part of the uniform which could indicate that they are employees of the Department.

Unauthorized use of controlled substances shall be grounds for disciplinary action up to and including discharge. Employees shall not use any prescription drugs, controlled substances, narcotics or hallucinogens except when prescribed in the treatment of the employee by a registered physician or dentist. Prescription drugs, controlled substances, narcotics or hallucinogens shall mean any substances so defined in Massachusetts General Law (M.G.L.), Chapter 94C. {26.1.4 c}

3.2     **USE OF OFFICIAL POSITION.** Sworn and civilian members shall not use their official position, MBTA Police badge (Police Officers), MBTA Police Department identification or MBTA pass: (a) for personal or financial gain; (b) for obtaining privileges not otherwise available to them except in the performance of duty; or (c) for avoiding consequences of illegal acts. Employees shall not lend to another person their badges (Police Officers), MBTA Police Department identification cards, or MBTA pass, or permit them to be photographed or reproduced without the written approval of the Chief of Police. Sworn and civilian members shall not authorize the use of their names, photographs or official titles which identify them as Police Officers or Department employees, in connection with testimonials or advertisements for any person, commodity or commercial enterprise, without the approval of the Chief of Police.

Sworn and civilian members of the Department shall not directly or indirectly be concerned with making any compromise or arrangements between criminals, arrested persons, or others alleged to be involved in criminal activity and persons who have suffered by their acts.

3.3     **UNAUTHORIZED TRANSACTIONS.** Employees shall not enter into any transactions of material value at substantially lower than fair market value, or the value at which such goods or services are being offered to the general public, when such a transaction takes place between themselves and any person involved in any matter or case which arose out of their employment with the Department, except as may be specifically authorized by the Chief of Police.

3.4     **TESTIMONIALS AND PRESENTS.** Employees shall not collect or receive any money or other thing of value from any source for the purpose of making a present to any active employee unless specific permission is granted by the Chief of Police. Sworn and civilian members of the Department shall not seek or accept such present, regardless of value, without the permission of the Chief of Police.

Under the provisions of M.G.L., Chapter 268, Section 9A, no person shall sell tickets or solicit contributions for a testimonial dinner or similar function for any person in active employment in any law enforcement agency or regulatory body of the Commonwealth or any city or town.

3.5    **UNDUE INFLUENCE.**  Sworn and civilian members shall not seek or obtain the influence or intervention of any person outside the Department for purposes of personal advantage, transfer or advancement.

3.6    **MEMBERSHIP IN ORGANIZATIONS.**  Employees shall not affiliate with or become a member of any organization if such affiliation or membership would in any way impede or prevent their effective performance of duty.

3.7    **DISCOURTESY.**  No employee shall conduct him/herself in a manner that is rude, impolite, contemptuous or insolent to or about a Superior Officer, or a fellow employee, or representatives of other agencies, or to the public.

- employees shall refrain from vulgar, violent, coarse, obscene or profane language; and

- employees shall avoid any unnecessary conversation and/or argument with a prisoner(s).

3.8    **USE OF FORCE.**  In making arrests or while engaged in the performance of their duties, Police Officers shall use no more force than is absolutely necessary for the safe custody of the prisoner or for overcoming any resistance that may be offered. {1.3.1}

3.9    **RIDING IN VEHICLES.**  While on duty, Police Officers shall not ride in any personal vehicle unless police business requires such action. (e.g. attending court, etc.) No officer will use a personal vehicle under any type of emergency conditions. (e.g. vehicle pursuit, emergency response operation, etc.) (41.2.2 d)

3.10    **TESTIMONY.**  On non-MBTA business, employees shall not testify in any civil case in any court, or for the defendant in a criminal case in any court, unless legally summoned to do so and/or unless the employee shall have received permission or order from the Chief of Police or a Division Commander.

3.11    **WRITTEN COMMUNICATIONS.**  No employee shall send any written communication with reference to police business to any person or department except by authority of the Chief of Police.

3.12    **GIFTS AND GRATUITIES.**  Employees shall not, under any circumstances seek, solicit or accept any gift, gratuity, loan, reward or fee where there is any direct or indirect connection between the solicitation or acceptance and their Department membership or employment, except as may be specifically authorized by the Chief of Police.

