# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

C.A. Nancy O'Loughlin. 04-10933-JLT

---

**NANCY O'LOUGHLIN**
*Plaintiff*

v.

**MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY**
and
**JOSEPH CARTER**
and
**MICHAEL MULHERN**
*Defendants*

---

## OPPOSITION OF PLAINTIFF NANCY O'LOUGHLIN TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANT MICHAEL MULHERN

Plaintiff Nancy O'Loughlin, through counsel, hereby opposes the Motion for Summary Judgment filed in this action by Defendant Michael Mulhern.

The claims asserted against Michael Mulhern, the former General Manager of the MBTA, are based upon the claim that Mr. Mulhern made slanderous statements to a Boston Globe Reporter regarding Plaintiff Nancy O'Loughlin, with the knowledge that those slanderous statements would be reported in the Boston Globe. As a result of those statements, Counts have been brought against Mr. Mulhern for defamation, retaliation in violation of M.G.L. c.151B, violation of M.G.L. c.12 §11 and violation of 42 U.S.C. §1983.

As is set forth in greater detail below, Mr. Mulhern's Motion for Summary Judgment must be denied, as there are genuine issues of material fact in dispute which exclude Summary Judgment from being entered in favor of Defendant Michael Mulhern. The genuine issues of material fact relate to whether or not Mr. Mulhern informed the Boston Globe Reporter that Nancy

1

O'Loughlin could be subject to criminal liability as a result of an investigation being conducted by the MBTA, and whether or not Mr. Mulhern had malice or ill will against Ms. O'Loughlin.

## II.    FACTUAL BACKGROUND

Plaintiff has appended to this Brief a Statement of Facts pursuant to Local Rule 56.1. That Statement of Facts is the same Statement of Facts which has been appended to Plaintiff's Opposition to the Motion for Summary Judgment of Defendants' MBTA and Joseph Carter and contains a full statement of those facts which Plaintiff feels are necessary for the Court to be aware of, in addition to those facts that are set forth in the Factual Statements offered by the three Defendants in this action. However, for the purposes of economy and efficiency, Plaintiff sets forth in this Opposition only those facts which specifically relate to the claims against Michael Mulhern. For a statement of the additional facts from which the claims against Mr. Mulhern arise, the Court is respectfully referred to the Statement of Facts appended to this Brief, as well as the Opposition to the Motion for Summary Judgment submitted by Defendants MBTA and Joseph Carter.

In November 1983, Plaintiff began employment with the MBTA Police Department. By 2003, Plaintiff had obtained the rank of Lieutenant. In October 2003, Plaintiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination against the MBTA and MBTA Police Chief Joseph Carter, claiming that her assignment to the Detail Unit in the MBTA Police Department constituted discrimination against her on the basis of her gender.

In the spring of 2004, the MBTA Police Department conducted an investigation of statements made by MBTA Police Officers on recorded telephone lines. In part the investigation involved claims that officers had been improperly involved in the use of a criminal record background check and to some extent the investigation involved statements made by officers which were deemed improper. As to Plaintiff Nancy O'Loughlin, Lieutenant O'Loughlin was charged with (and eventually disciplined for) allegedly making statements which essentially constituted criticisms of management at the MBTA Police Department including Chief Carter, and the use of vulgar language. In any event, once Plaintiff and other employees were suspended on March 8, 2004, the matter became public and the press became interested in the story. On March 10, 2004, a Boston Globe Reporter named Mac Daniel called MBTA General Manager Michael Mulhern to inquire about the investigation.

The day after Mr. Mulhern spoke with Reporter Daniel an article appeared in the Boston Globe regarding the investigation. Among other things the article, indicated that the investigation involved three MBTA Police Officers who had been suspended for illegally checking background records and that a Lieutenant who had encouraged their activities was also suspended. The article went on to name Nancy O'Loughlin as one of the four individuals who was suspended. The article also stated that the investigation could lead to criminal charges against the four individuals. The only one of the four individuals who was named in the article was Lieutenant O'Loughlin.

