UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANCY O'LOUGHLIN,<br>   Plaintiff,<br><br>v.<br><br>MASSACHUSETTS BAY<br>TRANSPORTATION AUTHORITY,<br>JOSEPH CARTER, and MICHAEL<br>MULHERN,<br>   Defendants. | C.A. No. 04-10933 JLT |

**MOTION OF DEFENDANTS MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY AND JOSEPH CARTER
TO STRIKE PORTIONS OF PLAINTIFF'S STATEMENT
PURSUANT TO LOCAL RULE 56.1 AND HER AFFIDAVIT**

**INTRODUCTION**

Defendants Massachusetts Bay Transportation Authority ("the Authority") and Joseph Carter ("Carter")(collectively "defendants") hereby move the Court to strike portions of the Statement Pursuant to Local Rule 56.1 (NOL Statement) and the Affidavit (NOL Aff.) submitted by Plaintiff Nancy O'Loughlin in support of her opposition to defendants' Motion for Summary Judgment.

Specifically, defendants request the Court to strike (1) those portions of plaintiff's Statement and Affidavit that constitute "conclusory allegations, improbable inferences, and unsupported speculation" upon which this Court cannot rely in deciding whether summary judgment is appropriate.  See Straughn v. Delta Airlines, Inc., 250 F.3d 23, 33 (1st Cir. 2001); (2) those portions of plaintiff's Statement and Affidavit that represent her unsupported opinions and the unsupported opinions of witnesses upon whom she relies, rather than "specific facts showing that there is a genuine issue for trial" as required by

Fed. R. Civ. P. 56(e); (3) assertions in plaintiff's Statement and Affidavit that constitute or are based on hearsay which do not meet any recognized exception of Fed. R. Evid. 804, because such assertions do not constitute "facts" upon which the Court may rely in deciding the Motion for Summary Judgment; (4) statements in plaintiff's Statement and Affidavit which purport to show or argue that defendants are allegedly retaliating against her because of her current assignment or because of her claims that the Authority has not complied with the orders of an arbitrator who reached a decision in her favor.  The decision of the arbitrator and the implementation of his decision are not at issue in this case.[1]; and (5) those allegation in plaintiff's Statement and Affidavit that have a tendency to mislead the Court or are not relevant to the disposition of the Motion for Summary Judgment.[2]

**Standard of Review**

In reviewing O'Loughlin's response to defendants' Motion for Summary Judgment, the Court should apply the standards set forth in Fed. R. Civ. P. 56(e).  See Asselin v. Waldron, 2004 U.S. Dist. LEXIS 392 (D.N.H. 2004) citing and quoting Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001)(citation omitted).  Contrary to the requirement of Rule 56(e), plaintiff has failed to set forth "specific facts showing that there is a genuine issue for trial."  Rather, in many instances, she relies on her and

---

[1] The arbitration arose as a result of plaintiff's demotion and an action she brought pursuant to the collective bargaining agreement between her union and the Authority.  Assertions in her affidavit are a blatant attempt to amend her complaint to include circumstances evidencing her dissatisfaction with the defendants since the arbitration.  Those circumstances are not part of this case and should not be considered by the Court.  Each objectionable assertion will be discussed below.

[2] It should be noted that plaintiff specifically indicated in her Statement that "she only set forth . . . those facts which are either not touched upon by the Defendants in their Statements (pursuant to L.R. 56.1), or which are contrary to the factual statements set forth by the defendants."  (NOL Statement, p. 1)  The remaining facts presented by defendants that were not controverted by plaintiff must be deemed admitted for purposes of the motion. (L.R. 56.1)

2

William Fleming's unsupported opinions and conjecture. She also relies on assertions that are vague and do not constitute "facts . . . susceptible to objective verification." See id., citing and quoting Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) and Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989). Finally, O'Loughlin presents assertions that are based solely on hearsay. The Court should strike all such portions of O'Loughlin's Statement and Affidavit.

