UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANCY O'LOUGHLIN,<br>      Plaintiff,<br><br>v.<br><br>MASSACHUSETTS BAY<br>TRANSPORTATION AUTHORITY,<br>JOSEPH CARTER, and MICHAEL<br>MULHERN,<br>      Defendants. | )<br>)<br>)<br>)   C.A. No. 04-10933 JLT<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### REPLY OF DEFENDANTS MASSACHUSETTS BAY TRANSPORTATION AUTHORITY AND JOSEPH CARTER TO PLAINTIFF'S OPPOSITION TO THEIR MOTION FOR SUMMARY JUDGMENT – LEAVE TO FILE GRANTED ON 10/5/06[1]

By leave of Court, Defendants Massachusetts Bay Transportation Authority (the "Authority") and Joseph Carter (collectively the "defendants") respectfully submit this Reply to the Opposition to their Motion for Summary Judgment submitted by Plaintiff Nancy O'Loughlin ("O'Loughlin").[2] Plaintiff's Opposition does not set forth admissible evidence sufficient to show that there are genuine issues of material fact that should be presented to a jury. Instead, she attempts to cobble together a combination of unsubstantiated opinion, conclusory observations, and inadmissible and irrelevant evidence in support of her claims that defendants discriminated and retaliated against her.

Notwithstanding the many allegations in her complaint, O'Loughlin confines her Opposition to the following claims: (1) Carter discriminated against her on the basis of

---

[1] Defendants Massachusetts Bay Transportation Authority and Joseph Carter incorporate the Reply of Michael Mulhern and all arguments therein by reference, as if set forth fully herein.

[2] Defendants have filed a Motion to Strike portions of plaintiff's statement of facts she claims are in dispute and portions of an Affidavit she submitted with her Opposition to the Motion for Summary Judgment. Defendants will repeat arguments made in that motion only to the extent necessary to clarify arguments made in this Reply.

her sex by reassigning her from the position of commander of the detective unit to that of commander of the detail unit (according to her, a "punishment" assignment); (2) Carter discriminated against her on the basis of her sex when she was subsequently suspended and demoted; (3) Carter retaliated against her for filing a discrimination complaint with the Massachusetts Commission Against Discrimination ("MCAD") after her assignment to the detail unit; and (4) the Authority or Defendant Michael Mulhern retaliated against her by telling *The Boston Globe* that she was involved in an investigation that could lead to criminal charges. Id., pp. 2-3. Further, she contends that the reasons given by defendants for transferring her and subsequently disciplining her are pretexts for unlawful discrimination and retaliation. Because O'Loughlin has failed to put forth credible evidence that she was discriminated or retaliated against, defendants are entitled to summary judgment on all claims.

**Carter Gave Legitimate, Non-discriminatory Reasons For Reassigning O'Loughlin Out Of The Detective Unit**

The following facts are undisputed. O'Loughlin served as the day shift commander of the detective unit and Lieutenant Joseph Leucthe served as the night shift commander of the unit. On August 8, 2003, Carter issued an order reassigning both officers out of the detective unit. He offered several reasons for making the reassignments. Carter testified that he was disappointed in the manner O'Loughlin and Lt. Leucthe managed their respective shifts. (Carter Aff., ¶ 18) In particular, he was not receiving the types of reports he expected to receive from the detective unit. Id., ¶ 13. In regard to O'Loughlin, Carter found that she was continuing to spend much of her time investigating cases with officers she supervised, rather than remaining at headquarters during critical times of the day to manage the unit. Id. Whenever Carter walked to the

detective unit to get information about the unit, he did not find O'Loughlin there and had to get the information he sought from other officers. Id. Carter believed that Lt. Leucthe displayed similar deficiencies in his command of the detective unit on the night shift. Id.

