# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

C.A. No. 04-10933-JLT

─────────────────────────────

### NANCY O'LOUGHLIN
*Plaintiff*

v.

### MASSACHUSETTS BAY
### TRANSPORTATION AUTHORITY
### and
### JOSEPH CARTER
### and
### MICHAEL MULHERN
*Defendants*

─────────────────────────────

### RESPONSE OF PLAINTIFF NANCY O'LOUGHLIN TO REPLY BRIEF
### OF DEFENDANTS MASSACHUSETTS BAY TRANSPORTATION AUTHORITY
### AND JOSEPH CARTER

Plaintiff Nancy O'Loughlin hereby files this Response to the Reply Brief filed by Defendants Massachusetts Bay Transportation Authority and Joseph Carter to Plaintiff's Opposition to their Motion for Summary Judgment. This Response is filed pursuant to this Court's Order of October 5, 2006 allowing the parties to file Reply and Response Briefs in relation to the Motion for Summary Judgment pending before the Court.[1]

Almost all of the arguments raised by Defendants Massachusetts Bay Transportation Authority ("MBTA") and Joseph Carter ("Carter") have been adequately addressed in either Plaintiff's Opposition to the Motion for Summary Judgment of the MBTA and Carter or in Plaintiff's

---

[1] **Pursuant to the Court's Order of October 5, 2006, Reply Briefs were to be filed no later than October 13, 2006. Based upon a review of the docket in this action and the Certificate of Service appended to the Reply Brief, it is not clear whether Defendant's Reply Brief was filed in a timely manner. Specifically, the Docket appears to indicate that the Reply Brief was faxed to the Clerk's Office on October 13, 2006. However, the Certificate of Service appended to the Brief indicates that the Brief was served through the ECF System on October 16, 2006 (thus indicating that the Brief was filed by the ECF System on October 16, 2006).**

Opposition to the Motion to Strike filed by the MBTA and Carter. Those prior Briefs filed by Plaintiff are incorporated by reference herein. Accordingly, in this Response, Plaintiff will briefly reply to the arguments which are being rehashed by Defendants.

In summary, as is set forth in greater detail in Plaintiff's prior Briefs, the Motion for Summary Judgment must be denied, as there are genuine issues of material fact in dispute in this case, and additionally, as Plaintiff has set forth adequate evidence of pretext regarding her claims of discrimination and retaliation. Nothing which has been set forth by Defendants in either their Motion to Strike or in the current Reply Brief, changes the fact that the Motion for Summary Judgment must be denied, and this action must proceed to trial.

At their most basic, Plaintiff asserts that in 2003, she was a 20-year veteran of the MBTA Police Force holding the rank of Lieutenant. In late January, 2003, Defendant Carter became the new Chief of the MBTA Police Department. Almost immediately upon taking office, Chief Carter transferred Nancy O'Loughlin from her position as a Lieutenant of Detectives working in a specific unit, to a general position in the Detective Unit, which she did not desire. In August, 2003, Chief Carter involuntarily transferred Nancy O'Loughlin to be the Head of the "Detail Unit." The position as Head of the Detail Unit was viewed within the Department (as well as by Lieutenant O'Loughlin) as being a punishment assignment. Lieutenant O'Loughlin alleges that she was transferred to the Detail Unit position by Chief Carter in order to punish her, based upon gender discrimination against her by Chief Carter.

In October 2003, Lieutenant O'Loughlin filed Charges of Discrimination against Chief Carter and the MBTA based upon her involuntary transfer to the Detail Unit. On March 8, 2004, Lieutenant O'Loughlin was suspended by Chief Carter (along with a number of other officers) for allegedly making improper statements on recorded phone lines. In mid-August, 2004, Lieutenant O'Loughlin was given the unprecedented discipline of a double demotion, from Lieutenant down to the rank of Patrolman. Lieutenant O'Loughlin alleges that her suspension in March, 2004 was the result of both gender discrimination and retaliation against her by Chief Carter for having filed her Charge of Discrimination. Lieutenant O'Loughlin further alleges that her double demotion in August, 2004, was the result of gender discrimination against her, as well

as retaliation against her by Chief Carter for having removed her gender discrimination claims from the Massachusetts Commission Against Discrimination and having filed them with this Court.

