UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO:  04-10933-JLT

---

NANCY O'LOUGHLIN
Plaintiff

v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY, JOSEPH CARTER
And MICHAEL MULHERN
Defendants

---

PRE-TRIAL MEMORANDA OF PLAINTIFF
NANCY O'LOUGHLIN

In accordance with this Court's Order of March 13, 2007, Plaintiff Nancy O'Loughlin submits the following Pre-Trial Memoranda:

**1.     SUMMARY OF PLAINTIFF'S EVIDENCE**

By the summer of 2003, Nancy O'Loughlin was a Lieutenant with the MBTA Police Department who had over 20 years of service with the Force. Her distinguished career included the Hannah Award for Valor in the line of duty.  In August 2003 she was a nationally recognized expert in relation to graffiti crime.

In August of 2003, Chief Carter ordered Lieutenant O'Loughlin transferred from Commander of the Detective Unit to being Commander of the Detail Unit.  The Detail Unit, in addition to being a desk job dealing with the administration of departmental overtime, was well-known within the Department among both superior officers and patrolman as being a punishment assignment.  At the time he informed Nancy O'Loughlin of her transfer, Chief Carter also informed her that she would no longer be allowed to work on graffiti crime investigations.  The date he transferred Nancy O'Loughlin to the Detail Unit, was the first time in his eight months as Chief that Chief Carter had had any type of meeting or conversation with Nancy O'Loughlin.

Chief Carter knew at the time that the Detail Unit was viewed within the MBTA as a punishment assignment, but Chief Carter did not inform his Deputy, former Chief William Flemming of his intention to transfer Nancy O'Loughlin to the Detail Unit.  Immediately after making the transfer Chief Carter made negative comments about the way Nancy O'Loughlin dressed.  Chief Carter assigned Deputy Flemming to guard Nancy O'Loughlin's office and watch her while she was

1

emptying out her office and the transfer was not necessary. Chief Carter has also expressed animus against Nancy O'Loughlin. A male Lieutenant who was transferred at the same time was not transferred to a punishment assignment, and did not have anyone guard his office while he was moving his effects.

As a result of her transfer to the Detail Unit, Nancy O'Loughlin filed a Charge of gender discrimination with the MCAD in October 2003. For a variety of reasons, the MBTA and Chief Carter did not file their Position Statement in response to the Charge until March 8, 2004. Several days before that, specifically March 4, 2004, Chief Carter had filled out a sworn Affirmation attesting to the facts set forth in the Position Statement.

Several days after Chief Carter signed his Affirmation and the same day the MBTA filed its Answer in the discrimination case, Lieutenant O'Loughlin was relieved of duty with pay and assigned to duty at her home, and her gun, badge, I.D. card and cruiser were taken away from her. Lieutenant O'Loughlin was informed that the reason she was being relieved of duty with pay was the fact that the MBTA had obtained tape recorded conversations of phone calls she was involved in with other MBTA Police Department employees, in which she and other officers allegedly made derogatory statements about the Chief of Police and members of the Command staff. In the course of Lieutenant O'Loughlin being informed that she was being relieved of duty, several SOT (Special Operations Team) Officers were stationed outside the office of the Chief of Police, close to where Lieutenant O'Loughlin was attending her meeting, and two other were standing outside. As a result of this investigation, a number of other officers were either suspended or terminated. At the same time that Lieutenant O'Loughlin was suspended, former Chief and Deputy Chief (at the time Lieutenant) William Flemming was also suspended, also for supposedly making remarks on the tape-recorded lines.

On March 11, 2004, an article appeared in the Boston Globe with a heading "T-Police Officer Suspended in Probe." The article discussed certain allegations made against Lieutenant O'Loughlin, and falsely stated in relation to Lieutenant O'Loughlin that the allegations could lead to criminal charges against her. The article falsely implied that the allegations against Lieutenant O'Loughlin were of a criminal nature. The article also stated that an official at the MBTA stated to the Boston Globe, the reporter writing the story, that one of the four officers mentioned in the article was Lieutenant O'Loughlin. Lieutenant O'Loughlin was the only MBTA Police Officer involved in the disciplinary proceedings whose name was released by the MBTA to the Boston Globe and the only officer named in the story.

The MBTA Official who spoke with the Boston Globe and who released Lieutenant O'Loughlin's name to the Boston Globe Reporter was MBTA General Manager Michael Mulhern. It was Mr. Mulhern and/or his assistant MBTA Spokesperson Joseph Pesatauro who falsely led the Boston Globe Reporter to believe and to write in his story that the allegations against Lieutenant O'Loughlin were of a criminal nature, and could lead to criminal charges against her.

