UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NANCY O'LOUGHLIN,<br>Plaintiff, | ) ) ) ) | |
| v. | ) ) | C.A. No. 04-10933 JLT |
| MASSACHUSETTS BAY<br>TRANSPORTATION AUTHORITY,<br>JOSEPH CARTER, and MICHAEL<br>MULHERN,<br>Defendants. | ) ) ) ) ) ) | |

**MOTION IN LIMINE OF DEFENDANTS MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY AND JOSEPH CARTER TO EXCLUDE
EVIDENCE OF OTHER CLAIMS, AND MEMORANDUM IN SUPPORT**

Defendants Massachusetts Bay Transportation Authority ("MBTA") and Joseph Carter
seek an order limiting evidence of claims of discrimination and retaliation by other current and
former employees of the MBTA. Such evidence should be limited to prevent unfair prejudice, to
minimize jury confusion, to maximize judicial efficiency, and to minimize the necessity of
conducting a mini-trial on claims of third parties. Specifically, the Defendants seek to limit
evidence of resolved or pending claims by other current and former employees of the MBTA,
including but not limited to, the following likely witnesses at trial:

1.     John Martino;

2.     Dolores Ford-Murphy;

3.     Thomas McCarthy;

4.     Thomas O'Loughlin; and

5.     Lisa Riccobene.

For reasons that follow, the Defendants ask that this motion be granted.

## BACKGROUND

Plaintiff Nancy O'Loughlin ("O'Loughlin") joined the Authority's Transit Police Department (the "department") in 1983. She is currently a lieutenant. Carter, an African American man, has been chief of the department since January 2003. Plaintiff's claims primarily revolve around four events: (1) her August 2003 transfer from the Command of the Detective Unit to Command of the Detail Unit, (2) her March 2004 suspension, with pay, during an investigation of inappropriate conversations she had on a department–recorded telephone line, (3) her July 2004 demotion from lieutenant to patrol officer as a result of the inappropriate conversations she had on the recorded line, and (4) an article that appeared in two Boston newspapers about the recorded-line investigation. Based on these events, plaintiff asserts a number of gender discrimination, retaliation, civil rights and defamation claims.

Defendants expect O'Loughlin to call several witnesses, whose own claims of discrimination or retaliation by the MBTA are either resolved or still pending, in an effort to smear the MBTA with the broad brush of discrimination or retaliation. In addition, defendant is likely to call a number of current and former MBTA police officers, some of whom previously brought discrimination or retaliation claims against the MBTA. It is expected that plaintiff, on cross-examination of these defense witnesses, will try to elicit testimony from them about their employment claims against the MBTA. The following proposed trial witnesses have previously pursued or are currently pursuing a hodge-podge of employment claims against the MBTA:

1.     John Martino;

2.     Dolores Ford-Murphy;

3.     Thomas McCarthy;

4.     Thomas O'Loughlin; and

5.     Lisa Riccobene.

## ARGUMENT

**EVIDENCE OF CLAIMS OF DISCRIMINATION AND RETALIATION BY OTHER CURRENT AND FORMER EMPLOYEES OF THE MBTA SHOULD BE LIMITED TO PREVENT UNFAIR PREJUDICE, TO MINIMIZE JURY CONFUSION, TO MAXIMIZE JUDICIAL EFFICIENCY, AND TO MINIMIZE THE NECESSITY OF CONDUCTING A MINI-TRIAL ON EACH CLAIM.**

Fed R. Evid. 403 serves to exclude evidence, despite its relevance, when the probative value of the evidence is substantially outweighed by considerations of confusion of the issues, undue delay, waste of time, misleading of the jury and the danger of unfair prejudice.[1] For example, in *Moorhouse v. Boeing Co.,*[2] the trial court denied plaintiff's motion for new trial, which was based on the exclusion of testimony of five witnesses, each of whom had pending lawsuits against the defendant-employer. This decision, affirmed on appeal by the Third Circuit, crystallizes the concerns at issue in this motion. The court held that, had the witnesses testified,

> Defendant then would have been placed in the position of presenting the justification for each witnesses' layoff, or of allowing the testimony to stand unrebutted [which] would have had the obvious prejudicial impact on the jury's consideration of [the plaintiff's] case…. Defendants would have been forced, in effect, to try all six cases together with the attendant confusion and prejudice inherent in that situation…. In the Court's view, even the strongest jury instruction could not have dulled the impact of the parade of witnesses…"[3]

