# EXHIBIT A

## Page 89

VOL. II

PAGES 89-225

EXHIBITS See Index

COMMONWEALTH OF MASSACHUSETTS

In the Matter Between:

MBTA POLICE OFFICERS ASSOCIATION

and

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

BEFORE:   Timothy J. Buckalew, Esq., Arbitrator

GRIEVANT:  Nancy O'Loughlin

133 Federal Street
Boston, Massachusetts
Wednesday, May 25, 2005
10:40 a.m.

MAHANEY REPORTING SERVICES
(617) 542-4207

## Page 90

APPEARANCES:

Morgan, Brown and Joy, (by Philip G. Boyle, Esq.), 200 State Street, Boston, Massachusetts 02109-2605, for the Massachusetts Bay Transportation Authority.

Jones and Milligan, (by Stephen L. Jones, Esq.), 80 Washington Square, Building J, Norwell, Massachusetts 02061, for the Union.

Also Present:  Timothy Cullens, Esq.
               Nancy O'Loughlin
               Patricia Lucek, Atty.

I N D E X

| Witness | Direct/Redirect | Cross/Recross |
|---|---|---|
| JOSEPH CARTER |  |  |
| By Mr. Boyle | 92 |  |

MAHANEY REPORTING SERVICES
(617) 542-4207

## Page 91

THE ARBITRATOR: Ready?

MR. BOYLE: Yes, we are.

THE ARBITRATOR: First witness?

MR. BOYLE: Before we start, Mr. Buckalew --

THE ARBITRATOR: Some other matters?

MR. BOYLE: There's a sequestration order. And the grievant I know is across the table and counsel, but there are at least two other people in the room that were identified as witnesses the last time and can't be in the room with a sequestration order.

THE ARBITRATOR: Whoever is going to be giving testimony in this matter who isn't either a second seat at the hearing or the grievant should absent themselves from the room because if you're here and you hear the testimony of somebody else, you will not be able to testify.

MR. JONES: That's everyone. I have no idea who I'm going to call, and I don't want to be precluded from calling anybody later on.

THE ARBITRATOR: That's prudent.

MR. BOYLE: My first witness is the

MAHANEY REPORTING SERVICES
(617) 542-4207

## Page 92

Chief.

JOSEPH CARTER, sworn.

Direct Examination:

Q. (By Mr. Boyle) Would you tell us who are you please?

A. Joseph Carter, C A R T E R.

Q. And you're employed where, sir?

A. The MBTA Transit Police Department.

(Discussion off the record.)

Q. I'll start again. Your name is Joseph Carter, and you're the Chief of Police for the MBTA?

A. Yes.

Q. How long have you been the Chief of Police?

A. Since January 21st, 2003.

Q. Recite for the Arbitrator, Chief, please, your background prior to coming to the MBTA in January of 2003?

A. For approximately 21 years I was with the Boston Police Department, served in a number of positions from police officer to the highest

MAHANEY REPORTING SERVICES
(617) 542-4207

149

1  Q.  At any point in time from and after
2  the issuance of Joint Exhibit 11 have you
3  received any information that Nancy O'Loughlin
4  did not receive the document?
5  A.  Never.
6      THE ARBITRATOR:  Let's take a break.
7      (Recess.)
8  Q.  Still on page 13, Chief Carter, and
9  I'm looking with reference to paragraph seven.
10 I'll get into more specifics in a moment with
11 you, but in your opinion did Nancy O'Loughlin
12 discredit the Police Department by her actions
13 as stated in --
14     MR. JONES:  I'll object to that.
15 Q.  -- as stated in letters that are in
16 evidence in this record?
17     THE ARBITRATOR:  The objection is --
18     MR. JONES:  The objection is that
19 that's for you to determine.
20     THE ARBITRATOR:  Well, in the first
21 instance I think I need to know if that was -
22 and I don't have the disciplinary letter; it may
23 be buried in here somewhere - if that was one of
24 the grounds stated.  Then you may be right.

MAHANEY REPORTING SERVICES
(617) 542-4207

150

1  Ultimately I have to decide whether this
2  application of the rules is correct and whether
3  the conduct that's complained of actually
4  occurred, and whether it amounts to a violation
5  of the departmental rules or procedures.
6      But I think in the first instance I
7  need to hear from the Chief of Police about his
8  expectations about that and whether in his
9  opinion it did.  That's equivalent to saying did
10 you bring charges against somebody, and did the
11 charges violate the rules.  And he's going to
12 say what he's going to say.  I understand your
13 position, but I'm going to allow him to testify.
14 Go ahead.
15 A.  Yes.
16     THE ARBITRATOR:  Let me just be
17 proactive - if you're going to object when the
18 Police Chief makes a conclusory statement about
19 what her conduct amounted to in terms of a
20 violation of the rules, of the core values that
21 he's laid out, I'll allow him to testify to
22 that.  And you can keep your objection.  But I
23 think if you understand my position, I want to
24 hear what his understanding of his rules are and

MAHANEY REPORTING SERVICES
(617) 542-4207

151

1  how he applied the rules in this case.
2      MR. JONES:  I have no objection if
3  he says we found X; and as a result of X, she
4  was charged with X or Y.  And then it went to a
5  convening authority whose decision may or may
6  not have any relevance.
7      THE ARBITRATOR:  I understand what
8  you're saying, and I saw this testimony as
9  foreshortening all of that and jumping to the
10 end, which is why I said it was conclusory.  And
11 there may be testimony about all of those
12 intervening steps, but I'll allow him to make
13 his conclusory statement.
14     MR. JONES:  And the other is
15 relevance because she's not charged with
16 violating No. 7 of the plan of action.
17     THE ARBITRATOR:  That's another
18 issue, and I'll have to see that - I have to see
19 the charges when we get to them and see how that
20 develops.  Go ahead, Mr. Boyle.
21 Q.  Thank you.  Directing your attention
22 to page nine of Joint Exhibit 11, Chief Carter,
23 particularly the paragraph at the bottom of the
24 column on the left, read that paragraph out loud

MAHANEY REPORTING SERVICES
(617) 542-4207

152

1  for us please?
2  A.  "Overseen by managers who are held
3  accountable for the policing strategies used to
4  address problems as well as the police behavior
5  their subordinates use in dealing with all
6  people with particular attention on youth."
7  Q.  Why is that contained in the section
8  of the plan of action having to do with --
9      MR. JONES:  Objection, relevance.
10     THE ARBITRATOR:  Note the objection.
11 Q.  -- provision for policing?
12 A.  You have to repeat it because he
13 blurted out an objection, and I didn't hear the
14 whole thing.  Sorry.
15     MR. JONES:  I might disagree with
16 the "blurt" part.
17     THE ARBITRATOR:  Go ahead, re-ask
18 the question.
19 Q.  Why is what you just read into the
20 record, Chief, contained in the plan of action,
21 and why is it important?
22 A.  It's important for a couple of reasons
23 - one is dealing with youth was an area
24 identified by the administration of the T, by

MAHANEY REPORTING SERVICES
(617) 542-4207