UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANCY O'LOUGHLIN,<br>　　　　　Plaintiff,<br><br>v.<br><br>MASSACHUSETTS BAY<br>TRANSPORTATION AUTHORITY,<br>JOSEPH CARTER, and MICHAEL<br>MULHERN,<br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 　C.A. No. 04-10933 JLT |

## **DEFENDANTS' CORRECTED PROPOSED JURY INSTRUCTIONS**

Defendants Massachusetts Bay Transportation Authority, Joseph Carter and Michael Mulhern respectfully request the Court to accept these corrected proposed jury instructions. These instructions are the same as those previously filed except that the date of plaintiff's demotion, which appears in a number of places in the instructions, has been corrected to reflect the accurate date of August 2004 (and not July 2004, the date referenced in the proposed instructions filed on May 2, 2007).

Defendants respectfully request the Court to charge and instruct the jury as set forth in the attached instructions.

Defendants have not at this stage of the case framed proposed instructions summarizing the evidence to be adduced at trial and therefore respectfully request leave to submit revised or additional jury instructions based upon the evidence actually adduced at trial or as otherwise appropriate.

In addition, Defendants request leave to submit revised or additional requests that conform with any rulings of law the Court may render before the trial or during the course of trial.  Finally, Defendants request leave to submit a form of general verdict accompanied by written interrogatories before the jury is charged.

Respectfully submitted,

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY AND JOSEPH CARTER,

By their attorneys,

/s/ Joseph L. Edwards, Jr._____
Walter B. Prince, BBO# 406640
Joseph L. Edwards, Jr., BBO# 564288
Prince, Lobel, Glovsky & Tye LLP
100 Cambridge St., Suite 2200
Boston, MA 02114
Telephone:  (617) 456-8000
Facsimile:  (617) 456-8100

MICHAEL MULHERN

By his attorneys,

/s/ Joan A. Lukey_____
Joan A. Lukey (BBO #307340)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Dated:  May 3, 2007

**DEFENDANTS' REQUESTED INSTRUCTION NO. 1**

<u>ALL PERSONS EQUAL BEFORE THE LAW – INDIVIDUALS/ORGANIZATIONS</u>

      This case should be considered and decided by you as an action between persons of equal standing in the community, and holding the same or similar stations in life. In this case, the defendant MBTA is entitled to the same fair trial as a private individual.  All parties, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.

<u>Authority</u>

O'Malley, Grenig, Lee, 3 <u>Federal Jury Practice and Instructions</u>, 5th Ed. (2000), §§103.11, 12 (adapted).

**JURY INSTRUCTION NO. 2**

Sympathy cannot be a factor in verdict

Under your oath as jurors you are not to be swayed by sympathy. You should be guided solely by the evidence presented during this trial, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence. If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict. All parties to a civil lawsuit are entitled to a fair trial. You must make a fair and impartial decision so that you will arrive at a just verdict.

Authority

Source: L. Sand, J. Siffert, S. Reiss, 3 Modern Federal Jury Instructions, §71.01, Instruction 71-10 (1989).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 3**

<u>OUTLINE OF CLAIMS BROUGHT AGAINST DEFENDANTS</u>

Plaintiff Nancy O'Loughlin ("Plaintiff") has brought ten claims against three defendants: the Massachusetts Bay Transportation Authority (the "MBTA"), Joseph Carter ("Carter") and Michael Mulhern ("Mulhern").

Plaintiff's claims primarily revolve around four events: 1) her August 2003 transfer from the Command of the Detective Unit to Command of the Detail Unit, 2) her March 2004 suspension, with pay, during the recorded-line investigation, 3) her August 2004 demotion from lieutenant to patrol officer as a result of the recorded-line investigation, and 4) an article that appeared in the Boston Globe about the recorded-line investigation. Based on these events, plaintiff asserts a number of different, and sometimes overlapping, legal claims.

First, Plaintiff alleges that she was discriminated against because of her gender, in violation of various federal and state laws, with respect to the transfer to the Detail Unit and her suspension and then demotion as a result of the recorded-line investigation.  Under one or all of the applicable laws, Plaintiff seeks to hold the MBTA, Chief Carter, or former General Manager Michael Mulhern liable.

Second, Plaintiff alleges that she was retaliated against, in violation of various federal and state laws, for having filed a charge ("Charge") of discrimination in October 2003 with the Massachusetts Commission Against Discrimination.  In particular, she claims that both her suspension and then demotion as a result of the recorded-line investigation were retaliatory. Under one or all of the applicable laws, Plaintiff seeks to hold the MBTA, Chief Carter, or Mr. Mulhern liable.

Third, based on the manner of her suspension (i.e., the presence of the Special Operations Team officers), Plaintiff also asserts claims against Chief Carter and Michael Mulhern, individually, for allegedly depriving her of civil rights under state law.

Fourth, Plaintiff alleges that Mr. Mulhern defamed her by making false statements to the Boston Globe about the recorded-line investigation.

Finally, Plaintiff asserts a claim against the MBTA for defamation based on the allegedly false statements made by Mulhern to the Boston Globe about the recorded-line investigation.

I will instruct you on the law pertaining to each of the legal claims brought by Plaintiff after first giving you some general instructions about your function and the law.

**DEFENDANTS' REQUESTED INSTRUCTION NO. 4**

<u>RULINGS ON OBJECTIONS</u>

There are rules of evidence which control what can be received into evidence. When one lawyer asks a question or offers an exhibit into evidence, and a second lawyer on the other side thinks the question or exhibit is not permitted by the rules of evidence, the second lawyer may object. You should not be prejudiced against an attorney or his clients because the attorney has made an objection. If I overrule the objection, the question may be answered or the exhibit received into evidence. If I sustain the objection, the question cannot be answered and the exhibit cannot be received. Whenever I sustain an objection to a question, you should ignore the question and must not try to guess what the answer could have been.

Sometimes I may order that evidence be stricken from the record and that you shall disregard or ignore the evidence. That means that when you are deciding the case, you must not consider any evidence that I told you to disregard.

<u>Authority</u>

O'Malley, Grenig, & Lee, <u>Federal Jury Practice and Instructions</u>, Sections 101.49 (5th ed. 2000); Ninth Circuit Model Civil Jury Instructions No. 1.7 (2001).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 5

<u>EVIDENCE</u>

The evidence you are to consider in deciding what the facts are consists of:  (1) the sworn testimony of any witness; (2) the exhibits which are received into evidence; and (3) any facts to which the lawyers stipulate.

The following things are not evidence, and you must not consider them as evidence in deciding the facts of this case:  (1) statements and arguments of the attorneys; (2) questions and objections of the attorneys; (3) testimony I instruct you to disregard; and (4) anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

Some evidence may be admitted for a limited purpose only or against only one or more of the parties.  When I instruct you that an item of evidence has been admitted for a limited purpose or against only certain parties, you must consider it on only that basis and for no other purpose.