Employees must be especially guarded in their official relationship with persons holding or seeking to hold licenses issued by local licensing authorities, who might expect or seek preferential police treatment.  All Department personnel must offer and are expected to make payment for their meals and beverages.

Any unauthorized gift, gratuity, fee or reward coming into the possession of any employee shall be forwarded forthwith to the Chief of Police, together with a written report of the circumstances connected therewith.

3.13    **RECOMMENDING PRIVATE SERVICES.** Employees shall not officially or unofficially recommend or suggest to the public, the employment or purchase of any particular professional or commercial service or product (e.g. lawyers, bondsmen, undertakers, towing services or burglar alarm companies).

3.14    **SMOKING WHILE ON DUTY.** Conspicuous smoking in public view while on duty, or in uniform, is prohibited. Under no circumstances will Police Officers smoke on MBTA property in violation of established Authority prohibitions. Police Officers hired after January 1, 1998, are prohibited from smoking any tobacco product per M.G.L., Chapter 41, Section 101A.

3.15    **PERSONAL BUSINESS.** Police Officers, while on duty or while in uniform, shall not conduct any personal business, or purchase and carry any conspicuous amounts of merchandise, unless required in the performance of duty.

3.16    **POLITICAL ACTIVITIES.** Police Officers are prohibited from participation in political activities while in uniform. All actions that could even give the impression that a Police Officer is using his/her official position with the Department to influence the electoral process are to be avoided. Police Officers shall not be required to solicit or be obliged to make contributions in money, services, or otherwise, for any political purpose.

3.17    **ASSOCIATIONS WITH CRIMINALS.** Employees shall avoid any or regular continuous associations or dealings with persons whom they know, or should know, are persons under criminal investigation or indictment, or who have a reputation in the community or the Department for present involvement in felonious or criminal behavior. The only exceptions are where such association is necessary in the performance of official duties, with the knowledge and approval of the Chief of Police, or where unavoidable because of immediate family relationships.

3.18    **HARASSMENT.** Employees shall not participate in any form of discriminatory practice, to include harassment based on an individual's gender, race, color, national origin, religion, age, disability, sexual orientation, or other legally protected class or characteristic. At the time of employment, and thereafter, annually, each employee shall be issued a written copy of the MBTA Policy and Procedures for the Prevention of Harassment in the Workplace (in compliance with M.G.L., Chapter 151B, Section 3A).

In cases where the offending party is in the complainant's chain of command, employees may make a complaint to a position superior to the offender, to the Authority's Office of Diversity and Civil Rights, or to the Massachusetts Commission Against Discrimination, at their discretion. {26.1.3}

M000101



# Massachusetts Bay Transportation Authority

| *Mitt Romney* | *Kerry Healey* | *Daniel A. Grabauskas* | *Michael H. Mulhern* |
|---|---|---|---|
| *Governor* | *Lt. Governor* | *Secretary and MBTA Chairman* | *General Manager* |

## MASSACHUSETTS BAY TRANSPORTATION AUTHORITY
## POLICY AND PROCEDURES
## FOR THE PREVENTION OF HARASSMENT IN THE WORKPLACE

January 31, 2004

### I.    PURPOSE

This memorandum restates the policy of the Massachusetts Bay Transportation Authority regarding harassment in the workplace as it applies to managers, supervisors, employees, vendors and contractors. This memorandum also describes examples of conduct that may constitute unlawful harassment and sets forth a complaint procedure to be followed by persons who believe that they are victims of unlawful harassment.

### II.    POLICY

The Massachusetts Bay Transportation Authority fully supports the right of all employees of the Massachusetts Bay Transportation Authority to enjoy an atmosphere that guarantees equal opportunity to all and prohibits all forms of discriminatory practices, including harassment based on an individual's gender, race, color, national origin, religion, age, disability, sexual orientation, or other legally protected class or characteristic.

Discriminatory practices by employees, vendors, or others will not be tolerated and are totally unacceptable and unlawful and shall be punishable according to the Authority's established policy of zero tolerance.