**MBTA GENERAL MANAGER MICHAEL MULHERN INFORMED BOSTON GLOBE REPORTER MAC DANIEL THAT NANCY O'LOUGHLIN WAS ONE OF THE MBTA OFFICERS UNDER INVESTIGATION, AND HE FURTHER INFORMED REPORTER DANIEL OF THE FALSE INFORMATION THAT NANCY O'LOUGHLIN COULD BE SUBJECT TO CRIMINAL CHARGES. MR. MULHERN DID THIS KNOWING THAT THE INFORMATION HE WAS PROVIDING REGARDING LIABILITY FOR CRIMINAL CHARGES WAS FALSE.**

From February, 2002 through May, 2005, Michael Mulhern was the General Manger of the MBTA. In his position as General Manger, both the General Counsel of the MBTA and the Chief of the MBTA Police Department reported directly to him. SOF at par. 29.

During 2004, Mr. Mulhern was informed that an investigation was going on regarding alleged police misconduct within the MBTA Police Department, having to do with certain police officers and their behavior on phone lines which were taped. He was aware that some of this involved Lieutenant O'Loughlin as well as another Lieutenant and subordinate officers. Mr. Mulhern became aware of the investigation when he was informed of it by Chief Carter. From the time that he first learned of the investigation until the time of his deposition, Mr. Mulhern never had any reason to believe that Nancy O'Loughlin had been involved in any potentially criminal misconduct regarding the acts being investigated. SOF at par. 30.

Mr. Mulhern does not recall whether in any conversations he had with Chief Carter about the investigation or its aftermath, he was informed that Nancy O'Loughlin had discrimination charges pending against the MBTA. SOF at par. 31.

In March of 2004, Mr. Mulhern spoke to Boston Globe Reporter Mac Daniel regarding the investigation of the statements made on the recorded phone lines. SOF at par. 32.
Mr. Mulhern testified that during the course of their conversation, he informed Mr. Daniel that it was absolutely not true that Nancy O'Loughlin could face criminal charges, that Mr. Daniel was

not to "go down that road" with his story, because "nothing could be further from the truth" and that he "warned" Mr. Daniel not to write that in his newspaper article. Mr. Mulhern claims that Reporter Daniel said to him "okay, if she is not involved in any criminal investigation, is she one of the individuals involved in the investigation," thus implying that he (Mr. Mulhern) informed Reporter Daniel that Nancy O'Loughlin was not subject to criminal charges. Mr. Mulhern testified that he had "crystal clear recall that I told him that she was absolutely not involved in any allegations of criminal misconduct, crystal clear recollection of that." SOF at par. 33.

Mr. Mulhern claims that the day after he first spoke with Mac Daniel about this matter, Mr. Daniel "called me up and called me an asshole, because the sources he had been given said that I completely misled him." Mr. Mulhern claims that in response to Reporter Daniel's questions whether Nancy O'Loughlin was involved in the investigation, he (Mr. Mulhern) stated that he would neither confirm or deny whether or not Nancy O'Loughlin was involved in the investigation. SOF at par. 34.

Mr. Mulhern claims that at the time he had the conversation with Mr. Daniel he did not have any bad will against Nancy O'Loughlin. SOF at par. 35.

Mr. Mulhern claims that after he found out that he was a party to this suit, he called Chief Carter and had a very brief conversation with him regarding the fact that the suit had been filed. SOF at par. 36.

To the contrary, Reporter Mac Daniel testified that in his conversation with Mr. Mulhern nothing came up regarding Nancy O'Loughlin being involved in criminal conduct. Mr. Daniel does not recall Mr. Mulhern stating that Nancy O'Loughlin was absolutely never involved in criminal conduct and he does not recall Mr. Mulhern saying that it was either misinformation or absolutely not true that Nancy O'Loughlin might be found criminally responsible. However, Mr. Daniel also testified that if Mr. Mulhern had indeed said these things to him, he (Mr. Daniel) would not have written the things he wrote in his article. Specifically, if Mr. Mulhern had said the things he claimed he said to Mr. Daniel, Mr. Daniel does not believe he would have written in his story that the probe could lead to criminal charges against the four individuals referred to in his story (of whom Nancy O'Loughlin was one). Mr. Daniel did not recall Mr. Mulhern warning him "not to go down that road because nothing could be further from the truth" but Mr. Daniel also stated that he did not believe he would have written what he wrote had words to that effect been said to him by someone like Mr. Mulhern. Mr. Daniel did not recall having the impression that Mr. Mulhern was trying to dissuade him from writing in his story that Nancy

4

O'Loughlin could be found criminally responsible.  Mr. Daniel also stated that he did not recall having a second conversation with Mr. Mulhern about this matter, and that he specifically did not call Mr. Mulhern a name such as "asshole," and that he did not tell Mr. Mulhern that the sources he had been given said that Mr. Mulhern had misled him.  SOF at par. 37.