### O'Loughlin's Statement is Suffused With Unsupported Opinions, Hearsay, Speculation and Irrelevant and Misleading "Facts" that Should Be Stricken

O'Loughlin claims that Carter discriminated against her on the basis of her sex by assigning her to command the Detail Unit because it was a "punishment" assignment. In regard to that assertion, defendants request the Court to Strike the following as improper statements of opinion, vague assertions, unsupported conclusions, or hearsay that should not be considered by the Court:

**Paragraph 1 of NOL Statement in its entirety.** Fleming's statements that commanding the Detail Unit was considered and perceived as "a punishment assignment" and that the Detail Unit was "considered the Siberia of the Police Department" should be stricken. These assertions, which do not indicate who perceives the job as a punishment assignment, are too vague to be considered "fact" for purposes of summary judgment. They are Fleming's opinion based on his background with the department.[3] Fleming III, pp. 147-48.[4] It is significant that Fleming also testified that the assignment of a lieutenant to the position would be a punishment in some cases, and in other cases it

---

[3] Carter did not share that background – his background was with the Oaks Bluff and Boston Police Departments. Fleming II, pp. 267-68.

[4] For the convenience of the Court, defendants have attached hereto the pages of depositions that are cited, even though most of the pages have been submitted with their Motion for Summary Judgment.

3

would not be a punishment, depending upon whether or not the lieutenant asked for or wanted the assignment. Fleming III, pp. 146-47. He thought the position was a punishment for O'Loughlin because she liked she "liked working outside with the troops." Id., p. 147.

Fleming's assertions that "[s]everal former Chiefs had assigned officers to the detail unit in order to punish them" and that commanding the detail unit "would inhibit an officer's opportunity for advancement under the regime in power " are conclusions that are not supported by admissible evidence and should, similarly, be stricken. The fact that Fleming had the view, and felt unspecified others had the view, that under prior regimes (before Chief Carter's time), when other superior officers were placed in this role it was a punishment assignment, is not any kind of evidence of Carter's motive vis-à-vis O'Loughlin's assignment being one of punishment, or more to the point, one of gender animus. Moreover, there is no evidence that any decision-maker ever told Fleming that he was assigning an officer to command the detail unit in order to punish that officer.[5]

Fleming testified specifically that Carter never said that he was assigning O'Loughlin to the Detail Unit in order to punish her and that Carter never gave him any reason to believe that he intended to punish O'Loughlin by the assignment. Fleming II, p. 268. Similarly, Fleming does not claim to have first-hand knowledge of such a motive. It is especially significant that Fleming also testified that he did not know how Carter viewed the Detail Unit. Fleming III, p. 152.

---

[5] While Fleming testified that former Chief Thomas O'Loughlin placed Captain John Martino in command of the Detail Unit in order to punish him, he also testified that Chief O'Loughlin never told him that he intended to punish Captain Martino by placing him into the position. Fleming II, pp. 254, 258-59. This was only Fleming's opinion. In fact, former Chief O'Loughlin testified that he did not believe the position was a punishment assignment. TOL, pp. 152-53.

4

**Paragraph 2 of NOL Statement in its entirety.** O'Loughlin's unsupported opinion that the commander of the Detail Unit was a punishment position (and that this was known throughout the department) should be stricken because it does not constitute a fact. Moreover, her opinion is not relevant to the Motion for Summary Judgment. It is Carter's motivation for assigning O'Loughlin to the position that is at issue, not her opinion. It is undisputed that O'Loughlin did not tell Carter that she perceived the position as a punishment or that she did not want or like the assignment, although she was aware that she could have done so. (SUF, ¶ 62)   Her assertion that Deputy Chiefs testified in federal court that it was a punishment assignment is inadmissible hearsay that should not be considered by the Court.

**Paragraph 3 of NOL Statement in its entirety.** Fleming testified that he told Carter he moved Captain John Martino from the position of commander of the Detail Unit because he thought the assignment was a punishment for Martino. Fleming <u>did not</u> testify that he told Carter that assigning any superior officer to the position was a punishment – he spoke to Carter specifically about Captain Martino. <u>See</u> Fleming II, pp. 272-73. At any rate, the statement should be stricken because Fleming did not remember when the alleged conversation took place or in what context.[6]  <u>Id.</u>, p. 272.