In addition to the foregoing, Carter determined that Investigative Services (of which the detective unit was a part) was top heavy with managers. Id., ¶ 18. Rather than place two new lieutenants into the positions vacated by O'Loughlin and Lt. Leucthe, he consolidated command of the unit under Lieutenant Thomas McCarthy. Lt. McCarthy had served previously as deputy chief and as commander of the detective unit in past administrations and Carter believed that he would be better able to oversee the many changes he planned for investigative services and the detective unit than O'Loughlin and Lt. Leucthe.[3] Id. As a result of the restructuring, a third lieutenant, Lt. Lenahan, a commander in the major case unit, was also transferred out of Investigative Services. Fleming II, p. 319.

Once he made the decision to transfer O'Loughlin and Lt. Leucthe out of the detective unit, Carter assigned O'Loughlin to command the detail unit. (Defendant's Statement of Undisputed Facts, ¶ 49)(hereinafter "SUF") He considered it an important position and thought she would be an effective commander. (Id., ¶¶ 51, 53) There were problems in the unit and Carter wanted a lieutenant in the position to replace the sergeant Fleming assigned there when he was interim chief. (Id., ¶¶ 49, 57) Fleming acknowledged that there were problems in the detail unit. Fleming II, 285-91. Carter did

---

[3]   Among other things, Carter restructured the detective unit and disbanded the major case unit (also a part of investigative services). Fleming II, pp. 318-19. Carter also began periodically rotating patrol officers through the detective unit for training purposes, and he instituted a competitive process for selecting detectives. Id., p. 319.

not place Lt. Leucthe into another position of command because of his deficiencies commanding the detective unit. (SUF, ¶ 50)

**O'Loughlin Has Not Presented Genuine Issues Of Material Fact As To Whether Her Transfer To The Detail Unit Was Discriminatory**

O'Loughlin claims that genuine issues of material fact exist as to whether the command of the detail unit was viewed as a punishment position and whether Carter knew that it was deemed a punishment position. (Opp., pp. 15-16)  Defendants have moved to strike all references to the position being a punishment assignment for the reasons indicated in the motion and requested the Court to ignore all such references. See Motion to Strike, pp. 3-7. Notwithstanding O'Loughlin's characterization of the position as one of punishment, she has failed to meet her burden of presenting evidence that Carter transferred her out of the detective unit and assigned her to the detail unit because of her sex or that the reasons he gave were not the real reasons – the only relevant inquiries here.[4]

**O'Loughlin Has Not Presented Sufficient Evidence Of Pretext Regarding The Reassignments To Survive Summary Judgment**

To make a showing of pretext, a plaintiff has to do more than simply refute or cast doubt on the employer's rationale; she must show an impermissible discriminatory animus.[5] Moreover, she must present "evidence . . . of such a strength and quality as to permit a reasonable finding that the . . . [challenged action] was obviously or manifestly

---

[4] Even if the command of the detail unit was legitimately characterized as a punishment position, Carter could have reassigned O'Loughlin to the position for any number of reasons, so long as the decision was not based on some impermissible criterion.

[5] Ventura Tirado Arce, Et Al., Plaintiffs, v. Aramark Corporation, 239 F. Supp. 2d 153, 160 (D.P.R. 2003)(internal quotations and citations omitted).

unsupported."[6] Pretext will not be found if the plaintiff relies solely on evidence that challenges the employer's decision or even by showing that the decision was unfair or made without good cause.[7] O'Loughlin has not presented sufficient evidence of pretext.

Here, Carter gave very specific reasons for his belief that O'Loughlin (and Lt. Leucthe) should be moved from the detective unit. O'Loughlin did not address the reasons in her Opposition. Instead, she invites the Court to conclude, in essence, that Carter is not credible because his testimony on ancillary matters is contradicted by Fleming. For example, Fleming testified that he told Carter that the detail unit was a punishment assignment; Carter said he had never been told that. From that conflicting testimony, O'Loughlin argues:

> As Lieutenant Fleming's testimony must be taken as the correct version of what transpired between the two men, the inescapable conclusion is that Chief Carter is not being truthful in his testimony on this issue. The reasonable inference to be drawn after concluding that Chief Carter is not credible on this issue, is that Chief Carter's testimony on the other issues in this case is not credible either. Accordingly, the Court must not give any weight to Chief Carter's testimony on the other issues in this case is not credible either. (Opp., p. 16, # 1)