It bears upon the facts of this case that after an extremely lengthy arbitration hearing and substantial briefing, in March, 2006, an arbitrator held that Lieutenant O'Loughlin had been improperly demoted, and she was ordered restored to her prior position of Lieutenant with full back pay and benefits.  It is also highly relevant that as of the date of filing this Brief, Lieutenant O'Loughlin has not been paid all of the benefits due to her under the arbitration award, and she has not been afforded placement in the type of Lieutenant position she would otherwise have held but for her demotion. [2]

Plaintiff has stated in detail in her Opposition to the Motion for Summary Judgment why two genuine issues of material fact prevent summary Judgment from being granted with regard to the transfer of Lieutenant O'Loughlin to the Detail Unit.  Specifically, Plaintiff has argued that the question of whether or not the position of Commander of the Detail Unit was viewed as a punishment assignment by the MBTA Police Department, and whether or not Chief Carter knew that the position was deemed a punishment assignment, are material facts in dispute in this action which prevent Summary Judgment.  Plaintiff has also argued that she has set forth adequate grounds upon which it can be determined that the reasons proffered by Chief Carter for transferring Nancy O'Loughlin to the Detail Unit were merely a pretext for discrimination.

With regard to the suspension of Lieutenant O'Loughlin with pay in March 2004, and her demotion from Lieutenant to Patrol Officer in August, 2004, Plaintiff O'Loughlin initially claims that she has set forth a prima facie case of retaliation due to the temporal relationship between her exercise of protected rights and suffering adverse actions.  Secondly, she asserts that the

---

[2] **These remaining aspects of her arbitration claim are still being litigated before the arbitrator.  It is Plaintiff's position that the MBTA is seeking to delay resolution of these final matters as long as possible, for improper reasons.**

supposedly valid reasons proffered by Defendants for those two adverse actions, are merely a pretext for discrimination.[3]

With regard to her claims of pretext, both as to the transfer to the Detail Unit, as well as the later suspension with pay and subsequent double demotion, Plaintiff notes that she is not required to prove at this point in time with absolute certainty, that these adverse actions were discriminatory. Rather, to the extent that Plaintiff can show that a reasonable fact finder could hold that the supposedly legitimate reasons advanced by Defendants for these actions were in fact false reasons, Plaintiff has adequately met her burden in order to enable the case to go forward. This outcome is based upon the case of Lipchitz v. Raytheon, 434 Mass. 493, 715 N.E.2d 360 (2001).

The teaching of Lipchitz v. Raytheon is that if a fact finder is persuaded that one or more of an employers proffered reasons for an action is false, the fact finder may (but need not) infer that the employer is covering up a discriminatory intent, motive or state of mind. Lipchitz, supra at 368. As the Lipchitz Court held: "…in an indirect evidence case, we permit the fact finder to infer discriminatory animus (and causation) from proof that the employer offered a false reason for the adverse employment decision." Lipchitz, supra at 368. Similarly, an employee is not required to disprove every single reason put forth by a Defendant, in order to have her case reach a jury. As the Lipchitz v. Raytheon Court held at 372:

> "We note, however, that to meet her burden of proof that discrimination was the determinative cause of the promotion decision, Lipchitz was not required to disprove every reason articulated by the Defendant or suggested in the evidence…she could meet her burden by persuading the fact finder that it was more likely than not that at least one reason was false…from such proof the fact

---

[3] **For whatever reason at page 2 of Defendant's Reply Brief where Defendants attempt to summarize the nature of Plaintiff's claims, they do not mention the fact that the Plaintiff has claimed in her Amended Complaint that her double demotion in August, 2004 was in retaliation not only for having filed discrimination charges with the MCAD, but also in retaliation for having filed this lawsuit. As was noted in the Opposition, Chief Carter was served with the Complaint in this action approximately one month prior to the discipline of Lieutenant O'Loughlin (her double demotion), being meted out.**

finder could infer that Raytheon's discriminatory animus was the determinative cause of the adverse employment decision."

Based upon the Lipchitz v. Raytheon decision, the question to be determined by this Court in deciding whether or not Plaintiff has set forth adequate evidence of pretext, is whether or not a reasonable fact finder would be justified in holding that at least one of the reasons proffered by Defendants for the adverse personnel actions to which they subjected Lieutenant O'Loughlin was false. That is clearly the case.

In relation to the transfer of Lieutenant O'Loughlin to the Detail Unit, Defendants make the contradictory claim that although this was done as Chief Carter was not pleased with her administrative skills in the Detective Unit, Chief Carter wanted to make use of Plaintiff's administrative skills in the Detail Unit. To the extent a reasonable fact finder could hold that Chief Carter's motive for transferring Lieutenant O'Loughlin to the Detail Unit was to punish her (for whatever reason) that would adequately establish that the reasons proffered for transferring Lieutenant O'Loughlin were false, and were therefore a pretext. It is very important to note that it is absolutely not necessary at this point in these proceedings, for Lieutenant O'Loughlin to prove that the pretext, was a pretext for discrimination. Rather, as that is a matter which a fact finder could (but would not be required to) find, the fact of there being a false reason and thus a pretext, is enough for this case to survive Summary Judgment as to the transfer to the Detail Unit.