In the late spring of 2004, the MBTA Police Department conducted an internal disciplinary hearing regarding the allegations against Lieutenant O'Loughlin and the other officers involved in the recorded line inquiry. The hearing officer involved in investigating Lieutenant

2

O'Loughlin's discipline made Findings of Fact in July, 2004. Although the Hearing Officer found that Lieutenant O'Loughlin had made negative statements about Chief Carter, the Hearing Officer did not make any recommendations regarding discipline.

On July 27, 2004, this lawsuit naming Chief Carter was served upon Chief Carter, service being made upon Chief Carter's wife at his home in Martha's Vineyard. Twenty-three days after service of this lawsuit was made upon Chief Carter's wife, on August 19, 2004, Chief Carter announced his disciplinary decision regarding Lieutenant O'Loughlin. Lieutenant O'Loughlin was informed on or about August 19, 2004, that as a result of the Findings of the Hearing Officer, Chief Carter had decided to demote her two ranks to the rank of patrolman.

From September of 2004 through approximately March of 2006, Lieutenant O'Loughlin worked as a Patrolman for the MBTA Police Department.

Lieutenant O'Loughlin's Labor Union filed a Grievance over her double demotion to the rank of Patrolman and eventually (over a number of hearing sessions arbitration was conducted) Lieutenant O'Loughlin's demotion was overturned in a Decision issued in March, 2006. Among other things, the Arbitrator found the following:

> "…despite employer's insistence that the penalty is valid, there is no coherent basis for the severity of the penalty, the Department disregarded all of O'Loughlin's prior service record and did not consider whether a lesser penalty might correct the shortcomings in her performance....the employer did not have just cause to demote Ms. O'Loughlin. Even with the evidence seen in the best light, and with all deference to the unique and essential role that law enforcement plays in today's troubled world, the evidence properly weighed does not support the discipline imposed here."

The Arbitrator also mentioned the discipline imposed on a male Lieutenant, former Chief Flemming. He found the following:

> "…the employer struggles to distinguish the Flemming arbitration and the case at hand, I find the reasoning of the Arbitrator in that case instructive…. The substance of Flemmings conversations with McKay touched on some of the same topics…In at least one case, Lieutenant Flemmings language was as or more offensive than O'Loughlin's… It is also noteworthy that in contrast to O'Loughlin, Flemming had been subject to progressive discipline (a demotion and a suspension) prior to the recent suspension and thus would have arguably warranted more severe discipline than O'Loughlin."

Subsequent to the Arbitration award, the MBTA eventually did reinstate Nancy O'Loughlin to the position of Lieutenant, but is still litigating with her the amount of back pay to which she is entitled, has not afforded Nancy O'Loughlin all of the opportunities for advancement she would have had if not for her demotion, and has assigned her to insignificant duties, all in a further attempt to discriminate or retaliate against her.

**2.     ESTABLISHED FACTS**

A.  Nancy O'Loughlin began working for the Authority's Transit Police Department in 1983.

B. In July 2002, Thomas O'Loughlin assigned Nancy O'Loughlin to command the detective unit on the day shift.  He also assigned her to conduct graffiti investigations when they arose.

C. In August, 2003, Nancy O'Loughlin was a Lieutenant with the department.

D. In August 2003, Carter assigned O'Loughlin to command the department's Detail Unit.

E. Nancy O'Loughlin filed an MCAD Charge regarding her transfer to the Detail Unit on October 2003, alleging that her transfer was based upon gender discrimination.

F. On March 8, 2004, Lieutenant O'Loughlin was relieved of her badge and weapon and assigned to duty at home.

G. On March 8, 2004, the Authority filed its Position Statement in response to Lieutenant O'Loughlin's Charge of Gender Discrimination.

H. Chief Carter signed the Affirmation attached to that Position Statement on March 4, 2004.

I. On March 11, 2004, an article appeared in the Boston Globe regarding Nancy O'Loughlin's suspension and the suspension of several male officers.

J. On May 11, 2004, Nancy O'Loughlin filed this lawsuit, claiming that her transfer to the Detail Unit was based on illegal gender discrimination, and that her suspension was based upon illegal retaliation as well as gender discrimination.

K. This lawsuit was served on Chief Carter's wife, at the Carters' residence in Martha's Vineyard on July 27, 2007.

L. Nancy O'Loughlin was entitled to a hearing to determine whether just cause existed to discipline her because of statements she made to subordinate police officers on a tape recorded department telephone line.

M. At the hearing, Nancy O'Loughlin was represented by counsel but she did not testify.

N. The hearing officer issued a written decision in which he found that just cause existed to discipline Nancy O'Loughlin, but he made no recommendations as to discipline.

O. On August 19, 2004, Chief Carter disciplined Nancy O'Loughlin, by demoting her two ranks to the rank of patrol officer.