The Eleventh Circuit echoed this reasoning in *McWhorter v. City of Birmingham,*[4] in which the plaintiff police officer filed a Section 1983 action against the police chief and the city. Plaintiff, who alleged he was terminated in violation of his First Amendment rights for speaking

---

[1] See Fed. R. Evid. 403; ELLIS, E.T., PAPIANOU, J. G., BICKHAM, J. V., ANALYSIS OF THE MOST COMMON EVIDENTIARY ISSUES IN EMPLOYMENT CASES, SF03 ALI-ABA 435, 455 (July 27, 2000).
[2] 501 F.Supp. 390 (E.D.Pa.), *aff'd without op.*, 639 F.2d 774 (3d Cir.1980).
[3] *Id.* at 393 & n.4.
[4] 906 F.2d 674 (11th Cir. 1990).

3

to the media about the chief's abuse of a prisoner, proffered the testimony of other police officers who allegedly were harassed and intimidated by the chief in the same and other circumstances.[5] The district court excluded this testimony under Fed.R.Evid. 403 because its probative value was outweighed by its tendency to confuse and mislead the jurors.[6] The Court of Appeals affirmed the ruling, concluding that the "admission of testimony relating to other police officers' grievances against [the chief] could have resulted in a series of mini-trials centering on the employment history of each officer."[7]

In *Franco-Rivera v. Chairman of Bd. of Directors of Federal Deposit Ins. Corp.*,[8] the United States District Court for the District of Puerto Rico relied on *Moorhouse, supra,* and *Schrand v. Federal Pacific Electric Co.*[9] in excluding the testimony of plaintiff's co-workers regarding their own complaints of discrimination against the employer. The court ruled that such complaints were irrelevant "because they would not serve to support [plaintiff's] own individual claims."[10]

As the *Schrand* court noted, especially where plaintiff has no direct evidence of discrimination, this type of "me too" testimony in employment-discrimination cases can provide an unfair emotional element that may otherwise be lacking in the plaintiff's case-in-chief.[11]

For the reasons articulated in *Moorhouse, supra,* evidence of other claims against the MBTA by the above-listed current or former employees or other persons, should be excluded from the trial. Additional information about the above-listed witnesses' claims and the reasons for excluding evidence about their claims is set forth below.

---

[5] *Id.* at 678
[6] *Id.*
[7] *Id.* at 679.
[8] 751 F. Supp. 13 (D.P.R. 1990).
[9] 851 F.2d 152 (6th Cir. 1988).
[10] *Franco-Rivera,* 751 F. Supp. at 14 n.1.
[11] *Schrand,* 851 F.2d at 156.

### A.    John Martino.

Current MBTA Deputy Chief John Martino originally filed a claim of retaliation against the MBTA with the MCAD in September 1997. The MCAD found lack of probable cause and dismissed the case. Martino filed a civil action in Superior Court in January 2001, which the MBTA removed to federal court in Boston.

Martino's retaliation claim consisted of three separate claims: (1) he claimed that he was denied a superintendent position by former Chief John O'Donovan in July 1997, (2) he claimed that he was demoted by new Chief Thomas O'Loughlin in a reorganization in October 1997, and (3) he claimed that he was transferred to an inferior position by Chief O'Loughlin in January 1999, when he was reassigned to command the Detail Unit. Martino alleged that the denial of the superintendent position was retaliation by Chief O'Donovan for a deposition that Martino gave in September 1996 in the Dolores Ford-Murphy case (see below). Martino alleged that the October 1997 demotion and the January 1999 transfer were retaliation by Chief O'Loughlin for his Ford-Murphy deposition and/or for his September 22, 1997 filing of an MCAD charge of retaliation (and his later amendment to that charge).

In 2002, Martino's retaliation claims proceeded to a jury trial presided over by Judge Young. The jury's verdict was that there had been no retaliation against Martino because of his deposition in the Ford-Murphy case. The jury did find that Martino was retaliated against because of his own MCAD complaint, which he initiated on September 22, 1997, and later amended. The jury awarded Martino $50,000 in damages.

The jury's verdict was a rejection of Martino's claim relating to the denial of the superintendent position, as Martino's only alleged protected activity, which occurred before the denial of the superintendent's position, was his deposition in the Ford-Murphy case.

It is unclear whether the jury found that Martino was retaliated against by virtue of his October 1997 demotion or his January 1999 reassignment to command of the Detail Unit. The jury verdict questionnaire did not require the jury to say which alleged adverse action it found to be retaliatory. See Affidavit of Daniel Tarlow, attached hereto as Exhibit A.