You must render a verdict separately as to each defendant, so it is important that you listen carefully and that you consider the evidence separately as to each defendant on each element of what Plaintiff must show to prove her claims.

<u>Authority</u>

Ninth Circuit Model Civil Jury Instructions Nos. 1.3, 1.4, 1.5, 3.11 (2001).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 6

### GENERAL BURDEN OF PROOF

The standard of proof in a civil case is that a plaintiff must prove her case by a preponderance of the evidence. This is a less stringent standard than is applied in a criminal case, where the prosecution must prove its case beyond a reasonable doubt. By contrast, in a civil case such as this one, the plaintiff is not required to prove her case beyond a reasonable doubt. In a civil case, the party bearing the burden of proof meets the burden when she shows it to be true by a preponderance of the evidence. A proposition is proved by a preponderance of the evidence if, after you have weighed the evidence, that proposition is made to appear more likely or probable in the sense that there exists in your minds an actual belief in the truth of that proposition derived from the evidence, notwithstanding any doubts that may still linger in your minds. Simply stated, a matter has been proved by a preponderance of the evidence if you determine, after you have weighed all of the evidence that that matter is more probably true than not true.

In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue has more convincing force, then your finding upon that issue must be against the party who had the burden of proving it.

One element of one of Plaintiff's claims must be proven by clear and convincing evidence, which is a harder standard to meet. I will instruct you on that standard later.

Authority

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, Massachusetts Superior Court Civil Practice Jury Instructions, § 1.18 (2001); Sargent v. Massachusetts Accident Co., 307 Mass. 246, 250, 29 N.E.2d 825, 827 (1940). See also Lisbon v. Contributory Ret. App. Bd., 41 Mass. App. Ct. 246, 255, 670 N.E.2d 392 (1996).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 7

### DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may use to determine the facts of a case: direct evidence and circumstantial evidence. You have direct evidence where a witness testifies directly about the fact that is to be proved, based on what he or she claims to have seen or heard or felt with his or her own senses, and the only question is whether you believe the witness and the weighing of contradictory evidence. You have circumstantial evidence where no witness can testify directly about the fact that is to be proved, but you are presented with evidence of other facts and then asked to draw reasonable inferences from them about the fact that is to be proved. There is no difference in probative value between direct and circumstantial evidence.

Let me give you an example. You daughter might tell you one morning that she sees the letter carrier at your mailbox. That is direct evidence that the letter carrier has been to your house. On the other hand, she might tell you only that she sees mail in the mailbox. That is circumstantial evidence that the letter carrier has been there; no one has seen her, but you can reasonably infer that she has been there because there is mail in the box.

Authority

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, Massachusetts Superior Court Civil Practice Jury Instructions, § 1.8.2 (2001) (modified).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 8

### INFERENCES

An inference is a permissible deduction that you may make from evidence that you have accepted as believable.  Inferences are things you do every day:  little steps in reasoning, in which you take some known information, apply your experience in life to it, and then draw a conclusion.

You may draw an inference even if it is not necessary or inescapable, so long as it is reasonable and warranted by the evidence.

Authority

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, Massachusetts Superior Court Civil Practice Jury Instructions, § 1.9 (2001); Commonwealth v. Niziolek, 380 Mass. 513, 523-24, 404 N.E.2d 643 (1980).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 9**

EXPLANATORY OUTLINE OF SUBSEQUENT INSTRUCTIONS

As I stated earlier, there are three defendants and Plaintiff has brought claims against each. Some claims are brought against only one defendant. Other claims are brought against more than one defendant.

I have organized the instructions for each of the particular claims as follows: First, I will instruct you on the law pertaining to the discrimination claims brought against the MBTA and Chief Carter. Second, I will instruct you on the law pertaining to the retaliation claims brought against the MBTA, Chief Carter and Mulhern. Third, I will instruct you on the state and federal civil rights claims brought against Chief Carter and Mulhern. Finally, I will instruct you on the defamation claims brought against Mulhern and the MBTA.

After those instructions, I will then instruct you on the law of damages.

## DEFENDANTS' REQUESTED INSTRUCTION NO. 10

### SEX DISCRIMINATION – GENERALLY

Plaintiff claims that the MBTA discriminated against her because she is a woman in violation of the Massachusetts and federal anti-discrimination statutes, and that Carter discriminated against her in violation of the Massachusetts anti-discrimination statute. Specifically, Plaintiff claims that, due to her gender, the MBTA and Carter: 1) transferred her in August 2003 from the Command of the Detective Unit to Command of the Detail Unit; 2) suspended her, with pay, in March 2004 during the recorded-line investigation; and 3) demoted her in August 2004 from lieutenant to patrol officer as a result of the recorded-line investigation. Each of these claims needs to be considered separately. You must consider for each of the actions whether it was the result of gender or sex discrimination.

In order to prove a claim for discrimination, Plaintiff must prove to you by a preponderance of the credible evidence that the MBTA and Carter intended to discriminate against her and that but for Plaintiff's gender, the MBTA and Carter would not have reassigned her to Command of the Detail Unit; suspended her, with pay, during the recorded-line investigation; and demoted her from lieutenant to patrol officer as a result of the recorded-line investigation.

The burden of persuasion rests with Plaintiff at all times.

Authority

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, Massachusetts Superior Court Civil Practice Jury Instructions, § 5.2.1 (2001) (modified); Model Jury Instructions: Employment Litigation, §1.02[1] (1994) (modified).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 11

<u>DISCRIMINATION – ADVERSE EMPLOYMENT ACTION</u>

Plaintiff must prove that she suffered an adverse employment action. Under the law, an adverse employment action is an action that materially disadvantages an employee with respect to salary, grade, or other objective terms and conditions of employment.

To constitute an adverse action, a transfer or reassignment must be more disruptive than a mere inconvenience or an alternation of job responsibilities.  It is not enough that the plaintiff does not like the transfer or reassignment.  Therefore, subjective feelings of disappointment or disillusionment concerning a transfer, reassignment, change in job responsibilities, or other employment action do not constitute an adverse employment action.  Also, actions such as rearranging an employee's duties or subjecting her to a new reporting structure do not constitute the type of materially disadvantageous adverse employment actions necessary to establish a discrimination claim.  On the other hand, actions such as demoting or suspending an employee without pay are adverse employment actions because they amount to a significant change in the employee's employment status.

There is no dispute here that Plaintiff's demotion in August 2004 was an adverse action under the definition I have given you. Whether the other actions Plaintiff complains about (the reassignment and suspension) amount to adverse actions is something you must decide. If you do not find that Plaintiff suffered an adverse employment action, as I have just defined this term, when Plaintiff was reassigned to the Detail Unit or suspended with pay, then you must find for the MBTA and Carter on Plaintiff's discrimination claims relating to these decisions.