### III.    DEFINITION OF SEXUAL HARASSMENT

### A.    The legal definition of sexual harassment

Sexual harassment is a form of sex discrimination that is illegal under both Titles VI and VII of the Civil Rights Act of 1964 and M.G.L. c.151B. These laws provide that unwelcome sexual advances, requests for sexual favors, and other physical or verbal conduct of a sexual nature, constitute sexual harassment when:

- submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of an individual's employment or a basis for employment decisions affecting the individual; or

- such conduct has the purpose or effect of unreasonably interfering with an

*Massachusetts Bay Transportation Authority, Ten Park Plaza, Boston, MA 02116-3974*



DEPOSITION
EXHIBIT
O'LOUGHLIN 48
MRW 2/1/06

M00045

individual's work performance or creating an intimidating, hostile, humiliating or sexually offensive work environment.

B.    Examples of conduct that may constitute unlawful sexual harassment

Sexual harassment does not refer to behavior or occasional compliments that are socially acceptable to a reasonable employee. It refers to behavior that is not welcome and that is personally offensive. Sexual harassment occurs in a variety of situations which share a common element—the inappropriate introduction of sexual activities or comments into the workplace environment.

Sexual harassment often involves relationships of unequal power. Such situations may contain elements of coercion, such as when compliance with requests for sexual favors becomes a criterion for granting privileges or favorable treatment on the job. However, sexual harassment may also involve relationships among "equals," such as when repeated advances or demeaning verbal comments by a co-worker towards another co-worker have a harmful effect on a person's ability to perform his or her work. Sexual harassment may also involve employee behavior directed at non-employees or non-employee behavior directed at employees. Sexual harassment may occur without regard to the gender or sexual orientation of the harasser or person harassed.

The following are examples of conduct which may, depending upon circumstances, constitute sexual harassment:

- sexual flirtations, advances or propositions

- verbal abuse or innuendo of a sexual nature

- uninvited physical contact, such as touching, hugging, patting, brushing or pinching

- obscene gestures or suggestive or insulting sounds

- demands for sexual favors accompanied by an implied or overt threat concerning an individual's employment status or promises of preferential treatment

- indecent exposure

- display of sexually suggestive objects, pictures, posters or cartoons

- continued or repeated jokes, language, epithets or remarks of a sexual nature

These behaviors are unacceptable in the workplace itself and in other work related settings, such as social events and travel.

M00046

**IV.   CONDUCT WHICH FALLS SHORT OF THE LEGAL DEFINITION OF SEXUAL HARASSMENT, BUT NONETHELESS VIOLATES AUTHORITY POLICY**

Conduct may be inappropriate or offensive to others and yet not meet the legal definition of sexual harassment set forth above, either because it is not sexual in nature, or because it is not so pervasive or severe in itself to meet this definition. However, the Authority's prohibition on harassment is not limited to conduct which meets the strict legal definition of sexual harassment. To the contrary, the Authority prohibits any unwelcome and offensive statement or conduct based on another individual's actual or perceived race, gender, religion, national origin, ancestry, sexual orientation, disability, age, or other legally protected status or harassment in retaliation for an individual's exercise of rights guaranteed by law, including the right to file a complaint of discrimination or harassment, or to the right to participate in proceedings intended to redress discrimination or harassment.

Examples include, but are not limited to

- ethnic, racial, religious, age or gender-based slurs, jokes, caricatures, cartoons, or graffiti

- refusals to extend normal workplace courtesy or assistance to a co-worker based on the co-worker's race, ethnicity, gender, religion, sexual orientation, disability, or other protected characteristic, status or activity

- denial of desirable work assignments, work placements, or other employment benefits based on an individual's protected characteristic, status or activity

- shunning, intimidating, obstructing, or interfering with an individual's work based on the individual's protected characteristic, status or activity

Behavior of this sort, which offends common standards of decency and fairness, will not be tolerated by the Authority even if the behavior is not legally actionable as a violation of law. Employees who commit infractions of this policy will be disciplined and, in appropriate circumstances, discharged.

**V.   EMPLOYEE RESPONSIBILITIES**

Each employee of the Massachusetts Bay Transportation Authority is personally responsible for ensuring that he or she does not harass or retaliate against any other employee or non-employee in the workplace. Each employee is responsible     for cooperating in and providing information relevant to any Authority investigation of allege harassment or retaliation if requested to do so by a person authorized by the MBTA to conduct the investigation.