Mr. Daniel testified that in speaking to Mr. Mulhern, Mr. Mulhern stated that he could neither confirm nor deny that Nancy O'Loughlin was involved in the investigation.  When a statement such as a source saying that they could "neither confirm or deny a certain fact" is made to Mr. Daniel, that meant to him that it was an indication that he was on the right track, that the statement was better than a firm denial, and that to some degree it meant that the information was true but the source could not acknowledge that.  SOF at par. 38.

Mr. Mulhern was the "agency official" that was referred to in Mr. Daniel's article.  SOF at par. 39.

The information that Mr. Daniel wrote in his story about an investigation about allegations of criminal conduct was based upon statements made to him by Joseph Pesaturo.  Mr. Pesaturo is the MBTA's spokesperson.  Mr. Daniel was not sure whether he spoke to Mr. Pesaturo and Mr. Mulhern at the same time, whether they were both on the phone or whether a speakerphone was involved.  It was Mr. Pesaturo who stated that the probe could lead to criminal charges.  Mr. Daniel was not sure whether or not Mr. Pesaturo was on the phone during his conversations with Mr. Mulhern.  He was also not sure whether he had received the quote regarding criminal charges from Mr. Pesaturo before or after speaking to Mr. Mulhern.  SOF at par. 40.

It was Mr. Mulhern who was the "agency official" who confirmed that Nancy O'Loughlin was involved in the investigation.  SOF at par. 41.

Mr. Daniel did not know if Mr. Mulhern was aware that Mr. Pesaturo had indicated that there were allegations of criminal conduct involved in the investigation and he did not know if Mr. Mulhern was present or on the phone when Mr. Daniel was given that information by Mr. Pesaturo.  SOF at par. 42.

Former MBTA Chief of Police Tom O'Loughlin also testified in this action.  Mr. O'Loughlin testified that he spoke to Mac Daniel regarding the Boston Globe article in which Nancy O'Loughlin was named and which it was indicated that the four officers involved (including

Nancy O'Loughlin) could be subject to criminal charges. Mr. Daniel indicated to Tom O'Loughlin that he obtained his information from Mike Mulhern. SOF at par. 43.

Mr. Daniel indicated to Tom O'Loughlin that Mike Mulhern had told him both that Nancy O'Loughlin was the subject of a criminal investigation or proceedings as well as that she was Tom O'Loughlin's sister. Tom O'Loughlin testified that he was informed by Mr. Daniel that it was Mike Mulhern who had informed him that Nancy O'Loughlin was one of the officers subject to the investigation and was also the subject of investigation for criminal conduct. SOF at par. 44.


III.    **ARGUMENT**

The Motion for Summary Judgment must be denied as there are genuine issues of material fact in dispute in this case which prevent the granting of Summary Judgment. Specifically, the two factual issues in dispute are the following:

1.    Whether Michael Mulhern informed the Boston Globe Reporter Mac Daniel that Nancy O'Loughlin could be subject to criminal charges as a result of the investigation into the recorded phone lines; and

2.    Whether Michael Mulhern had malice or ill will toward Nancy O'Loughlin.

There is no doubt that it was Mr. Mulhern who revealed Nancy O'Loughlin's name to Boston Globe Reporter Mac Daniel as being one of the officers who was involved in the probe. According to both Mr. Mulhern and Mr. Daniel, it was Mr. Daniel who initially raised the issue of Nancy O'Loughlin being involved. In response to questioning, Mr. Mulhern stated that he could neither confirm nor deny that Nancy O'Loughlin was involved in the matter. Based upon his neither confirming nor denying this, Mr. Daniel felt he was being accurate in stating that the Lieutenant involved in the investigation was indeed Nancy O'Loughlin. In light of the fact that Mr. Mulhern did not name any of the other individuals who were being investigated, that there was no need for him to name Nancy O'Loughlin as being involved in the investigation, and as he could have informed Mr. Daniel that he had no comment about the question, it would appear that he had a motive in indicating to Mr. Daniel that Nancy O'Loughlin was involved. The only feasible motive that Mr. Mulhern could have for doing that is malice or ill will against Lieutenant O'Loughlin. However, Mr. Mulhern's malice or ill will is evidenced even more

6

strongly by his fabrications about the remainder of the conversation he had with Mr. Daniel, as is discussed below.