In addition, it is clear the Fleming did not consider the job a punishment position *per se*. He testified that he would have assigned any lieutenant or captain to the position

---

[6] Moreover, Fleming testified that when he told Carter he moved Captain Martino from the position because he considered it a punishment position, Carter did not respond and just went on to another subject. <u>Id.</u> pp. 272-73.  There is no evidence that Carter heard or considered the statement Fleming allegedly made.

who wanted to command the Detail Unit, notwithstanding the officer's senior rank.[7] Notwithstanding his testimony that the position was one of punishment, Fleming also said that he would not have assigned a lieutenant to the position who had not requested the assignment because he preferred lieutenants under his command to be on the street. Fleming III, pp. 146-47. Moreover, Fleming's observations about the circumstances under which he would assign officers to the Detail Unit are not relevant to this case. Fleming was not the chief and had only served in that capacity for several months as interim chief. That he would only assign officers to the position who wanted to be there (see n.7) was a reflection of his management style and was inconsistent with the practices of at least two former chiefs and Carter. Both Chief O'Donovan and Chief O'Loughlin assigned O'Loughlin to perform duties she did not like without first asking her whether she wanted the jobs, and both of these former chiefs had assigned officers above the rank of sergeant to command the Detail Unit (as had Carter).[8] Again, the issue is Chief Carter's motive for the placement of O'Loughlin, not what Fleming thought of the Detail Unit.

---

[7] Moreover, Fleming's assertions are undermined by his own actions and testimony. From 1995 until Fleming became interim chief in August 2002, the commander of the Detail Unit had been either a lieutenant or a captain. See Defendants' Statement of Undisputed Material Facts, ¶ 57 (hereinafter "SUF). While interim chief, Fleming decided to transfer the captain, who was then serving in the position, out of the Detail Unit. Id. During the brief period Fleming served as interim chief, he moved Captain Martino out of the position of commander of the Detail Unit. Fleming posted the position, specifying that any superior officer was eligible for the job, whether it was a sergeant, lieutenant, or captain. Id. A sergeant bid for the position and Fleming assigned him to command the Detail Unit. Id. According to Fleming, commanding the Detail Unit was not a punishment position for this sergeant because the sergeant wanted to be in the position. Fleming II, pp. 265-66. Fleming testified that he would not have placed a lieutenant or captain into the position unless the officer wanted the job. (SUF, ¶ 58). He also acknowledged, however, that any officer could view the assignment to any position he or she did not want or like as a punishment. Fleming III, PP. 48-50.

[8] It is undisputed that, like his predecessors, Chief Carter did not ask O'Loughlin or any of the many officers he reassigned during 2003 whether they wanted to be transferred prior to changing their assignments or whether they liked the positions into which they had been transferred.

**Paragraph 5 of NOL Statement in its entirety.** For the above reasons, Fleming's opinion that it was a punishment assignment to place O'Loughlin in command of the Detail Unit does not constitute a fact that should be considered by the Court. It is significant that Fleming testified that he had no reason to believe Carter placed O'Loughlin into the Detail Unit to punish her, based on anything he had seen or heard. (Fleming III, pp. 51-53) Fleming's opinion that there was no reason to transfer O'Loughlin out of the detective unit is irrelevant. Finally, it is of no consequence that Fleming was "stunned" when O'Loughlin was transferred.

**All Unsupported, Conclusory, And
Misleading Assertions Should Be Stricken**

**Paragraph 9 of NOL Statement in its entirety.** Fleming testified that he did not know whether the statement Carter allegedly made about O'Loughlin's dress was negative or positive. He testified that he <u>assumed</u> that the statement was negative because it was allegedly made just after O'Loughlin was told of her reassignment. (SUF, ¶ 59) This ambiguous statement cannot be considered a "fact" upon which the Court relies as evidence that Carter harbored a discriminatory animus. Fleming testified that he did not think O'Loughlin was dressed inappropriately. However, he did not even recall how she was dressed. Fleming II, p. 276. Though Carter denied making the particular statement attributed to him by Fleming, he was clear that he considered it inappropriate for O'Loughlin, as a manager, to dress routinely in work clothes and work shoes rather than in business attire. (Carter Aff., ¶ 22)[9]  In sum, the alleged ambiguous comment about O'Loughlin's dress doesn't even qualify as a stray remark since it has no apparent gender

---

[9] The affidavit was submitted with defendants' Motion for Summary Judgment.