Her argument is simply not the law. It was incumbent upon O'Loughlin to address the <u>specific</u> reasons Carter articulated for his actions. By not addressing those reasons, she has failed to establish a genuine issue of fact as to whether the articulated reasons are pretexts for discrimination. See e.g., <u>Escobar v. Office of the Disabled Persons Investigating Official</u>, 797 F. Supp. 70, 76 (D.P.R. 1992) citing <u>Menzel v. Western Auto Supply Company</u>, 848 F.2d 327, 330 (1st Cir. 1988)(if plaintiff's rebuttal evidence fails to address specific reasons advanced by employer for contested actions,

---

[6]     <u>Iorio v. Aramark Servicemaster</u>, 2005 U.S. Dist. LEXIS 40290 (D. Mass. 2005)(construing Massachusetts law) <u>Ruiz v. Posadas de San Juan Associates</u>, 124 F.3d 243, 248 (1st Cir. 1997) and <u>Tardanic v. Aetna Life & Cas. Co.</u>, 41 Mass.App.Ct. 443, 447-48 (1996)(additional citation omitted).

[7]     <u>Iorio v. Aramark Servicemaster</u>, 2005 U.S. Dist. LEXIS 40290 (D. Mass. 2005)(citations omitted)

summary judgment is appropriate for defendant because no material facts remain in dispute).

O'Loughlin also argues that she has shown pretext by virtue of the following: (1) Fleming testified that there was no reason to his knowledge to transfer her – he was satisfied with her job performance. (Opp., p. 17, # 3) This assertion is subject to a motion to strike. See Motion to Strike, pp. 7-8. For reasons discussed therein, this is not evidence of sex discrimination or pretext. Fleming's opinion is of no consequence; it is Carter's perception that matters here.[8] Moreover, Fleming's opinion does not undermine Carter's belief that O'Loughlin and Lt. Leucthe were not performing up to his standards.[9] In addition, O'Loughlin has not put forth evidence that officers are allowed to remain in their positions indefinitely so long as they are performing adequately. It is undisputed that a chief may assign lieutenants to positions as they see fit. (SUF, ¶ 17) It is also undisputed that Carter implemented many changes in the detective unit and that he did not believe that O'Loughlin and Leucthe were the ideal officers to oversee the changes.

(2) It was not necessary to transfer O'Loughlin to the detail unit. (id., # 4) In essence, O'Loughlin is arguing that pretext exists because she was not given the assignment in patrol to which Carter assigned Lt. Leucthe (and presumably because Lt. Leucthe was not assigned to the detail unit) This argument does not address the legitimate, non-discriminatory reasons Carter gave for making the assignments he did

---

[8] When an employee's performance is identified as a reason for an employer's action, the question is not whether the employee is actually performing below expectations, but whether the decision-maker believes she is. De La Cruz v. El Conquistador Resort And Country Club, 218 F.3d 1, 7 (1st Cir. 2000)(citations omitted); see Sekamate v. Newton Wellesley Hospital, 2002 U.S. Dist. LEXIS 18687 1, 34-35 (D. Mass. 2002)("It is the perception of the decision-maker, not the objective factual situation, that is relevant when maintaining a charge of pretext").

[9] It is undisputed that Carter was a new chief, with experience in police departments outside of the Authority. His expectations were apparently much different than Fleming's.

(including his belief that O'Loughlin was capable of succeeding in a new command, but that Lt. Leucthe was not).  (4) Fleming testified that Carter never told him that O'Loughlin was to be transferred, although Carter testified that he had discussed the move with Fleming (id., # #5-6)  This is a red herring, and is not evidence of sex discrimination or pretext.  Fleming also testified that Carter had not spoken with him about his decision to move Lt. Leucthe out of the detective unit.  Fleming received the same information (or lack thereof) regarding both the male and the female lieutenants.[10]  Fleming II, p. 273.