In relation to both the March, 2004 suspension as well as the August, 2004 double demotion, Plaintiff has set forth in her Opposition to the Motion for Summary Judgment a variety of facts upon which it can be found that her suspension and even more clearly, the double demotion, were not for the reasons proffered by the Defendants, but rather, that these reasons were false and pretextual. Among the reasons set forth in the Opposition to the Motion for Summary Judgment were the severity of the discipline of Lieutenant O'Loughlin, the severity of her discipline (given her lack of disciplinary history) when compared with the discipline given to a male Lieutenant (who had a serious disciplinary record), Chief Carter's prior assignment of Lieutenant O'Loughlin to a punishment position, questions regarding Chief Carter's credibility,

various statements made by Chief Carter, the passage of only several days between the time that Chief Carter signed the MCAD Position Statement and the time he suspended Lieutenant O'Loughlin, the passage of only several weeks between the time that Chief Carter's wife was served with the Complaint in this action and the double demotion of Lieutenant O'Loughlin, and the behavior of Chief Carter toward Lieutenant O'Loughlin subsequent to her March, 2006 arbitration award reinstating her to the position of Lieutenant.

Once again, Plaintiff stresses that although this Court would have to find, as she argues, that at least one of the reasons proffered by Chief Carter for the suspension and the double demotion was false and thus a pretext, it is not necessary at this point in these proceedings for Lieutenant O'Loughlin to prove that the pretext was a pretext for discrimination. So long as it is found that one of the reasons proffered by the Defendants for the suspension and double demotion was false, this case must proceed to trial.

In their Brief, Defendants have tried to dissemble the facts of this case, and to view each of the actions in question (be they remarks made by Chief Carter, the testimony of the former Chief Flemming or related matters) in an isolated context. To the contrary, Plaintiff asserts that the Court must view all of these incidents as a whole, rather than dissecting them bit by bit. It is only by viewing the conduct of Defendants as a whole, that the pattern of unfair and discriminatory treatment may be seen.

For 20-years, Lieutenant O'Loughlin had advanced within the MBTA Police Department, becoming one of its highest ranking female officers. She had received no formal discipline, she was well-liked by her superiors as well as her subordinates and peers, she had received various awards and commendations including an award for valor and bravery in the line of duty, and she was respected both within the Police Department and in the community served by the MBTA Police Department as a whole.

As soon as Joseph Carter became Chief of the MBTA Police Department, Lieutenant O'Loughlin's career began to change directions. One of Chief Carter's first actions was to reassign Lieutenant O'Loughlin from a specialized job to a more general position. Within

another six months, Lieutenant O'Loughlin was placed in a punishment assignment (Commander of the Detail Unit, a position which all of her peers and subordinates knew was a position intended to humiliate her). Within another seven months, Lieutenant O'Loughlin was suspended, had her gun, badge and cruiser taken away from her, and was assigned to duty at her home for many months. Within another five months, Lieutenant O'Loughlin was subjected to a double demotion, going from being one of the highest ranking officers in the Department to being a Patrolman, with no administrative or supervisory responsibilities.

Not only was Lieutenant O'Loughlin humiliated in the eyes of the 200 or so other officers working for the MBTA Police Department, but her situation made front page news in the Boston Globe, to the point that false statements were made regarding her being subject to criminal charges. Lieutenant O'Loughlin was humiliated, defamed and made to undergo severe emotional pain and stress. Even after prevailing in her arbitration case and being reinstated to the position of Lieutenant in March of 2006, Lieutenant O'Loughlin was not given all of the back pay to which her award entitled her, she has not been given a meaningful assignment, she is not allowed to do work on or testify regarding graffiti investigations (in which she is an expert and in which other departments have desired her to work and testify), and she has been subjected to further humiliations.

All of this unfair, discriminatory and retaliatory conduct against Lieutenant O'Loughlin by Chief Carter from February, 2003 through the present, has been interspersed with the various negative remarks and slights which are referenced in greater detail in the Opposition to the Motion for Summary Judgment. **It is when all of this is viewed as a whole, that the pattern of Chief Carter's illegal and retaliatory actions against Lieutenant O'Loughlin come into clear focus.**

Some of the specific points set forth in the Reply Brief are responded to as follows:

1.    At page 2 of the Reply, Defendants do not mention Plaintiff's claim that the severity of her discipline in August, 2004, a double demotion, was in retaliation for both having filed Charges with the MCAD and additionally, having removed her claims

from the MCAD, having filed this action in Court and having served it upon Defendant Carter in July, 2004.