P. Lieutenant William Fleming was similarly demoted two ranks to the rank of patrol officer for statements he made on the recorded telephone line after a hearing and a just cause finding.

Q. Lieutenant O'Loughlin contested her demotion through the grievance and arbitration process available to her.

R. In March 2006, an arbitrator determined that just cause did not exist for the demotion. He ordered Nancy O'Loughlin reinstated to the position of Lieutenant with full back pay.

S. Lieutenant Fleming also grieved his demotion and it was overturned by a second arbitrator. He was also reinstated with back pay.

**3.     CONTESTED ISSUES OF FACT**
- A. In 2003, was the position of Head of the Detail Unit with the MBTA Police Department a punishment position.
- B. When assigning Nancy O'Loughlin to be Head of the Detail Unit did Chief Carter know that the position as Head of the Detail Unit was a punishment position.
- C. Did Chief Carter discuss with Deputy Chief Flemming the fact that the Detail Unit was considered a punishment position or that he (Chief Carter) intended to transfer Nancy O'Loughlin into that position.
- D. Was Nancy O'Loughlin transferred into the Detail Unit by Chief Carter as punishment.
- E. In deciding to subject Nancy O'Loughlin to a double demotion in August, 2004, was Chief Carter influenced in any way by a desire to retaliate against Nancy O'Loughlin, and was Nancy O'Loughlin treated differently than were similarly situated male employees or other employees who had not filed Charges of Discrimination.
- F. Did Chief Carter make negative remarks about Nancy O'Loughlin.
- G. Did Chief Carter treat Nancy O'Loughlin differently than similarly situated employees in any way.

**4.  JURISDICTIONAL QUESTIONS**

Plaintiff does not believe that there are any jurisdictional questions before the Court.

**5.  QUESTIONS RAISED BY PENDING MOTIONS**

- A. <u>Defendant's Motion to Present Expert Testimony.</u> Defendants have filed a Motion to present expert testimony discussing the nature of the "chain of command" in the MBTA Police Department and the supposed fact that the conduct for which Nancy O'Loughlin was allegedly disciplined in March, 2004 had a negative impact on the Department. Plaintiff has opposed the use of this expert testimony as the expert's opinion and qualifications were presented in an untimely fashion, Plaintiff will not have an adequate amount of time to either depose this witness or to investigate his qualifications, and finally, Plaintiff asserts that the testimony of this expert witness is

5

        not necessary, and is being proffered solely as a tangential means of attacking the arbitration decision by which Nancy O'Loughlin was reinstated to her position.

- B. <u>Deposition of Nancy O'Loughlin's Priest.</u> Defendants have filed a Motion to take the deposition of Nancy O'Loughlin's priest. Plaintiff does not oppose this Motion.
- C. <u>Presence of Chief Carter at Trial.</u> Defendants' have filed a Motion that Defendant Chief Carter be excused from attending the trial of this action until he is called to testify by Defendants due to his commitment to attend an International Chief of Police Conference in Madrid Spain. Plaintiff will not be opposing that Motion. However, Plaintiff notes that in order to bring to the attention of the Court during argument of the anticipated Motion for Directed Verdict certain conflicts between the testimony of Chief Carter and former Chief Flemming, Plaintiff will be making use of Chief Carter's deposition testimony.
- D. <u>Motion in Limine regarding Arbitration Award and Fact of Award.</u> The Plaintiff has filed a Motion in Limine regarding the arbitration award reinstating Lieutenant O'Loughlin to her position with full back pay. As is set forth in the Motion, Plaintiff asserts that based upon the award, the issue of whether there was just cause to demote Lieutenant O'Loughlin, and whether there was a legitimate business reason to demote Lieutenant O'Loughlin has been decided, and Defendants are collaterally estopped from either attacking that decision or from claiming that there was a legitimate business reason for the demotion. Accordingly, Plaintiff also argues that based upon the collateral estoppel effect of the arbitration decision, it has been conclusively established in this case that the reason advanced by Defendants for Lieutenant O'Loughlin's demotion is a pretext. Plaintiff seeks to be able to mention that and related matters to the jury during her opening as well as closing, and to have the Court inform the jury of related matters. Plaintiff's position is that the only issue before the jury regarding the demotion is whether the pretextual reason for Plaintiff's demotion was based on discrimination or retaliation. Defendants have filed a motion to preclude any use of the arbitration award.
- E. <u>Motion in Limine Regarding Tape Recorded Conversations.</u> Plaintiff seeks to preclude Defendants from playing to the jury tape recorded conversations of Plaintiff.
- F. <u>Motion in Limine Regarding Post Arbitration Conduct.</u> Plaintiff seeks to introduce into evidence and to discuss during her opening the conduct of Defendants to her subsequent to the arbitration award which she believes is further evidence of discrimination and retaliation.