O'Loughlin is very likely to try to get into evidence that the jury's verdict in the Martino case was based on his reassignment to the Detail Unit in January 1999. However, as shown above, it impossible to know whether the jury in that case found that Martino's assignment to the Detail Unit was retaliatory. Therefore, the purpose for which O'Loughlin would presumably seek to introduce evidence about the Martino case—that it helps show that the Detail Unit is a "punishment assignment"—is simply unknowable from the verdict. Therefore, this evidence should be excluded.

More generally, to allow evidence and testimony about Martino's lawsuit or verdict would unduly prejudice the Defendants, and confuse the jurors. If such evidence is allowed, the Defendants would be in the position of having to rebut each of Martino's claims or risk prejudice. Essentially, this would mean the Defendants would have to retry the Martino case in defending against Nancy O'Loughlin's claims. This would take the court and jury far afield from O'Loughlin's case, and would result in confusion and delay.

### B.    Dolores Ford-Murphy.

Current MBTA Deputy Chief Dolores Ford-Murphy filed a charge of gender discrimination and retaliation against both the MBTA and former Chief John O'Donovan at the MCAD on March 7, 1996. After withdrawing her MCAD complaint on June 18, 1996, Ford-Murphy filed a complaint in Suffolk Superior Court, which also included a claim of retaliation. Her allegations are factually cumbersome: her Amended Complaint has more than 76

paragraphs. A copy of Ford-Murphy's Complaint is attached hereto as Exhibit B. To bolster her complaint that her treatment was based on gender, Ford-Murphy drew on her perceptions of how other women were allegedly treated by the MBTA.

Plaintiff's case is about whether she suffered gender discrimination and retaliation. It is not about what Ford-Murphy says happened to her or others. To allow evidence and testimony about Ford-Murphy's lawsuit, particularly where Ford-Murphy's claims are factually unwieldy and involve different decision-makers (former Chief O'Donovan left the MBTA almost ten years ago) would result in jury confusion in trying to discern who did what to whom and for what reason. If such evidence is allowed, the Defendants would be in the position of having to rebut each claim or risk prejudice. Essentially, this would mean the Defendants would have to try the Ford-Murphy case as part of their defense of O'Loughlin's claims. This would inevitably result in confusion and delay.

Defendants also seek to exclude evidence that Ford-Murphy settled her lawsuit against the MBTA. To admit evidence of the settlement would contravene the policy considerations underlying the prohibition embodied in Fed. R. Evid. 408, which precludes the introduction of evidence of compromise and settlement, and explicitly states that such evidence is not admissible to prove liability.[12] Other Circuits have held that evidence of a compromise in another lawsuit is similarly precluded under Fed. R. Evid. 408.[13]

If evidence of the settlement is allowed, the MBTA will be unfairly prejudiced because the jurors will likely conclude that the settlement is an admission of liability. As this court knows, there can be myriad reasons for settling a case that do not necessarily reflect on the

_____

[12] Fed. R. Evid. 408 provides that evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim

merits of the case. Moreover, the terms of a settlement agreement have traditionally been

considered a private matter between parties (especially where, as here, the parties to the

agreement did not file the settlement agreement or otherwise disclose its terms to the trial

court).[14]

### C.    Thomas McCarthy.

In July 1997, now retired MBTA Police Lt. Thomas McCarthy filed a complaint with the

MCAD in which he claimed he faced retaliation based on his deposition testimony in the Ford-

Murphy case (see above), and another gender discrimination case, and his participation in two

other MCAD charges brought by other female employees of the MBTA. A copy of McCarthy's

MCAD Charge is attached hereto as Exhibit C. The MCAD found probable cause in August

2000.

McCarthy (along with Martino, see above) served on the command staff of the former

chief of the MBTA Police, John O'Donovan. McCarthy and Martino both claim that they were

subjected to retaliation as a result of testimony they gave in their respective depositions in the

Ford-Murphy lawsuit. Both Martino and McCarthy claimed that this retaliation was manifested

in their respective demotions on October 20, 1997.