<u>Authority</u>

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior Court Civil Practice Jury Instructions</u>, § 5.2.8 (2001) (modified); <u>Burlington Indus. v. Ellerth</u>, 524 U.S. 742, 118 S. Ct. 2257, 2270 (1998); <u>McKenzie v. Milwaukee County</u>, 381 F.3d 619, 625 (7th Cir., 2004); <u>Marrero v. Goya of P.R., Inc.</u>, 304 F.3d 7, 24 (1st Cir. 2002); <u>Smart v. Ball State University</u>, 89 F.3d 437, 441 (7th Cir. 1996).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 12**

<u>SEX DISCRIMINATION – MOTIVE, INTENT OR STATE OF MIND</u>

In this case, the critical issue is why the MBTA and Carter reassigned Plaintiff to Command of the Detail Unit; suspended her and then demoted from lieutenant to patrol officer as a result of the recorded-line investigation.

It is unlawful to take adverse employment action against a person because of her gender; it is not unlawful to take adverse employment action against a person for non-discriminatory reasons such as legitimate business reasons (where, for example, a particular unit or department is disbanded and there is no longer a need for someone to work in that unit), performance reasons (where, for example, an employee is not doing as a good job as needs to be done) or to discipline an employee. To decide this case, you will have to inquire into and determine the MBTA's and Carter's motive, intent or state of mind.

(a)     Direct Evidence

Sometimes motive, intent, or state of mind can be proved directly; for example, by a witness describing what his state of mind was or by a witness testifying to what a defendant said that would be reflective of his state of mind. Direct evidence is evidence that, if believed, would result in a highly probable inference that a forbidden bias was present in the workplace. Direct evidence can consist of statements of a defendant that suggest a discriminatory attitude toward women.

(b)     Circumstantial Evidence

But at other times, motive, intent, or state of mind must be proved indirectly or circumstantially. Here, you may examine the MBTA's and Carter's actions and words, and all of the surrounding circumstances, to help you determine what their motive, intent, or state of mind was when they reassigned Plaintiff to Command of the Detail Unit; suspended her, with pay,

during the recorded-line investigation; and demoted her from lieutenant to patrol officer as a result of the recorded-line investigation.

The law does not draw any distinction between the weight to be given direct or circumstantial evidence; that is up to the jury.  Circumstantial evidence permits you to draw reasonable inferences from facts in evidence.  The inference proposed from the evidence need not be the only one possible; however, it must be a reasonable inference.

<u>Authority</u>

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior Court Civil Practice Jury Instructions</u>, § 5.2.2 (2001) (modified); <u>Model Jury Instructions: Employment Litigation</u>, §§1.02[2], [3] (1994) (modified).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 13

<u>SEX DISCRIMINATION – PROVING DISCRIMINATION BY CIRCUMSTANTIAL
EVIDENCE</u>

(a)    Pretext

It is not enough for Plaintiff to prove that Chief Carter's stated reasons for his actions are

***untrue***.  She must also persuade you, by a preponderance of the evidence, that the real reason

was an intent to discriminate against her due to her gender.  If you find that regardless of her

gender, Chief Carter would still have reassigned her, suspended her and demoted her, you must

find in favor of the defendants on the discriminations claims.  Similarly, if you believe, after

considering all of the evidence, that Chief Carter's reasons for his actions were the real reasons,

you must find in favor of the defendants on the discriminations claims.

(b)    Business Judgment

When assessing a plaintiff's claim of pretext, you should focus on the motivation of the

employer, and not its business judgment.

While an employer's judgment or course of action may seem poor or erroneous to

outsiders, the relevant question is simply whether the given reason was a pretext for illegal

discrimination.  The employer's stated legitimate reason must be reasonably articulated and

nondiscriminatory, but does not have to be a reason that you, the jury, would act on or approve.

An employer is entitled to make its own policy and business judgments, and may, for example,

transfer an adequate employee if its reason is to replace her with one who will be better or to

impose harsh discipline in order to accomplish a management objective, as long as the reasons

given are not a pretext for discrimination.

You are not to second-guess the decisionmakers' judgments, or to decide whether their

actions were unfair.  Plaintiff cannot prove discrimination merely by showing you mistakes or

- 18 -

weaknesses in Chief Carter's decisions to reassign Plaintiff to Command of the Detail Unit; to suspend her, with pay, during the recorded-line investigation; and to demote from lieutenant to patrol officer as a result of the recorded-line investigation. As long as Chief Carter believed in good faith that his conclusions were accurate at the time of the decisions, then you must find for the MBTA and Chief Carter on the discrimination claims.

You may consider the reasonableness or lack of reasonableness of the MBTA's and Carter's stated business judgment along with all the other evidence in determining whether they discriminated against Plaintiff. The reasonableness of their reasons may of course be probative of whether the reasons are the true reasons or are just pretexts. You must keep in mind, however, that your focus is to be on the MBTA's and Carter's motivation and not on their business judgment.

<u>Authority</u>

<u>Shorette v. Rite Aid of Maine, Inc.</u>, 155 F.3d 8, 13 (1st Cir. 1998); <u>Lawton v. State Mut. Life Assur. Co of America</u>, 924 F. Supp. 331, 342 (D.Mass. 1996); <u>Lipchitz v. Raytheon</u> Co., 434 Mass. 493, 751 N.E.2d 360 (2001); <u>Matthews v. Ocean Spray Cranberries, Inc.</u>, 426 Mass. 122, 128 (1997). <u>Brunner v. Stone & Webster Engineering</u>, 413 Mass. 698, 699, 705; <u>White v. University of Massachusetts at Boston</u>, 410 Mass. 553, 557 (1991); Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, Massachusetts Superior Court Civil Practice Jury Instructions, § 5.2.3 (2001) (modified); Model Jury Instructions: Employment Litigation, §1.02[3][a] (1994) (modified).

# JURY INSTRUCTION NO. 14

## Perception of Decisionmaker

When considering the issue of discrimination, you must put yourselves in Chief Carter's shoes at the time he took actions concerning Plaintiff. A manager does not always have all of the information a jury will receive—in doing your job of assessing the employer's motive, you should look at the information the employer possessed at the time it made the decisions. You must ask yourselves whether Chief Carter had a good faith belief that it was in the best interests of the department to: 1) transfer Plaintiff in August 2003 from the Command of the Detective Unit to Command of the Detail Unit, 2) to suspend her in March 2004, with pay, during the recorded-line investigation, 3) and to demote her in August 2004 from lieutenant to patrol officer as a result of the recorded-line investigation.

If you find that Chief Carter did have such a good-faith belief when making the employment decisions about Plaintiff, then you must find for the defendants on the discriminations claims. You are not to second-guess Chief Carter's judgments, or to decide whether the actions were unfair.

Morgan v. Mass. Gen. Hosp., 901 F.2d 186, 191 (1st Cir. 1990) ("evidence contesting the factual underpinnings of the reasons for the employment decision proffered by the employer is insufficient, without more, to present a jury question"); Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 13 (1st Cir. 1998); Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n.6 (1st Cir. 1979); Brunner v. Stone & Webster Engineering, 413 Mass. 698, 704, 603 N.E.2d 206 (1992).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 15

### SEX DISCRIMINATION – DEFENSE

As alluded to earlier in the discussion of pretext, it is not illegal to reassign, suspend or demote an employee who is a woman if the reason for doing so is unrelated to the employee's sex. Therefore, the fact that Plaintiff is a woman is not, in and of itself, evidence of discrimination.