**VI.   SUPERVISOR AND MANAGER RESPONSIBILITIES**

It is the responsibility of each supervisor and manager to enforce the terms of this policy. Supervisors, managers, or department heads who become aware of incidents of harassment in their departments, even in the absence of a formal complaint, should take immediate and appropriate actions to eliminate the

M00047

conduct. Supervisors and managers must also report all incidents to the Office of Diversity and Civil Rights.

## VII.    COMPLAINT PROCEDURES

Employees who believe they may be the victims of harassment may file an internal or external complaint and have several resources available to report any discrimination, harassment or retaliation.

1. The employee may choose to directly speak to their harasser and inform them that their conduct is unwelcome or offensive and that it must stop immediately.

2. If the employee does not wish to speak to their harasser they may go directly to their supervisor to report harassment. All individuals who believe they have been the subject of harassment are strongly encouraged to notify their supervisor immediately, so that the Authority may have the opportunity to investigate and deal with the complaint. Supervisors shall take prompt action to investigate the complaint, remedy the situation on the spot if it can be done, and to notify the Office of Diversity and Civil Rights. Failure of a supervisor to take any of these steps is a violation of this policy.

3. The Office of Diversity and Civil Rights is available to employees who believe they are victims of harassment. Employees are encouraged to utilize this resource and are advised to contact the Office of Diversity and Civil Rights at 617-222-3305, Ten Park Plaza, 5th Floor, Boston, MA 02116. When that Office has an apparent conflict of interest, because either the complainant or the person complained of is an employee in that office, the Office of Diversity and Civil Rights shall refer the matter to the Office of the General Counsel for investigation.

4. No employee, supervisor or manager shall be retaliated or discriminated against in any way for making a complaint of harassment or for assisting in the investigation of such a complaint. Retaliation against any person for reporting harassment will not be tolerated and in itself will subject the retaliator(s) to disciplinary action.

5. Any non-employee found to have committed an act of harassment may be removed from Authority premises, or other appropriate action may be taken.

6. All actions taken to investigate and resolve complaints through the internal complaint procedure shall be conducted with as much confidentiality as practical without compromising the thoroughness of the investigation.

7. Complaining employees or respondents to complaints witnesses may request assistance from their union representative in connection with the processing of complaints.

8. Employees are also advised that external resources are available for complaints of sexual harassment. Complaints may be filed with the Massachusetts Commission Against Discrimination within 300 days by calling (617) 994-6000 or by going to Room 601 at One Ashburton Place, Boston, MA 02108.

M00048

Complaints may also be filed with the federal Equal Employment Opportunity Commission within 300 days by calling (617) 565-3200, or by going to One Congress Street, Room 1001, Boston, MA 02114.

## VIII.  DISCIPLINE

If an investigation of a complaint reveals that a supervisor or employee has engaged in actions or conduct constituting sexual harassment or is found otherwise to have failed to carry out the responsibilities of Authority employees as set out in this Policy, disciplinary action will be taken, up to and including discharge.  The disciplinary action taken will depend upon the circumstances of the situation and the seriousness of the violation.  Disciplinary action will be taken in accordance with the appropriate disciplinary procedure.  It is the responsibility of all supervisors to enforce strictly the terms of this policy.

## IX.  ROLE OF OFFICE OF DIVERSITY AND CIVIL RIGHTS

The Office of Diversity and Civil Rights (ODCR) and the Office of the General Manager, the Office of the General Counsel, the Human Resources Department, the Labor Relations Department and the Authority's Unions, are responsible for enforcement of the Authority's policies and procedures affecting equal employment opportunity.  The primary functions of OD/CR include complaint investigation, education and training, compliance monitoring and assessment, and planning.  ODCR also stands ready to assist any manager or employee who has questions or concerns about the Authority's Equal Employment policies and how best to comply with them, and welcomes from supervisors, managers and employees any inquiries about these matters.

Jeanne Morrison
Assistant General Manager
Office of Diversity and Civil Rights

M00049