Mr. Mulhern testified that in speaking to Mr. Daniel, he informed Mr. Daniel that it was "absolutely not true that Nancy O'Loughlin could face criminal charges" and that Mr. Daniel should not "go down that road" with his story because "nothing could be further from the truth." He further claims that he "warned" Mr. Daniel not to write in his newspaper article that Lieutenant O'Loughlin could face criminal charges.  Mr. Mulhern testified that he had "crystal clear recall that I told him that she was absolutely not involved in any allegations of criminal misconduct, crystal clear recollection of that."

Mr. Mulhern also testified that the day after he first spoke to Mr. Daniel about the matter, Mr. Daniel "called me up and called me an asshole, because the sources he had been given said that I had completely misled him."

Reporter Daniel's version of events is completely at odds with that set forth by Mr. Mulhern. Mr. Daniel's version is also contrary to what he informed former MBTA Chief of Police Tom O'Loughlin had occurred in the conversation. (See discussion below for those contradictions)

According to Mr. Daniel, there was nothing said in the conversation he had with Mr. Mulhern regarding Nancy O'Loughlin being involved in criminal conduct.  Mr. Daniel also stated that he did not recall Mr. Mulhern saying that Nancy O'Loughlin was absolutely never involved in criminal conduct, he did not recall Mr. Mulhern saying to him that it was either misinformation or absolutely not true that Nancy O'Loughlin might be found criminally responsible.  However, and most importantly, Mr. Daniel also testified that if Mr. Mulhern had indeed said these things to him, he (Mr. Daniel) would not have written the things that he wrote in his article. Specifically, if Mr. Mulhern had said the things he claimed he said to Mr. Daniel, Mr. Daniel does not believe he would have written in his story that the probe could lead to criminal charges against the individuals referred to in the story.  Mr. Daniel also said that if Mr. Mulhern had warned him "not to go down that road because nothing could be further from the truth,"  Mr. Daniel would not have written what he did.  Mr. Daniel did not have the impression that Mr. Mulhern was trying to dissuade him from writing in his story that Nancy O'Loughlin could be found criminally responsible.  Mr. Daniel also stated that he did not recall having the second conversation Mr. Mulhern referred to, and that he did not tell Mr. Mulhern that the sources he had been given said that Mr. Mulhern had misled him.

Another version of the events regarding the conversation was testified to by former MBTA Chief of Police Thomas O'Loughlin.  Mr. O'Loughlin testified he spoke to Mr. Daniel after the Boston Globe article had been printed.  According to former MBTA Chief O'Loughlin, Mr. Daniel indicated that he had obtained his information for the article from Mr. Mulhern.  Additionally, Mr. Daniel indicated to Tom O'Loughlin that Mr. Mulhern had told him that Nancy O'Loughlin was both one of the officers subject to the investigation and was also the subject of investigation for criminal conduct.

For the purposes of this Motion for Summary Judgment, based upon the contradictions between the testimony of Mr. Mulhern, and the testimony of both Mr. Daniel and Thomas O'Loughlin, the Court must assume that Mr. Mulhern is not telling the truth and further, that he did not tell Mr. Daniel that Nancy O'Loughlin would not be subject to criminal charges.

By informing Mr. Daniel that Nancy O'Loughlin could be subject to criminal charges (according to the version of the conversation testified to by former Chief Tom O'Loughlin) Mr. Mulhern was providing false information to Mr. Daniel which held Lieutenant O'Loughlin in a bad light. Moreover, the fact that Mr. Mulhern fabricated his version of the conversation with Mac Daniel (based upon the contradictions between Mr. Mulhern's version of events with those of both Mr. Daniel as well as Chief O'Loughlin) it is a reasonable inference that Mr. Mulhern did indeed inform Mr. Daniel that Nancy O'Loughlin could be subject to criminal charges as a result of the investigation.  The only reason for Mr. Mulhern to fabricate his claim that he told Mr. Daniel that Nancy O'Loughlin would absolutely not be subject to criminal charges, would be to attempt to hide the fact that he had done just that, provided Mr. Daniel with false information that Nancy O'Loughlin would be subject to criminal charges for the actions she was accused of engaging in.