7

meaning. In a paramilitary organization, it is more consistent with Carter's "spit and polish" ethos than any gender issue.[10]

**Paragraph 14 of NOL Statement in its entirety.** See comments at paragraph 5, above. Fleming's opinion about the quality of O'Loughlin's work is not a "fact" that should be considered by the Court. That Fleming claimed to be satisfied with the job O'Loughlin was doing does not raise an inference that Carter discriminated against O'Loughlin by reassigning her out of the detective unit to the Detail Unit. Fleming also thought that Lt. Leucthe, O'Loughlin's night shift counterpart in the detective unit, was doing a good job.[11] Carter, however, who was responsible for commanding the entire department, was not satisfied with the jobs O'Loughlin and Leucthe were doing. (SUF, ¶¶ 43) As a result, Carter transferred O'Loughlin and Lt. Leucthe out of the detective unit on the same day. He also consolidated command of the unit under one lieutenant, rather than two. (SUF, ¶ 18)

**Paragraph 17 of NOL Statement in its entirety.** Fleming's testimony about allegedly being yelled at by Carter because O'Loughlin distributed a memo should be stricken. O'Loughlin indicates that the incident allegedly occurred "at one point which appears to be while Nancy O'Loughlin was in the Detective Unit." This statement is simply too vague and unspecific to constitute a "fact" upon which the Court should rely. Moreover, there is no inference of unlawful discrimination that can be drawn, even if the incident occurred.

---

[10] Fleming also testified that Carter commented on how he [Fleming] dressed. (SUF, ¶ 59)

[11] There is no evidence to support O'Loughlin's tacit suggestion that officers are allowed to remain in the positions to which they are assigned indefinitely so long as they are performing their jobs.

**Paragraph 18 of NOL Statement in its entirety.** All references to Carter allegedly saying "vengeance will be mine" should be stricken. According to O'Loughlin, the statement was allegedly made "at some point apparently between April, 2005 and April, 2006." Fleming testified that he did not hear the statement – he was told about the alleged statement by another officer. Fleming III, pp. 94-96, 110-116. Moreover, Fleming did not know the context in which the statement was allegedly made. He believed that it had to do with lawsuits, but he was never told what lawsuit – O'Loughlin's name was not mentioned. Fleming also thought that the statement meant that Carter was "gunning for [him], among others," although Fleming never filed a lawsuit. Id., pp. 96, 116. Fleming testified that he believed the other officer told him about the statement because the officer was "warning [Fleming] to be careful". Fleming III, p. 114. This statement is precisely the type of hearsay that the Court cannot rely upon when deciding a summary judgment motion and it should be stricken.

Similarly, the narrative based on Fleming's testimony that concerns a time "apparently after August, 2004," when several officers allegedly went to the Stop and Shop and "obtained the video surveillance" in order to catch O'Loughlin in an act of misconduct should be stricken. While O'Loughlin indicates that Fleming testified about his knowledge of the incident, in reality, Fleming testified that he did not have first hand knowledge of the alleged incident – he bases his "belief" that this was an attempt to catch O'Loughlin in an act of misconduct on a conversation he had with another officer. Fleming III, pp. 131-32, 218-23. This is unreliable hearsay – Fleming does not even know, within a one year period, when the incident allegedly occurred. This gossip Fleming recounted during his deposition should not be relied upon by the Court and

should be stricken. In opposing summary judgment, a plaintiff needs to come forward with evidence, and O'Loughlin's attempt to fill this void with Fleming's unsupported beliefs/speculation just does not satisfy her burden.

**Paragraph 22 of NOL Statement, last sentence.** The suggestion that "service [of the present lawsuit] upon Chief Carter's wife occurred approximately three weeks before Nancy O'Loughlin was informed that she was being demoted two ranks . . . . and presumably less than three weeks after Chief Carter made his disciplinary decision" is misleading and should be stricken. O'Loughlin appears to be attempting to tie the service of this complaint with Carter's decision to demote her in an attempt to prop up her retaliation claim. O'Loughlin had filed her MCAD complaint alleging discrimination in October 2003, long before Carter made the decision to demote her. By the time the civil complaint was served, O'Loughlin and several male officers, including Fleming (none of whom had filed complaints) had already been charged with violating the rules and procedures of the police department. However, Carter could not discipline any of the officers until after the mandated "just cause" hearings. Immediately after the just cause decision of the hearing officer in O'Loughlin's case, Carter demoted her (the precise same discipline he meted out to Fleming, a male lieutenant).