(5) Immediately after discussing the move with O'Loughlin, Carter allegedly said "look at the way she dresses" (id., p. 18, # 6-7)  This statement is subject to a motion to strike.  See Motion to Strike, p.7 (discussing ¶ 9).  For reasons discussed therein, this ambiguous, stray comment, even if made, does not suggest sex discrimination and does not indicate that Carter's reasons for reassigning O'Loughlin were pretexts for discrimination.  That Carter and Fleming testified differently about the timing of the comment and whether the two had discussed O'Loughlin's clothing is of no consequence.  Carter made clear that he considered it inappropriate that O'Loughlin, as a manager, dressed in work shoes and what appeared to be work clothes, even if Fleming saw nothing wrong with it.  See id.

(6) Fleming testified that Carter told him to guard O'Loughlin's office while she packed up to go to the detail unit (id., p. 18, # 8).  Carter testified that he would have had no reason to make the comment and that he did not make it. (Carter Aff., ¶ 22)  Standing

---

[10] While this is certainly a dispute of fact, it is not material because it is not evidence of sex discrimination, since the male and female lieutenants were treated exactly alike.  Similarly, it does not tend to show that the reasons put forth by Carter were not the real reasons for his action.

alone, this isolated incident is insufficient to demonstrate sex discrimination or pretext. Even Fleming, to whom the statement was allegedly made, testified that he had no reason to believe that Carter was discriminating against O'Loughlin on the basis of her sex when the statement was allegedly made. Fleming II, p. 281. (7) Carter allegedly told O'Loughlin that she could not investigate graffiti crime after her assignment to the detail unit. (Id., p. 19, # 9)  Once Carter transferred O'Loughlin to the detail unit, investigations were no longer part of her job. (Carter Aff., ¶ 33(c))  The remainder of this paragraph is indicative of the underlying theme of O'Loughlin's complaint – Carter was preventing her from doing what she wanted to do.[11]  However, she has not presented evidence of sex discrimination or pretext. In addition, O'Loughlin failed to address Carter's contention that <u>she</u> informed him that the patrol officers she had commanded in the vandal squad were proficient graffiti investigators. (SUF, ¶ 52)  (8) Fleming testified that Carter yelled at him for allowing O'Loughlin to sign and distribute a memo. (Opp., pp. 19-20, # 11)  This assertion is subject to a motion to strike. <u>See</u> Motion to Strike, p. 8, discussing ¶ 17)  The statement is too vague and unspecific to constitute credible evidence of sex discrimination or pretext.

**Additional Statements And Actions Fleming Attributes To Carter Are Not Evidence Of Pretext**

The following are subject to a motion to strike and, for the reasons stated in the motion, should not be considered by the Court. (1) Fleming's testimony about the statement Carter allegedly made "at some point between April 2005 and April 2006" that "vengeance will be mine". (Opp., p. 23, # 4)  <u>See</u> Motion to Strike, pp. 8-9 (discussing ¶

---

[11] Without evidence that Carter was motivated by a discriminatory animus to take the actions he did, these allegations or evidence that his reasons for acting as he did were not true, these claims must fail.

18)  [12] O'Loughlin has failed to point to any exception that would make this statement, which allegedly occurred at some unspecified time within a one year period, admissible. It should be disregarded.  Fleming's testimony regarding an alleged attempt to "catch" O'Loughlin in an act of misconduct should also be disregarded for the reasons indicated in defendants' Motion to Strike.  See Motion to Strike, pp. 9, discussing ¶ 18.

**Defendants Are Entitled To Summary Judgment On O'Loughlin's Claim That Her Demotion Was Based On Gender Discrimination Or Retaliation**

O'Loughlin again asks the Court to speculate with her about whether her suspension and demotion were discriminatory or retaliatory, rather than putting forth admissible evidence of discrimination or retaliation.  For example, she indicates:

> [t]he various facts tending to prove that the transfer to the Detail Unit constituted gender discrimination, is strong evidence that the decision to subject Lieutenant O'Loughlin to a double demotion approximately one year later, was either another instance of gender discrimination or constituted retaliation for the prior charges of discrimination.  (Opp., p. 23, # 1)