2.  At page 2 of the Reply, it is implied that Lieutenant O'Loughlin was treated the same way as a male Lieutenant, Lieutenant Leucthe, when she was moved from the Detective Unit to the Detail Unit. That is not correct. Lieutenant Leucthe was treated more favorably as he was not placed in a punishment assignment, and he was not "guarded" while moving out of his office.

3.  At page 3 of the Reply, Defendants assert that Chief Carter assigned Lieutenant O'Loughlin to command the Detail Unit as "he considered it an important position and thought she would be an effective Commander." This is directly contradicted by the statement at page 2 of the Reply Brief indicating that Chief Carter wanted to remove Lieutenant O'Loughlin from the Detective Unit (from which she was assigned to the Detail Unit) because he was critical of her work as an administrator and manager in the Detective Unit.

4.  Contrary to the statements at pages 4 and 5 of the Reply Brief, Plaintiff has indeed set forth genuine issues of material fact as to whether her transfer to the Detail Unit was discriminatory and has presented adequate facts proving that the articulated reasons for the transfer were indeed just a pretext.

5.  At pages 6 and 7 of the Reply Brief, Defendants go to great length to attack the weight to be given the testimony by former Chief Flemming regarding the assignment of Lieutenant O'Loughlin to the Detail Unit being a punishment assignment. Although Defendants are correct in asserting that the issue in this case is whether the decision maker (Chief Carter) believed he was assigning Lieutenant O'Loughlin to a punishment position, the inquiry does not end there. The fact that a long time veteran of the MBTA Police Department (indeed, the individual who had been the Chief immediately prior to Chief Carter taking office), held the opinion that this was a punishment position, that the assignment of Lieutenant O'Loughlin to the position was a punishment, that there was no reason to assign Lieutenant O'Loughlin to the position, that Flemming was stunned that Lieutenant O'Loughlin was transferred to this position, and that it was not necessary to assign Lieutenant O'Loughlin to the Detail Unit, all detract from the credibility of the claim that Chief Carter made this

transfer for legitimate non-discriminatory reasons. The contradictions in the testimony between Lieutenant Flemming and Chief Carter regarding discussions between the two as to the transfer of Lieutenant O'Loughlin, further detract from Chief Carter's credibility and further support the claim that the transfer was a punishment and a pretext for discrimination. It is not correct (as stated on page 7 of the Reply Brief), that Chief Carter's negative remark about the way Lieutenant O'Loughlin dressed, was either "ambiguous" or a "stray comment." When taken in context, it indicates his hostility toward Lieutenant O'Loughlin. Being a comment regarding her attire, it likely is gender related.

6. The argument at pages 7 and 8 of the Reply Brief that the dispute over whether Chief Carter told Lieutenant Flemming to guard Lieutenant O'Loughlin's office while she packed up to go to the Detail Unit, is an isolated incident or an insignificant matter, is incorrect. This is a procedure which was not applied to other officers, and specifically was not applied to Lieutenant Leucthe after he was informed of his transfer. Having a superior officer guard her office while Plaintiff packed up her belongings was humiliating, hostile and showed a great degree of dislike and distrust for Lieutenant O'Loughlin on the part of Chief Carter.

7. The argument at pages 9 and 10 in the Reply Brief that Lieutenant O'Loughlin deserved greater discipline than Lieutenant Flemming, simply ignores reality. Not only did Lieutenant Flemming have a disciplinary record at the time (whereas Lieutenant O'Loughlin did not), but Lieutenant Flemming had previously been the Chief of the Department. Surely, misconduct by a former Chief was a much more significant matter than misconduct by a Lieutenant. As was pointed out in the Opposition to the Motion for Summary Judgment, the Arbitrator hearing Lieutenant O'Loughlin's demotion case found it highly significant, and unusual that Lieutenant O'Loughlin and Lieutenant Flemming were given the same discipline.

CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Motion for Summary Judgment filed by Defendants MBTA and Carter be denied in its entirety.

Respectfully submitted,
NANCY O'LOUGHLIN
By her attorney,

/s/Mitchell J. Notis

_____
MITCHELL J. NOTIS, BBO# 374360
*Law Office of Mitchell J. Notis*
370 Washington Street
Brookline, MA 02445
Tel: 617-566-2700

CERTIFICATE OF SERVICE

I, Mitchell J. Notis, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to any non-registered participants as indicated in the Notice of Electronic Filing, this 26th day of October, 2006.

/s/Mitchell J. Notis

_____
MITCHELL J. NOTIS, BBO# 374360
Law Office of Mitchell J. Notis
370 Washington Street
Brookline, MA 02445
Tel: 617-566-2700