## 6. ISSUES OF LAW

- A. <u>Arbitration Award.</u> As is set forth above in response to Section 5, Plaintiff asserts that she should be able to refer to, quote from and introduce as evidence the Arbitration Award in her favor, and that there should be a ruling from this Court (which can be referred to in Opening and otherwise by counsel) that Defendant is not allowed to contest the validity of the Award, Defendant is not allowed to claim that there is a legitimate reason for the demotion of the Plaintiff and that it has been established that the demotion of Plaintiff was based on a pretext.

    B.    <u>Treatment of Plaintiff subsequent to Arbitration Award.</u>  Plaintiff asserts that her treatment by Defendants after the Arbitration Award ordering her reinstated is further evidence of her being discriminated against and retaliated against by Defendants and she should be allowed to introduce evidence of such activities.

## 7.  REQUESTED AMENDMENTS TO THE PLEADINGS

Plaintiff does not request any amendments to the pleadings.

## 8.  ADDITIONAL MATTERS

Plaintiff has recently learned that Defendant intends to subpoena Chief Tom O'Loughlin to testify at the trial of this matter.  Plaintiff anticipates that in the course of examining Chief O'Loughlin (or cross examining him, should he be called by Plaintiff as she anticipates), Defendants will elicit testimony from Chief O'Loughlin that he is also currently involved in litigation with the MBTA and Mr. Mulhern.  Plaintiff does not object to such examination questions.  However, Plaintiff anticipates that Defendants will also try to bring to the attention of the jury that Chief O'Loughlin is represented in that litigation by the same attorney as Lieutenant O'Loughlin, the undersigned counsel.  Such questioning must not be allowed, as the probative value of such impeachment testimony, if any, is greatly outweighed by the prejudice such testimony would have for Plaintiff.

## 9.  LENGTH OF TRIAL

Plaintiff anticipates that it will take 5 to 6 days to present the testimony in this action.

## 10. WITNESSES

| Plaintiff's Witnesses: | Time Needed for Direct Exam: |
|---|---|
| Nancy O'Loughlin | 2.5 hours |
| Chief Carter | 1.0 hour |
| Deputy Flemming | 1.5 hours |
| Deputy Martino | 0.5 hours |
| Lisa Riccobene | 0.5 hours |
| Chief Tom O'Loughlin | 1.0 hour |
| Frank O'Loughlin | 0.5 hours |
| Michael Mulhern | 0.5 hours |
| Mac Daniel | 0.5 hours |
| Bill Kelley | 0.5 hours |
| Robert McKay | 0.5 hours |
| Bob Powers | 0.5 hours |
| Lieutenant Fredericks | 0.5 hours |

Plaintiff states that between the date of filing this Memorandum and the time of trial she will determining with certainty whether or not she will be calling as witnesses Mr. Martino, Mr. Kelley, Mr. McKay, Mr. Powers, and Mr. Fredericks.

## 11. PROPOSED EXHIBITS

1. Chief Carter's March 4, 2004 MCAD Position Statement Affirmation
2. Boston Globe Article of March 11, 2004 titled "T Officers Suspended in Probe."
3. Return of Service regarding service of the Complaint in this action on Defendant Carter.
4. Notice of Reduction in Rank dated August 19, 2004.
5. "Demotion of Lieutenant O'Loughlin" to be read at roll calls dated August 20, 2004
6. MBTA Police Department Manual Chapter 245, General Order No. 2006-1, regarding Critical Incident Stress Management.
7. Arbitration award reinstating Lieutenant O'Loughlin.

## 12. MOTIONS IN LIMINE

Plaintiff has filed three Motions in Limine in this action. The first Motion in Limine relates to the use of the Arbitration Award in this case. The second Motion in Limine relates to the use by Defendants of the tape-recorded conversations for which Lieutenant O'Loughlin was supposedly disciplined. The third Motion in Limine relates to the conduct of Defendants toward Plaintiff after the issuance of the arbitration award reinstating her to her position.

NANCY O'LOUGHLIN
By her Attorney,

/s/ Mitchell J. Notis

_____
Mitchell J. Notis, BBO #374360
LAW OFFICE OF MITCHELL J. NOTIS
370 Washington Street
Brookline, MA 02445
Tel.: (617) 566-2700

CERTIFICATE OF SERVICE

    I, Mitchell J. Notis, hereby certify that a true copy of the foregoing document was served upon the attorney of record for each party to this action by electronic means using the Court's Electronic Case Filing System, on May 1, 2007

    /s/Mitchell J. Notis

_____
MITCHELL J. NOTIS, BBO# 374360