McCarthy was deposed in Martino's case in October 2001. In his deposition, he

catalogued numerous examples of alleged retaliation. In addition to the 1997 demotion, he

claims he was excluded from staff meetings, required to come in early, ordered to have no

contact with former Chief O'Donovan, subjected to numerous "outrageous" investigations,

assigned to demeaning posts, censured for coming back to headquarters to use the facilities, and

---

which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim
or its amount.
[13] E.g., *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 687 F.2d 563, 569 (2nd Cir. 1982).

censured for failing to greet O'Donovan. As an example of this alleged retaliation, McCarthy cited an investigation done in connection with his failure to supervise two officers under his command who were found to be playing video games when they were supposed to be on patrol. McCarthy also claimed retaliation for his discipline related to his failure to report two train-pedestrian fatalities.

If McCarthy is allowed to testify about the whole panoply of his allegations it would result in having to try the entire McCarthy case as part of the trial of O'Loughlin's claims.

Finally, McCarthy's case was resolved by a confidential settlement in early 2003. For the reasons stated above with respect to Dolores Ford-Murphy's case, evidence about the settlement of the McCarthy case should also be excluded.

### D.    Thomas O'Loughlin.

Former Chief O'Loughlin filed retaliation charges with the MCAD in April 2003, but later withdrew them so he could sue in court. He filed a suit against the MBTA, Deputy Chief Anne McCall, and General Manager Michael Mulhern in February 2004, claiming he was wrongly prevented from teaching a course on Sudden Infant Death Syndrome ("SIDS") at the MBTA Police Academy in retaliation for his intent to testify as a witness in a discrimination lawsuit against the MBTA by Officer Helder Peixoto. A copy of Thomas O'Loughlin's Complaint is attached hereto as Exhibit D. Former Chief O'Loughlin's case is now pending in the United States District Court for the District of Massachusetts (C.A. No. 04-10257).

If former Chief O'Loughlin is allowed to testify about his pending allegations, it would force the MBTA to try his case as part of the trial of Nancy O'Loughlin's claims.

---

[14] *In re Franklin National Bank Securities Litig.*, 92 F.R.D. 468, 472 (EDNY 1981), *aff'd sub nom., FDIC v. Ernst & Ernst*, 677 F.2d 230 (2nd Cir. 1982).

### E.    Lisa Riccobene.

Riccobene currently has a complaint pending in this court (C.A. No. 04-10256) against the MBTA and Lt. Anne McCall alleging retaliation, gender discrimination, and discrimination based on ethnicity (Italian-American). A copy of Riccobene's Complaint is attached hereto as Exhibit E.

Riccobene began working for the MBTA Police Department on March 26, 2001 as a civilian Executive Assistant to former Police Chief Thomas O'Loughlin. After Chief O'Loughlin resigned from the MBTA in July 2002, Riccobene did not return to work. She was terminated on November 20, 2002 as a result of a layoff. Riccobene claims that the real reason was her ethnic origin (Italian), sex (female), and retaliation for providing information to support a coworker's claims of national origin (Portuguese) discrimination and retaliation.

If Riccobene is allowed to testify about her allegations it would result in having to try the entire Riccobene case as part of the trial of Nancy O'Loughlin's claims. This would take the court and jury far astray from O'Loughlin's case, and would result in confusion and delay.

### CONCLUSION

These cases by former and current MBTA employees, and potentially others that plaintiff may try to get into evidence, involve fact-intensive and sometimes remote-in-time allegations, a hodge-podge of legal claims, and many different decision-makers. To allow O'Loughlin to adduce evidence about these cases would greatly lengthen the trial, create serious confusion for the jurors, and undue prejudice for the defendants. Moreover, evidence about these cases would shed virtually no light on whether new Chief Joseph Carter, or former General Manager Michael Mulhern, discriminated or retaliated against O'Loughlin in 2003 and 2004.

For all of the above reasons, Defendant's motion in limine should be allowed.

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to L.R. 7.1 (D), the Defendants believe that oral argument may assist the court and wish to be heard.  Defendants respectfully request that the Court hear oral argument on this motion.  This matter is set for trial on May 7, 2007.  The final pre-trial conference is scheduled for May 3, 2007.

Respectfully submitted,

MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY AND JOSEPH CARTER,

By their attorneys,


/s/ Joseph L. Edwards, Jr.
Walter B. Prince, BBO# 406640
Joseph L. Edwards, Jr., BBO# 564288
Prince, Lobel, Glovsky & Tye LLP
100 Cambridge St. Suite 2200
Boston, MA 02114
(617) 456-8000


Dated:  May 2, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 2, 2007

/s/ Joseph L. Edwards, Jr.
Joseph L. Edwards, Jr.