If you find that Plaintiff was reassigned, suspended or demoted because of factors other than her sex, you must decide in favor of the MBTA and Carter. Only if you decide that Plaintiff's sex was a factor that motivated or played a part in the MBTA's and Carter's decision to reassign, suspend or demote Plaintiff, can you decide in favor of Plaintiff.

However, even if you decide that Plaintiff's gender has been shown to have been a factor in the MBTA's and Carter's actions, if you also decide that they demonstrated they would have reached the same decision irrespective of Plaintiff's sex, then you cannot award damages to Plaintiff. In other words Plaintiff must show that, but for her gender, she would not have been reassigned, suspended or demoted.

Authority

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, Massachusetts Superior Court Civil Practice Jury Instructions, § 5.2.4 (2001) (modified); Model Jury Instructions: Employment Litigation, §§1.02[2][a] (1994) (modified).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 16**

<u>SEX DISCRIMINATION – LEGITIMATE NONDISCRIMINATORY REASON</u>

A legitimate nondiscriminatory reason is any reason or explanation unrelated to Plaintiff's sex. In considering the legitimate nondiscriminatory reasons stated by the MBTA and Carter for their decision, you are not to second-guess that decision or to otherwise substitute your judgment for that of the defendants.

In this case, the ultimate burden of persuading the jury that the MBTA and Carter intentionally discriminated against Plaintiff because of her sex remains at all times with Plaintiff. The MBTA and Carter are therefore not required to prove that their decisions were actually motivated by the stated legitimate nondiscriminatory reason.

<u>Authority</u>

<u>Model Jury Instructions:  Employment Litigation</u>, §1.02[3][b] (1994) (modified).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 17**

<u>RETALIATION – GENERALLY</u>

In addition to her discrimination claims, Plaintiff has brought claims against the MBTA, Chief Carter and Mr. Mulhern alleging her suspension, with pay, and then demotion from lieutenant to patrol officer as a result of the recorded-line investigation, was also in retaliation for filing the Charge.  Plaintiff alleges that by engaging in this conduct, the MBTA violated the Massachusetts and federal anti-retaliation laws, and Carter and Mulhern violated the Massachusetts anti-retaliation law. These laws generally prohibit retaliation against an employee for filing a discrimination complaint.

## JURY INSTRUCTION NO. 18

Elements of Retaliation Claim:  Protected Activity

In order to win on her claim of retaliation, Plaintiff must persuade you, by a preponderance of the evidence, of several things.

First, she must prove that she engaged in an activity protected under the anti-discrimination laws.  The anti-discrimination laws prohibit retaliation against employees for filing claims of discrimination.  So, first, Plaintiff must simply establish that she engaged in an activity that is protected from retaliation under the anti-discrimination laws. There is no dispute here that Plaintiff's Charge was protected activity.

Authority

Lipchitz v. Raytheon Co., 434 Mass. 493, 507, 751 N.E.2d 360, 372 (2001) (citing to model federal instructions in support of advising jury on ultimate issues of harm, discriminatory animus, and causation).  On retaliation claims, see Hazel v. U.S. Postmaster General, 7 F.3d 1, 3 (1st Cir. 1993) (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990); see also Farricy v. Suffolk County Sheriff's Department, 22 Mass. Discrim. L. Rep. 27, 28 (2000) (to establish a prima facie case of retaliation under G.L. c. 151B, plaintiff must show protected activity, an adverse employment action and that the adverse employment action followed the protected activity in such time that retaliation can be inferred).

## JURY INSTRUCTION NO. 19

Elements of Retaliation Claim:  Knowledge of Protected Activity

Second, Plaintiff needs to show that her protected activity was known to the people at the MBTA who were responsible for the employment actions that she challenges at the time the challenged employment decisions were made. If a supervisor makes an employment decision about an employee, and only subsequently learns the employee had previously engaged in protected activity, the employment decision cannot be retaliatory.

Authority

Lipchitz v. Raytheon Co., 434 Mass. 493, 507, 751 N.E.2d 360, 372 (2001) (citing to model federal instructions in support of advising jury on ultimate issues of harm, discriminatory animus, and causation).  On retaliation claims, see Hazel v. U.S. Postmaster General, 7 F.3d 1, 3 (1st Cir. 1993) (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990); see also Farricy v. Suffolk County Sheriff's Department, 22 Mass. Discrim. L. Rep. 27, 28 (2000) (to establish a prima facie case of retaliation under G.L. c. 151B, plaintiff must show protected activity, an adverse employment action and that the adverse employment action followed the protected activity in such time that retaliation can be inferred).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 20**

<u>RETALIATION – ADVERSE EMPLOYMENT ACTION</u>

I earlier instructed you on the definition of adverse employment action in connection with Plaintiff's gender discrimination claim. The definition of adverse employment action is different for Plaintiff's retaliation claims.

The law does not protect an individual from all retaliation. In order to prove retaliation, the Plaintiff must prove that the MBTA, Carter and Mulhern took action against her which was materially adverse, which means action that might well have dissuaded a reasonable worker from making or supporting a charge of discrimination. An action is materially adverse if the employer takes something of consequence from the employee, for example by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities. Trivial actions such as petty slights, minor annoyances or a lack of good manners do not meet this standard. A transfer or reassignment that involves only minor changes in working conditions normally is not actionable even if it causes the Plaintiff to feel stigmatized and punished. The standard must be judged from the perspective of a reasonable person in the Plaintiff's position considering all the circumstances.

If you find that the Plaintiff's suspension in March 2004 or her demotion in August 2004, would not have dissuaded a reasonable person in the Plaintiff's situation from making or supporting a charge of discrimination, then you must find for the MBTA, Carter and Mulhern on Plaintiff's retaliation claims.

<u>Authority</u>

<u>Burlington Northern & Santa Fe Railway Company v. White</u>, 126 S. Ct. 2405, 2415,165 L. Ed. 2d 345, 359-360 (2006); <u>Caromona-Rivera v. Puerto Rico</u>, 464 F.3d 14, 19-20 (1st Cir. 2006); <u>Pedicini v. United States</u>, 2007 U.S. Dist. LEXIS 23035, *26-29 (D. Mass. 2007)(Tauro, J.); EEOC Compliance Manual § 8, pp. 8-13 and 8-14 (1998); <u>MacCormack v. Boston Edison Co.</u>,

423 Mass. 652, 663-664 (1996); <u>Cohen and MCAD v. National Railroad Passenger Corp.</u>, 28 MDLR 97, 107 (Mass. Comm. Discrim. 2006).