According to Mr. Daniel, he based the statements in his article about allegations of criminal conduct, upon statements made to him by MBTA Spokesperson Mr. Pesaturo.  According to Mr. Daniel, Mr. Pesaturo may have been on the phone at the same time as Mr. Mulhern was.  It was Mr. Pesaturo (according to Mr. Daniel) who stated that the probe could lead to criminal charges. Mr. Daniel was not sure whether or not Mr. Pesaturo was on the phone during the conversation with Mr. Mulhern, and he was not sure whether he received the quote regarding criminal charges from Mr. Pesaturo before or after speaking to Mr. Mulhern.  Mr. Daniel also did not know if Mr. Mulhern was aware that Mr. Pesaturo had indicated that there were allegations of criminal conduct involved in the investigation.

It is crucial to determining the validity of the defamation charges brought against Mr. Mulhern, to know whether or not Mr. Mulhern informed Reporter Daniel that Nancy O'Loughlin could be subject to criminal charges.  Based upon the testimony discussed above, there is a genuine issue of material fact as to whether or not Mr. Mulhern was the individual who informed Mr. Daniel of the possibility of these criminal charges.

A reading of the article leaves no doubt that the article implies that Nancy O'Loughlin could be subject to criminal prosecution as a result of the matters for which she was suspended.[1] Accordingly, any statement in the article that Nancy O'Loughlin could be subject to criminal prosecution as a result of the actions for which she was suspended, are false.  The basis upon which Mr. Daniel wrote in his article that Nancy O'Loughlin could be subject to criminal prosecution, were apparently the statements made to him by Mr. Mulhern.[2]

The second factual issue as to which there is a genuine dispute is whether Mr. Mulhern held malice or ill will toward Nancy O'Loughlin.

Initially, the fact that Mr. Mulhern has apparently falsely testified regarding the conversation he had with Mr. Daniel, in order to make it appear that he was speaking favorably of Nancy O'Loughlin when talking to Mr. Daniel, is evidence of his ill will and malice in and of itself. There would be no reason for Mr. Mulhern to fabricate regarding his conversation with Mr. Daniel or what he said, unless he were trying to hide the fact that he had made false statements. There would be no reason for him to make false statements about Nancy O'Loughlin (about her possible criminal liability) unless he did have malice or ill will toward her.

As is indicated by Defendant in its Memorandum at p. 7, actual malice may be inferred from a statement which has either been fabricated, or was made by an informant whose veracity is doubtful.  In light of the conflicts in the testimony regarding what was said between Mr. Mulhern and Mr. Daniel, it appears that Mr. Mulhern has made various fabricated statements, and additionally that his veracity is doubtful.  This is a basis for finding that he acted with malice.

---

[1] It should also be elaborated upon that during their deposition testimony, both Mr. Mulhern and Chief Carter indicated that they had no reason to believe that anything Nancy O'Loughlin had done or had been accused of doing could lead to criminal prosecution of her nor did they have any belief at the time of her suspension that anything she had done or been accused of doing could lead to criminal prosecution of her.

[2] To the extent that Defendant claims that the testimony of Thomas O'Loughlin regarding what Mr. Daniel said to him is inadmissible hearsay, this does not impact upon the Court's ruling on this Motion for Summary Judgment. Initially, Mr. Mulhern's statements are false, based upon their contradictions with the testimony with Mr. Daniel. More importantly, hearsay or not, the testimony of former Chief O'Loughlin is reliable and should not be excluded as being hearsay.

9

Defendant has repeated in its Brief the standard set forth in <u>New York Times v. Sullivan</u>, 376 US 254, 280 (1964), that a statement is made with actual malice if it is made with "knowledge that it was false or reckless disregard of whether it was false or not."  Mr. Mulhern has apparently made a statement to Mr. Daniel with knowledge that it was false.

Defendant also claims that in attempting to prove malice, it is not enough to show that a statement was intended to harm or disparage a Plaintiff, but rather it is necessary to show that a statement was intended to harm through falsehood.  However, that standard is meet in this case. By informing or indicating to Mr. Daniel that Nancy O'Loughlin was subject to criminal charges, Mr. Mulhern was intending to harm Nancy O'Loughlin through a false statement.

Based upon all of the above, in particular the conflictual testimony regarding the conversation between Mr. Mulhern and Mr. Daniel, the apparent fabrication by Mr. Mulhern, and the fact that Mr. Mulhern did not refuse to comment when asked whether Nancy O'Loughlin was involved in this matter, the evidence could support a reasonable jury finding that actual malice has been shown by clear and convincing evidence.

Summary Judgment must be denied in relation to the defamation claim against Mr. Mulhern.

Summary Judgment must be denied as to the claims for violation of M.G.L. c.151B, M.G.L. c.12 §11, and 42 U.S.C. §1983.