**Paragraph 27 of NOL Statement, first and second sentences.** Fleming's opinion that it was not easy being a female in policing is based, in large part, on his assertion that back in 1983 O'Loughlin joined the police force, women faced problems such as bullet proof vests that were uncomfortable because they did not allow for the difference between the physiques of men and women, standard sized guns that did not take into account the fact that men and women generally have different sized hands, and the fact that women could

10

get pregnant. Fleming III, pp. 127-131. Such issues no longer seem to exist, and the observations were about women generally, not about O'Loughlin. See id., pp. 213-18. Therefore, those issues are not relevant to this case – they have nothing to do with O'Loughlin's allegation of discrimination. The "beatings" O'Loughlin allegedly suffered "over the years" occurred because of O'Loughlin's alleged fearlessness, not because of her gender. Fleming I, p. 56-57. As these sentences are misleading and not relevant to this case, they should be stricken.

**Paragraph 28 of NOL Statement in its entirety.** References to unnamed white, male, officers who filed a lawsuit because they allegedly resented O'Loughlin should be stricken. O'Loughlin and several female and minority officers bypassed seven white, male officers who were ranked higher than them on the promotional lists for the positions of sergeant and lieutenant. See Brackett v. Civil Service Commission, 447 Mass. 233 (2006). Those officers exercised their right to challenge the bypasses at the Civil Service Commission. The matter was resolved in July 2006, when the Supreme Judicial Court issued a decision upholding the promotions. Id. There is absolutely no evidence that any officer, let alone any decision-maker, harbored resentment toward O'Loughlin because of her promotion.

**Paragraph 38 of NOL Statement, second sentence.** As noted by O'Loughlin, Mac Daniels testified that Michael Mulhern told him that he "could neither confirm nor deny" Mr. Daniel's assertion that O'Loughlin was involved in an investigation at the police department. Mr. Daniel's interpretation of that response ("to some degree it meant that the information was true but that the source could not acknowledge that") is not relevant to this case and should be stricken. Daniel did not testify that he and Mulhern had some

11

common understanding as to the inference to be drawn from the statement. As the issue is whether Mulhern somehow defamed O'Loughlin, not what Daniel thought, striking the sentence is appropriate.

**Paragraph 44 of NOL Statement in its entirety.** Any statement by Former Chief Thomas O'Loughlin about what Mac Daniel allegedly said to him is hearsay that does not fall within any recognized exception and should be stricken.

**Paragraph 45 of NOL Statement in its entirety.** Any statement by Former Chief Thomas O'Loughlin about what other officers allegedly said in a legal proceeding that is unrelated to the case at bar constitutes inadmissible hearsay and should be stricken.

**Paragraph 47 of NOL Statement, first sentence.** O'Loughlin was disciplined by her brother in law, former Deputy Chief John O'Loughlin for conduct that was strikingly similar to that for which she was disciplined by Chief Carter (i.e. making derogatory statements about a fellow officer on a recorded police department telephone line when she was off duty). The discipline was written. (see SUF, ¶¶ 4, 84; Exhibit 30). The document memorializing the discipline indicates that it was a formal counseling, contrary to O'Loughlin's assertion that the discipline was "informal". Id. O'Loughlin should not be allowed to minimize the implications of the discipline by claiming that it was "informal", since her assertion is clearly contrary to the written record of the discipline.

**O'Loughlin's Affidavit Impermissibly Attempts to Place
Issues Before This Court That Are Not Part Of This Case**

Defendants respectfully request the Court to strike the following portions of O'Loughlin's affidavit:

**Paragraph 1, first two sentences.** See explanation at paragraph 47, above.

**Paragraphs 5-7 in their entireties.** The arbitration occurred subsequent to the present action and is a distinct proceeding. O'Loughlin is attempting to bolster her retaliation claim by presenting unpleaded allegations that are not properly before this Court. Those allegations should be stricken. Moreover, O'Loughlin's conclusory statements about the implementation of the arbitration award cannot be considered facts for purposes of summary judgment. Any dissatisfaction she has with the manner in which the arbitrator's award has been implemented is a matter to be resolved in the context of the arbitration.

Respectfully submitted,

DEFENDANT MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY AND
JOSEPH CARTER
By their attorneys,

/s/ Joseph L. Edwards, Jr.
Walter B. Prince, BBO# 406640
Joseph L. Edwards, Jr., BBO# 564288
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA  02109
(617) 456-8000

Dated: October 2, 2006