O'Loughlin has completely failed to put forth evidence sufficient to raise an inference that the reasons Carter gave for his actions were not his true motivations.  Long before Carter took any disciplinary action against any officer for conversations on the 1205 line, Carter issued his Plan of Action, which articulated his intent to punish harshly, among others, those individuals who engaged in "[i]nternal criticism offered secretly and without constructive basis" and officers who attempted to adhere to one standard of integrity while at work and another while off duty. (SUF, ¶¶ 38-39)  O'Loughlin's arguments that (1) she should not have been disciplined, and (2) that she should not have been disciplined as harshly as Fleming are without merit.  Carter initially intended to fire

---

[12]   O'Loughlin argues that the statement should not be excluded because of its "general indicia of reliability".  She contends that the statement is reliable because there is no reason to believe that Lieutenant Wheeler, who allegedly heard the statement and Fleming who was allegedly told about the statement, are biased or not truthful, is disingenuous.  Fleming and O'Loughlin are personal friends who have served together since 1983.  Fleming and O'Loughlin were both disciplined and demoted by Carter.  It would not be reasonable to conclude that Fleming is not biased, even if it could be presumed that he has accurately testified as to what he heard Wheeler say.  The statement is hearsay, and O'Loughlin has not pointed to any exception that would make it admissible.  There is no evidence in the record from which a determination on Lt. Wheeler's bias or credibility can be gauged.

both Fleming and O'Loughlin because of their actions, even though he considered O'Loughlin's actions much more serious than Fleming's.  (SUF, ¶¶ 87-88)   It was only <u>because</u> Fleming had been disciplined previously that he received the same punishment as O'Loughlin.  That Carter punished O'Loughlin, Fleming, and the remaining male patrol officers who were fired or suspended more harshly than had previous administrations, does not make his actions discriminatory or retaliatory (none of the male officers had filed complaints).  Here, where Carter treated everyone he thought violated the principles in his plan of action or the rules of the department harshly, across the board, this circuit has made clear that those decisions cannot be second-guessed by a court.[13]  Similarly, the decision of the arbitrator, exercising 20/20 hindsight, does not shed light on Carter's motivations at the time he meted out discipline to O'Loughlin and the other officers.

**Defendants Have Moved To Strike Additional Portions Of O'Loughlin's Opposition**

For the reasons indicated in their motion to strike, defendants request the Court to disregard the following: Fleming's testimony about allegedly being yelled at by Carter because O'Loughlin distributed a memo (discussion regarding ¶ 17); the suggestion that "service [of the present lawsuit] upon Chief Carter's wife occurred approximately three weeks before Nancy O'Loughlin was informed that she was being demoted two ranks  (¶ 22); Fleming's opinion that it was not easy being a female in policing (¶ 27); references to unnamed white, male, officers who filed a lawsuit because they allegedly resented O'Loughlin (¶ 28); any statements by Former Chief Thomas O'Loughlin about what Mac Daniel allegedly said to him (¶ 44); any statements by Former Chief Thomas O'Loughlin about what other officers allegedly said in a legal proceeding that is unrelated to the case at bar (¶ 45); and all references in O'Loughlin's affidavit related to the arbitration proceedings.

---

[13] <u>See</u> Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991)( a Court may not "sit as super personnel departments, assessing the merits or even the rationality of employers' non discriminatory business decisions.")(citations omitted); Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988) ("Courts do 'not sit as a super-personnel department that reexamines an entity's business decisions.' 'No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the law does] not interfere.'").

WHEREFORE, Defendants respectfully request the Court to grant their motion for summary judgment.

                                            Respectfully submitted,

DEFENDANT MASSACHUSETTS BAY TRANSPORTATION AUTHORITY AND JOSEPH CARTER
By their attorneys,

/s/ Joseph L. Edwards, Jr._____
Walter B. Prince, BBO# 406640
Joseph L. Edwards, Jr., BBO# 564288
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA  02109
(617) 456-8000

CERTIFICATE OF SERVICE

I, Joseph L. Edwards, Jr., hereby certify that I have served the foregoing document on all counsel of record by filing the same via the ECF system, this 16th day of October, 2006.

Joseph L. Edwards, Jr.