## JURY INSTRUCTION NO. 21

Elements of Retaliation Claim:  Causation

Fourth, and this is key, was there a causal connection between Plaintiff's alleged protected activity and the adverse employment actions? You should go on to analyze this issue only for those actions, if any, that you have found to be adverse employment actions.  If you decide that the suspension is an adverse employment action, you should go on to determine:  Is the reason Plaintiff was suspended because she filed her MCAD Charge in October 2003?  If you decide that the August 2004 demotion is an adverse employment action, you should ask yourselves:  Is the reason Plaintiff was demoted because she filed her Charge in October 2003?

As to the causation element, the test is objective, not subjective.  Thus, the test is not whether Plaintiff believed that she was a victim of retaliation, but rather the test is whether defendants, in fact, suspended and/or demoted her to retaliate against her for filing the Charge.

Simply because you engage in a protected activity, such as filing a complaint of retaliation, you're not suddenly immune from any sort of personnel action being taken against you.  That's not how the law works.  Because then everyone would complain about discrimination to avoid being disciplined or demoted or have anything negative happen to them at work.  So Plaintiff has to prove not only that she engaged in a protected activity and that the MBTA decisionmakers knew about it and she suffered an adverse employment action, she needs to show that she suffered the adverse employment action because she engaged in the protected activity. That is retaliation.  And that is forbidden by the law.

Overall, Plaintiff has the burden of persuading you, by a preponderance of the evidence, that the MBTA intended to retaliate against her, and that, but for her engaging in activity protected from retaliation, the MBTA would not have taken the actions that it did.

Authority

Mole v. University of Massachusetts, 442 Mass.582, 592-594 (2004);Lipchitz v. Raytheon Co., 434 Mass. 493, 507, 751 N.E.2d 360, 372 (2001) (citing to model federal instructions in support of advising jury on ultimate issues of harm, discriminatory animus, and causation).  On retaliation claims, see Hazel v. U.S. Postmaster General, 7 F.3d 1, 3 (1st Cir. 1993) (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990); see also Farricy v. Suffolk County Sheriff's Department, 22 Mass. Discrim. L. Rep. 27, 28 (2000) (to establish a prima facie case of retaliation under G.L. c. 151B, plaintiff must show protected activity, an adverse employment action and that the adverse employment action followed the protected activity in such time that retaliation can be inferred).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 22

<u>CIVIL RIGHTS – FEDERAL</u>

Based on the same allegations relating to her reassignment to Command of the Detail Unit, and suspension and demotion as a result of the recorded-line investigation, Plaintiff has brought claims that Carter and Mulhern deprived her of civil rights under federal law by discriminating against her on the basis of her gender and retaliating against her for filing the Charge. She is seeking compensation directly from Carter and Mulhern for these alleged civil rights violations. Federal law provides an individual with a right to sue and a legal remedy when she has been deprived of a right under federal law or the United States Constitution by individuals acting under color of state law. To be clear, her federal civil rights claims are really just another way of Plaintiff making the same discrimination and retaliation claims as I have previously instructed you on.

To prove this claim, Plaintiff must prove each of the following elements:

(1)    That Carter and Mulhern deprived her of rights protected under federal law or the United States Constitution;

(2)    Carter's and Mulhern's actions were under color of state law or local law, as I will define that phrase for you; and

(3)    Carter's and Mulhern's actions were a proximate cause of Plaintiff's damages.

<u>Authority</u>

<u>Model Jury Instructions: Employment Litigation</u>, §§9.01, 9.02 (1994) (modified).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 23**

<u>CIVIL RIGHTS – FEDERAL, COLOR OF LAW</u>

Plaintiff must establish by a preponderance of the evidence, first, that the alleged unlawful conduct (i.e., the alleged gender discrimination and retaliation for filing the Charge) occurred, and, second, that it was committed "under color of law."

You must first determine if Chief Carter or Mr. Mulhern discriminated against Plaintiff based on her gender, applying the principles I have already described. You must next determine if Chief Carter or Mr. Mulhern retaliated against Plaintiff based on her Charge, applying the principles I have already described. If you decide that either Chief Carter or Mr. Mulhern discriminated or retaliated against Plaintiff, then you should go on to decide if they acted under color of law.

Activity is under the " color of law" if the official engaged in unlawful conduct while acting or claiming to act in the performance of their official duties, and their conduct complies with any state statute, regulation, or ordinance, or with any custom, policy, or usage of a state, county, or municipality.

If the unlawful conduct was instead committed by Carter and Mulhern in pursuit of their personal objectives and was not made possible by virtue of their authority as officials, then you must find that they did not act under "color of law."

<u>Authority</u>

<u>Model Jury Instructions:  Employment Litigation</u>, §§9.02[1] (1994) (modified).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 24**

<u>CIVIL RIGHTS – MASSACHUSETTS CIVIL RIGHTS ACT, ELEMENTS</u>

Based on the manner of her suspension on March 8, 2004--that is, the presence of the Special Operations Team officers in the vicinity of where Plaintiff was informed of her suspension -- Plaintiff also alleges that Carter and Mulhern violated her civil rights under the Massachusetts Civil Rights Act.  That Act prevents any person from interfering by threats, intimidation, or coercion with the exercise or enjoyment by any other person or persons of rights secured by the Constitution or laws of the United States or by the Constitution or laws of the Commonwealth.

To establish her claims under the Massachusetts Civil Rights Act, Plaintiff must establish, by a preponderance of the evidence, the following three elements:

(1)     That a right secured by the Constitution or laws of either the United States or of the Commonwealth is at stake;

(2)     That the right or rights at stake have been interfered with or attempted to be interfered with by Carter and Mulhern; and

(3)     That the interference or attempted interference was by threats, intimidation or coercion.

I will now discuss these elements in greater detail.

<u>Authority</u>

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior Court Civil Practice Jury Instructions</u>, § 19.4 (2001) (modified).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 25**

<u>CIVIL RIGHTS – MASSACHUSETTS CIVIL RIGHTS ACT, RIGHT IS AT STAKE</u>

The laws of the United States and the Commonwealth prohibit discrimination and retaliation as explained above.  If you are satisfied, based on the evidence that you have heard, that the Plaintiff has proved, by a preponderance of the evidence, that Carter or Mulhern discriminated or retaliated against Plaintiff with respect to her suspension, you would be warranted in finding that a right of Plaintiff, secured to her by the laws of Massachusetts had been interfered with, and you would be warranted in finding that Plaintiff has satisfied her burden of proof on the first element of the claim with respect to either Carter, Mulhern or both. If you do not find discrimination or retaliation, you should find for Carter and Mulhern on this claim.

<u>Authority</u>

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior Court Civil Practice Jury Instructions</u>, § 19.4.1 (2001) (modified).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 26**

<u>CIVIL RIGHTS – MASSACHUSETTS CIVIL RIGHTS ACT, THREATS,
INTIMIDATION, COERCION</u>

Plaintiff must also prove that Carter's or Mulhern's interference with her rights was accomplished by means of threats, intimidation or coercion. Plaintiff claims that because members of the Special Operations Team were in the vicinity when she was informed about her suspension, the suspension was accomplished by threats, intimidation or coercion.  I will define those terms for you as they are used in the Massachusetts Civil Rights Act.