Mr. Mulhern testified that in his job as General Manager of the MBTA, both the General Counsel of the MBTA as well as the Chief of the MBTA Police Department reported directly to him.  Clearly both of these individuals would have had knowledge that Nancy O'Loughlin filed a Charge of gender discrimination against the MBTA in October 2003.  As to the question of whether he was aware of Nancy O'Loughlin's MCAD Charge, Mr. Mulhern has denied such knowledge.  However, in a somewhat more qualified vain, he stated that he did not recall whether in any conversations he had with Chief Carter about the investigation or its aftermath, he was informed that Nancy O'Loughlin had discrimination charges pending against the MBTA.

In light of Mr. Mulhern's apparently false testimony regarding the statements he made to Boston Globe Report Mac Daniel (discussed in detail above)  and thus his general lack of credibility, a reasonable inference is that Mr. Mulhern was not being honest about his knowledge of Nancy

O'Loughlin's discrimination charge as well, particularly in light of his supervision of the General Counsel and the Chief of Police.

If it is accepted for purposes of ruling on this Summary Judgment Motion that Mr. Mulhern was indeed aware of Nancy O'Loughlin's discrimination charge when he spoke to Mac Daniel, Plaintiff is therefore able to prove a causal connection between her protected activity and the retaliatory conduct (falsely slandering her in a major national newspaper).

Defendant also claims that retaliation canNancy O'Loughlint be proved, as Plaintiff canNancy O'Loughlint prove that she suffered "an adverse employment action which materially disadvantaged her in respect to salary, grade, or other objective terms and conditions of employment."  Plaintiff asserts that being falsely accused of criminal conduct by one's employer in a national newspaper with a publication of several hundred thousand editions, constitutes a disadvantage in relation to terms and conditions of employment.  However, to whatever extent such slander by one's employer is Nancy O'Loughlint deemed to have an adverse effect on the "terms, conditions, or benefits" of employment, Plaintiff suggests that the standard which should be adopted by this Court for claims under M.G.L. c.151B is the standard set forth by the United States Supreme Court for retaliation claims under 42 U.S.C. §2000e in the case of <u>Burlington Nancy O'Loughlinrthern v. White</u>, 126 S. Ct. 2605 (2006).  In other words, the actions of Nancy O'Loughlin's employer in slandering her in a national publication should be considered a matter that would be material to a reasonable employee, and should be considered retaliation under M.G.L. c.151B.

Similarly, a slander of the type engaged in by Mr. Mulhern must be deemed to be the type of "threats, intimidation or coercion" which would satisfy a claim under M.G.L. c.12 §11(h).  An employee who has been slandered in the Boston Globe for having filed a claim of gender discrimination, is Nancy O'Loughlint likely to file such a claim again.

Plaintiff's claims under 42 U.S.C. §1983 must survive as well.  To the extent that Plaintiff has proved for Summary Judgment purposes that Mr. Mulhern retaliated against her (by slandering her in a newspaper for her having filed claims of discrimination under Federal and State law), Nancy O'Loughlin has indeed proved that she was deprived of a Federal right or privilege.

The fact that Plaintiff is unable to bring a claim against Mr. Mulhern for violation of 42 U.S.C. §2000e (as she is not able to bring a discrimination or retaliation claim against an individual under Federal law) in no way means that Mr. Mulhern's actions on behalf of the MBTA did not

constitute retaliation in violation of 42 U.S.C. §2000e for which the MBTA would be responsible.  As Mr. Mulhern's actions in retaliating against Plaintiff deprived her of her right to be free from discrimination and retaliation under Federal law, Mr. Mulhern has violated 42 U.S.C. §1983.

Similarly, Mr. Mulhern is not entitled to qualified immunity under relevant case law.  At the time of his conduct, retaliation for the exercise of protected civil rights was clearly a violation of law, and a reasonable official such as Mr. Mulhern would have known that retaliation violated those rights.

**CONCLUSION**

For all the foregoing reasons it is respectfully requested that the Motion for Summary Judgment filed by Defendant Michael Mulhern be denied in its entirety.

Respectfully submitted,
NANCY O'LOUGHLIN
By her attorney,

/s/Mitchell J. Notis

_____
MITCHELL J. NOTIS, BBO# 374360
*Law Office of Mitchell J.Notis*
370 Washington Street
Brookline, MA 02445
Tel: 617-566-2700

12