A "threat" involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.

"Intimidation" involves putting in fear for the purpose of compelling or deterring conduct.

"Coercion" is the application to another of either physical or moral force to constrain her to do something against her will.

For the interference with rights to be accomplished by threats, intimidation or coercion, the suspension itself must be accomplished by threats, intimidation or coercion.  Not every violation of law is a violation of the Massachusetts Civil Rights Act.  A direct violation of a person's rights, in other words, a violation of a right that does not involve threats, intimidation or coercion, does not violate the Massachusetts Civil Rights Act.

If you find that Carter or Mulhern attempted to interfere with Plaintiff's right to be free from discrimination and retaliation by means of threats, intimidation or coercion, you would be warranted in returning a verdict for Plaintiff, and in awarding damages according to the instructions I will give to you.  If you find that Carter or Mulhern did not interfere with Plaintiff's rights, or that the interference was not accomplished by means of threat, intimidation,

or coercion as I have defined those terms, then you should return a verdict for Carter and

Mulhern.

Authority

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, Massachusetts Superior Court Civil Practice Jury Instructions, § 19.4.3 (2001) (modified).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 27**

<u>DEFAMATION – IN GENERAL</u>

Plaintiff has brought a suit against the MBTA and Mulhern charging them with slander,

which is a type of defamation.  Slander refers to spoken words that are defamatory.

<u>Authority</u>

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior Court Civil Practice Jury Instructions</u>, § 6.1 (2001) (modified).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 28**

<u>DEFAMATION – DEFAMATION OF A PUBLIC PERSON</u>

In order to prevail on her claim for defamation, Plaintiff must prove to you by a preponderance of the evidence the following elements:

(1)    That Mulhern or another agent of the MBTA published false statements of fact of and concerning Plaintiff;

(2)    Their statements were defamatory in that they tended to hold Plaintiff up to scorn, hatred, ridicule, or contempt, in the minds of any considerable and respectable segment of the community; and

(3)    Plaintiff suffered actual injury or harm as a result of the publications in question.

Once Plaintiff has proven the above elements, she must then prove *by clear and convincing evidence* the last element:  namely, that Mulhern or another agent of the MBTA published defamatory statements with knowledge that they were false or with reckless disregard as to the truth or falsity of the statements.  "Reckless disregard" means that Mulhern or another agent of the MBTA who published defamatory statements entertained serious doubts as to the truth of the publications, or spoke with a high degree of awareness of probable falsity.  This element and the element of falsity require a higher burden of proof, namely proof by clear and convincing evidence.  I will instruct you on this evidentiary standard shortly.

<u>Authority</u>

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior Court Civil Practice Jury Instructions</u>, § 6.3 (2001) (modified); <u>Bander v Metropolitan Life Ins. Co.</u>, 313 Mass. 337 (1943).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 29**

<u>DEFAMATION – PUBLICATION</u>

In order to find that the statements were published, you must find that they were communicated to someone other than Plaintiff.  There is no requirement that the statements be communicated to a large number of people.

<u>Authority</u>

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior Court Civil Practice Jury Instructions</u>, § 6.2.1 (2001) (modified).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 30

<u>DEFAMATION – STATEMENT OF FACT</u>

The law does not allow recovery for merely stating one's opinion, regardless of how ridiculing, contemptuous, derogatory or unjustified the opinion may be.  Under the First Amendment there is no such thing as a false opinion; however, there is protection for false statements of fact.

Thus, you must decide whether the statement at issue is one of fact or opinion.  For plaintiff to succeed on her defamation claim she must show that the statement at issue contained a provably false factual connotation. Second, she cannot recover unless the statement could reasonably be interpreted as stating actual facts about her.

In making this determination about whether the alleged statement is or could reasonably be construed to state facts about Plaintiff, you must examine the statement in the totality of the circumstances in which it was published.  This includes the medium in which it appeared and the audience at which it was directed.  You must consider all of the words used, not merely a particular word, phrase or sentence.  You also must give weight to any cautionary terms used by the defendant in publishing the statement.  The context of the statement is very important because a statement of fact in one context can be a statement of opinion in another.  For example, where potential defamatory statements are published in a setting in which the audience may anticipate efforts by the parties to persuade others to their position by the use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may be seen as statements of opinion.  It is for you to decide if the statement can reasonably be construed as a statement of fact in light of all the circumstances.

Authority

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior Court Civil Practice Jury Instructions</u>, § 6.2.4 (2001) (modified); <u>Milkovich v. Lorain Journal Co.</u>, 497 US 1 (1990); <u>Phantom Touring Inc. v. Affiliated Publications</u>, 953 F.2d 724 (1st Cir. 1992).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 31**

<u>DEFAMATION – FALSITY</u>

The plaintiff has the burden of proving by clear and convincing evidence all of the facts necessary to establish that the statement is false. No matter how defamatory a statement may be, no matter what the defendants' motive in publishing it, if the plaintiff fails to prove that the statement is materially false, you must render a verdict for the defendants.

To prove falsity, plaintiff must prove that a defamatory statement was false in a significant way. If the statement is substantially true, the plaintiff has failed to prove its falsity, even though she may have proved it false in insignificant details.

You should remember that there is no burden on the defendants to convince you of the truth of any statement. The defendants were free to offer proof of truth, but, by doing so, they did not assume the burden of convincing you of truth. The burden remains on the plaintiff to convince you that the defendants made false statements about her.

<u>Authority</u>

Harte-Hanks v. <u>Connaughton,</u> 491 U.S. 657 (1989); <u>Dulgarian v. Stone</u>, 420 Mass. 843, 847 (1995).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 32

<u>DEFAMATION – CLEAR AND CONVINCING EVIDENCE</u>

In describing the plaintiff's burden of proof, I have used the words "clear and convincing evidence."  Clear and convincing evidence involves a degree of belief greater than the burden of proof by a fair preponderance of the evidence which you have heard me explain in regard to other claims plaintiff has made.  Clear and convincing evidence requires proof that is "strong, positive, and free from doubt," and "full, clear and decisive."  It may also be describes as "clear, precise and indubitable," "unmistakable and free from serious doubt," and "proof which persuades the trier of fact "that the . . . contention is highly probable."

<u>Authority</u>:

<u>Stone v. Essex County Newspapers, Inc.</u>, 367 mass. 849, <u>DiLeo v. Koltnow</u>, 200 Colo. 119 (1980); <u>Manuel v. Fort Collins Newspapers, Inc.</u>, 599 P.2d 933 (Colo. App. 1979), <u>rev'd on other grounds</u>, 631 P.2d 1114 (Colo. 1981).  Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior Court Civil Practice Jury Instructions</u>, § 6.3.1 (2001) (modified).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 33

## <u>DEFAMATION – OF AND CONCERNING THE PLAINTIFF</u>

Plaintiff must show that the statement or statements at issue were of and concerning her.

Plaintiff need not be referred to by name in the statement, in order to prove that the statements

were about her.  She may show that the statement was of and concerning her by proving either:

(1)     That Mulhern or another agent of the MBTA who made the statements  intended

their words to refer to Plaintiff and that they were so understood; or

(2)     That their words could reasonably be interpreted to refer to Plaintiff and the

Mulhern, or another agent of the MBTA who made the statements, was at least

negligent in publishing the words in a way which reasonably could have been

interpreted to refer to Plaintiff.

<u>Authority</u>

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior</u>
<u>Court Civil Practice Jury Instructions</u>, § 6.2.3 (2001) (modified).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 34**

<u>DEFAMATION – DEFAMATORY MEANING</u>

A statement is defamatory if it tends to hold Plaintiff up to scorn, hatred, ridicule, or contempt, in the mind of any considerable and respectable segment of the community.  In making this determination the statement must be interpreted in light of the circumstances in which it was made and the natural sense meaning that the statement generally conveys.  Strained and unnatural interpretations of statements do not make a statement defamatory.  The fact that a person may be able by reading between the lines of a statement, to discover some defamatory meaning therein is not sufficient to make it defamatory.  In other words, if the language is not reasonably capable of conveying to the ordinary mind a defamatory meaning, there is no defamation.

<u>Authority</u>

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior Court Civil Practice Jury Instructions</u>, § 6.2.2 (2001) (modified).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 35**

<u>DEFAMATION – ACTUAL MALICE</u>

As I stated earlier, once Plaintiff has proven the above elements -- a false and defamatory statement of fact of and concerning Plaintiff that caused her harm-- she must then prove by clear and convincing evidence that the Mulhern or another agent of the MBTA who made the statements published the defamatory statements with "actual malice," meaning knowledge that the statement was false or with reckless disregard as to the truth or falsity of the statements. Once again, "reckless disregard" means that the MBTA and Mulhern or another agent of the MBTA who made the statements entertained serious doubts as to the truth of the publications.

Mere negligence, carelessness, mistake, or a simple misinterpretation on the part of the defendant does not establish actual malice. Plaintiff must demonstrate actual malice by showing with clear and convincing evidence that Mulhern, or another agent of the MBTA who made the statements, realized that the statements were false or that they subjectively entertained serious doubt as to the truth of the statements. Plaintiff only carries this burden if she establishes by clear and convincing evidence that Mulhern, or another agent of the MBTA who made the statements, did so with a high degree of awareness of probable falsity, or entertained serious doubt as to the truth of the particular statement.

<u>Authority</u>

<u>Rotkiewicz v Sadowsky</u>, 431 Mass. 748 (2000) (Because of the broad powers vested in police officers and the great potential for abuse of those powers, as well as police officers' high visibility within and impact on a community, police officers, even patrol-level police officers, are public officials for purposes of defamation. A plaintiff who is a public official may not recover damages for defamation related to his or her public office unless the plaintiff proves by clear and convincing evidence that the defendant made the false statement with actual malice. Actual malice means that the defamatory falsehood was published with knowledge that it was false or reckless disregard of whether it was false. The inquiry is a subjective one as to the defendant's attitude toward the truth or falsity of the statement rather than the defendant's attitude toward the plaintiff.)

**DEFENDANTS' REQUESTED INSTRUCTION NO. 36**

<u>DEFAMATION – STATEMENTS BY MBTA OUTSIDE THE SCOPE OF THEIR
AUTHORITY</u>

In order to find the MBTA liable for defamation, you must find that the defamatory

statement was made by an MBTA employee acting within the scope of his/her authority from the

MBTA. That is, the statement was made within the course of employment, and in furtherance of

the MBTA's work. Factors to be considered include whether the conduct in question is of the

kind the employee is hired to perform, whether it occurs within authorized time and space limits,

and whether it is motivated, at least in part, by a purpose to serve the employer. If an employee

acts from purely personal motives in no way connected with the employer's interests, he/she is

considered in the ordinary case to have departed from his employment, and the employer is not

liable.

If you find that the alleged defamatory statement was made by someone not acting within

the scope of their authority from the MBTA, then you must find for the MBTA on the

defamation claim.

<u>Authority</u>

<u>Howard v. Town of Burlington, 399 Mass. 585 (1987); Wang Lab., Inc. v. Business Incentives,
Inc.,</u> 398 Mass. 854 (1986) and cases cited. See Restatement (Second) of Agency § 228 (1958);
W. Prosser & W. Keeton, Torts 506 (5th ed. 1984).  <u>See</u> <u>Miller v. Federated Dept. Stores, Inc.,
364 Mass. 340, 348 (1973).</u>

## DEFENDANTS' REQUESTED INSTRUCTION NO. 37

### DAMAGES – DISCRIMINATION, RETALIATION AND DEPRIVATION OF CIVIL RIGHTS, GENERALLY

If and only if you find that Plaintiff has established all of the elements of her discrimination, or retaliation or civil rights claims against defendants by a preponderance of the evidence, then you should compute the damages to which she is entitled, if any. The purpose of damages in this case is to make Plaintiff whole for her losses – that is, to award, as far as possible, just and fair compensation for the loss, if any, which resulted from defendants' unlawful discrimination, retaliation or deprivation of civil rights. In a case such as this, where a plaintiff asserts multiple legal theories (or claims) based on the same underlying events, keep in mind that a plaintiff is *never* entitled to duplicative damages for the same alleged injuries. That is, if you find that plaintiff was discriminated or retaliated against, she cannot receive damages more than once for the same harm no matter how many different claims she asserts.

You may not consider damages unless you have first found, in accordance with these instructions that Plaintiff has established by a preponderance of the evidence that the MBTA, Chief Carter, and/or Mr. Mulhern discriminated against her because she is a woman, or retaliated against her for filing the Charge, or deprived her of her civil rights. The fact that you are instructed on damages is not to suggest that you must consider damages or that I have any opinion on the outcome of this case. The damages instructions are given only so that these instructions will be complete.

Authority

Mass. Gen. L. c. 151B, §9; Conway v. Electro Switch Corp., 402 Mass. 385, 388 (1988); Rombola v. Cosindas, 351 Mass. 382, 385 (1966); Agoos Leather Co. v. American & Foreign Ins. Co., 342 Mass. 603, 608 (1961).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 38**

<u>DAMAGES – DISCRIMINATION, RETALIATION AND DEPRIVATION OF CIVIL
RIGHTS, AWARDABLE DAMAGES</u>

If you find that the MBTA, Chief Carter, or Mr. Mulhern unlawfully discriminated

against Plaintiff, unlawfully retaliated against her, or deprived her of civil rights, you may award

Plaintiff damages for emotional distress.  You may also consider whether to award punitive

damages.

<u>Authority</u>

<u>Conway v. Electro Switch Corp.</u>, 402 Mass. 385, 388 (1988); <u>Rombola v. Cosindas</u>, 351 Mass.
382, 385 (1966); <u>Agoos Leather Co. v. American & Foreign Ins. Co.</u>, 342 Mass. 603, 608
(1961).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 39

## <u>DAMAGES – DISCRIMINATION, RETALIATION AND DEPRIVATION OF CIVIL RIGHTS, EMOTIONAL DISTRESS</u>

If you find that Plaintiff has been discriminated against, retaliated against, or deprived of her civil rights, you may reward her reasonable damages for her emotional distress, if any. Emotional distress includes mental pain, discomfort, indignity, depression, fear, anxiety or humiliation suffered as a result of the discrimination or retaliation.  A finding of discrimination or retaliation, by itself, is not sufficient to permit an inference, or presumption, of emotional distress. To recover emotional distress damages, Plaintiff must prove that she suffered actual injury by a preponderance of the evidence.

Emotional distress damage awards should be fair and reasonable, and proportionate to the distress suffered. While evidence in the form of some physical manifestation of the emotional distress, or evidence in the form of expert testimony, is not necessary to obtain an award, such evidence certainly would be beneficial. An award must rest on substantial evidence. Some factors that you should considere include: (1) the nature and character of the alleged harm; (2) the severity of the harm; (3) the length of time the Plaintiff has suffered and reasonably expects to suffer; and (4) whether the Plaintiff has attempted to mitigate the harm, e.g., by counseling or by taking medication.

In addition, the Plaintiff must show a sufficient causal connection between the unlawful act of discrimination or retaliation, if any, and the Plaintiff's emotional distress. Emotional distress existing from circumstances other than the actions of the defendants, or from a condition existing prior to the unlawful act, is not compensable.  Accordingly, even if you find that Plaintiff suffered some emotional distress, you should consider whether there were any factors

other than defendants' discriminatory or retaliatory actions, if any, which may have caused her emotional distress

You may not include in the award of emotional distress damages any amount for the purpose of punishing defendants or to serve as a warning to others.

Authority

Stonehill College v. MCAD, 441 Mass 549, 575-577 (2004); LaBonte v. Hutchins & Wheeler, 424 Mass. 813, 824 (1996); Bournewood Hosp., Inc. v. MCAD, 371 Mass. 303, 315-17 (1976); Rombola v. Cosindas, 351 Mass. 382, 385 (1966).

**DEFENDANTS' REQUESTED INSTRUCTION NO. 40**

<u>DAMAGES – DISCRIMINATION, RETALIATION AND DEPRIVATION OF CIVIL
RIGHTS, PUNITIVE DAMAGES</u>

If you find that the MBTA, Chief Carter, and/or Mr. Mulhern discriminated or retaliated

against Plaintiff, you may consider whether to assess punitive damages against the MBTA,

Chief Carter, and/or Mr. Mulhern. Punitive damages are different from compensatory damages.

Unlike compensatory damages, which compensate Plaintiff for the harm she has suffered, the

purpose of punitive damages is to punish the wrongdoer and to deter the wrongdoer from

engaging in the same wrongful conduct in the future.

You may only award punitive damages if you decide that any of the defendant's is liable

for gender discrimination or retaliation. You may not award punitive damages based on

Plaintiff's state civil rights act claim – that is you may not award punitive damages based on

Plaintiff's claim that she was deprived of her civil rights through threats, intimidation or coercion

when she was informed of her suspension.

In addition, you may only award punitive damages against any particular defendant if you

find that that defendant discriminated or retaliated against Plaintiff through conduct that is

outrageous because it showed an evil motive or reckless indifference to the Plaintiff's rights.

Punitive damages are only appropriate where a particular defendant's conduct warrants

condemnation and deterrence.

It is up to you to determine whether to award any punitive damages. In determining the

amount of a punitive damage award against a particular defendant, you should consider:

    (1)     The character of that defendant's conduct;

    (2)     That defendant's wealth in order to determine what amount of money is needed to

            punish that defendant's conduct and to deter any future acts of discrimination;

(3)     The actual harm suffered by Plaintiff; and

(4)     The magnitude of any potential harm to other victims if similar future behavior is

not deterred by that defendant.

You may award Plaintiff punitive damages even if you do not award her any

compensatory damages.  In other words, you may award punitive damages even if you were to

find that Plaintiff has not suffered any actual damages or has mitigated them to nothing.

If you do award punitive damages, you should fix the amount by using calm discretion

and sound reason.

<u>Authority</u>

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior Court Civil Practice Jury Instructions</u>, § 5.3.5 (2001) (modified); M.G.L. c. 151B, § 9; <u>Dartt v. Browning-Ferris Indus., Inc.</u>, 427 Mass. 1, 17, 691 N.E.2d 526, 536-37 (1998); <u>Bain v. City of Springfield</u>, 424 Mass. 758, 767 (1997).

## DEFENDANTS' REQUESTED INSTRUCTION NO. 41

<u>DAMAGES – DEFAMATION</u>

If, applying the instructions I already provided, you find that either Mulhern or the MBTA are liable for defaming the Plaintiff, you may consider awarding her damages for resulting injury she suffered.

First, you must determine whether the statement or statements at issue charged her with a crime, or prejudiced her in her profession. If not, Plaintiff is only entitled to damages to compensate her for her out-of-pocket losses, which she must prove by a preponderance of the evidence, and you may not award damages for general injury to her reputation or her emotional distress.

If you find that the statement or statements at issue charged her with a crime, or prejudiced her in her profession, you may award plaintiff general compensatory damages. The purpose of general compensatory damages is to afford the equivalent in money for the actual loss caused by the wrong of another. Thus, Plaintiff must have proven to you by a preponderance of the evidence that she suffered actual injury as a result of the defendants' defamatory publication. Actual injury includes harm to Plaintiff's reputation and standing in the community and resulting mental anguish and suffering.

Any award of damages for defamation must be supported by competent evidence concerning the injury. Compensatory damages must be based with reasonable certainty on the evidence, only for harm caused by the defamation, and not with any view to punishing defendants.

<u>Authority</u>

Hon. Patrick F. Brady, Hon. Elizabeth Butler, and John O. Mirick, *et al.*, <u>Massachusetts Superior Court Civil Practice Jury Instructions</u>, § 6.4 (2001) (modified); <u>Shafir v. Steele</u>, 431 Mass. 365, 373, 727 N.E.2d 1140, 1145 (2000); <u>Draghetti v. Chmielewski</u>, 416 Mass. 808, 815-16, 626

N.E.2d 862, 868 (1994) Stone v. Essex County Newspapers, Inc.  , 367 Mass. 849 (1975); Ayash v. Dana-Farber Cancer Inst., 443 Mass 367 (2005); Sharratt v. Housing Innovations, Inc. 365 Mass. 141 (1974); Lynch v. Lyons, 303 Mass. 116 (1939)

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 3, 2007

/s/ Joseph L. Edwards, Jr.

Joseph L. Edwards, Jr.

- 55 -